**FITZGERALD JOSEPH LLP**
JACK FITZGERALD (SBN 257370)
*jack@fitzgeraldjoseph.com*
PAUL K. JOSEPH (SBN 287057)
*paul@fitzgeraldjoseph.com*
MELANIE PERSINGER (SBN 275423)
*melanie@fitzgeraldjoseph.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@fitzgeraldjoseph.com*
CAROLINE S. EMHARDT (SBN 321222)
*caroline@fitzgeraldjoseph.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741

**BLOOD HURST & O'REARDON, LLP**
TIMOTHY G. BLOOD (SBN 149343)
*tblood@bholaw.com*
THOMAS J. O'REARDON II (SBN 247952)
*toreardon@bholaw.com*
JAMES M. DAVIS (SBN 301636)
*jdavis@bholaw.com*
501 West Broadway, Suite 1490
San Diego, CA 92101
Phone: (619) 338-1100

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HENRY YEH, on behalf of himself, all others similarly situated, and the general public,<br><br>Plaintiff,<br><br>v.<br><br>TESLA, INC.,<br><br>Defendant. | Case No: 3:23-cv-01704<br><br>CLASS ACTION<br><br>**COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff HENRY YEH, on behalf of himself, all others similarly situated, and the general public, by and through his undersigned counsel, hereby sues Defendant TESLA, INC. ("Tesla"), and alleges the following upon his own knowledge, or where he lacks personal knowledge, upon information and belief, including the investigation of his counsel.

## INTRODUCTION

1. Tesla is a manufacturer of electric vehicles that incorporate cameras into the vehicles' "Autopilot" systems. Since at least 2019, the cameras in Tesla vehicles captured highly-invasive videos and images of the cars' owners, which Tesla employees were able to access—not for the stated purposes of communication, fulfillment of services, and enhancement of Tesla vehicle driving systems—but for the tasteless and tortious entertainment of Tesla employees, and perhaps those outside the company, and the humiliation of those surreptitiously recorded.

2. By virtue of this defective system, Tesla employees accessed and circulated recordings of Tesla customers in private and embarrassing situations, without their consent including, for example, video of a man approaching a Tesla vehicle completely naked, and video of vehicle crashes and road-rage incidents. Tesla employees also shared pictures of family pets, which were made into memes by embellishing them with captions or commentary before posting them in group chats. While some postings were only shared between a few employees, others could be seen by "scores" of Tesla employees. And as is common with internet culture, many of these videos and images were very likely shared with persons outside the company.

3. That such videos and images were made available to Tesla employees to view and share, at will, and for improper purposes, affects each and every person with a Tesla vehicle, their families, passengers, and even guests in their homes.

4. Plaintiff brings this action against Tesla on behalf of himself, similarly-situated Class Members, and the general public to enjoin Tesla from engaging in its wrongful behavior, including violating the privacy of customers and others, and to recover actual and punitive damages.

## JURISDICTION & VENUE

5. This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d)(2) (The Class Action Fairness Act) because the matter in controversy exceeds the sum or value of $5,000,000, exclusive

of interest and costs, and at least one member of the class of plaintiffs is a citizen of a State different from Tesla. In addition, more than two-thirds of the members of the class reside in states other than the state in which Tesla is a citizen and in which this case is filed, and therefore any exceptions to jurisdiction under 28 U.S.C. § 1332(d) do not apply.

6. The Court has personal jurisdiction over Tesla as a result of Tesla's substantial, continuous and systematic contacts with the State, and because Tesla has purposely availed itself of the benefits and privileges of conducting business activities within the State, including by marketing, distributing, and selling Tesla automobiles in California. Moreover, during much of the time of the alleged behavior, Tesla was headquartered and had its principal place of business in California.

7. Venue is proper in this Southern District of California pursuant to 28 U.S.C. § 1391(b) and (c), because Tesla resides (*i.e.*, is subject to personal jurisdiction) in this district, and because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## INTRADISTIRICT ASSIGNMENT

8. Pursuant to N.D. Cal. Civ. L.R. 3-2(c), (d) & 3-5(b), this action is properly assigned to either the San Francisco or Oakland division because a substantial part of the events and omissions which give rise to the claim occurred in San Mateo County.

## PARTIES

9. Plaintiff Henry Yeh is a citizen of California because he resides and is domiciled in South San Francisco, California. Mr. Yeh owns a 2022 Tesla Model Y, which he ordered in November 2021 and took delivery of in February 2022.

10. Defendant Tesla is a Delaware corporation. Tesla was founded in San Carlos, California in 2003 and remained headquartered in California through December 1, 2021, on which date it relocated its headquarters to Austin, Texas.

## FACTS

I. **TESLA CAMERAS CAPTURE AND RECORD EVENTS WITHIN AND OUTSIDE TESLA VEHICLES**

11. Tesla designs and manufactures electric vehicles. It is one of the world's most valuable companies and, as of 2023, was the world's most valuable automaker. In 2021, the company had the most

worldwide sales of battery fully-electric vehicles and plug-in electric vehicles, capturing 21% of the battery-electric market and 14% of the plug-in market.

12. Tesla's Autopilot system, an advanced driver-assistance system, is integral to Tesla electric vehicles. Since September 2014, all Tesla cars have been shipped with sensors and software to support the Autopilot system. The system includes eight cameras to capture 360 degrees around the vehicles and, for many models, including Plaintiff's Model Y, a driver-facing camera. These cameras and the Autopilot system capture, record, and store activities taking place both within and outside Tesla vehicles.

13. In its Customer Privacy Notice, Tesla assures its millions of electric car owners that "Your privacy is and will always be enormously important to us"; that the cameras in its vehicles are "designed from the ground up to protect your privacy"; and that "camera recordings remain anonymous and are not liked to your or your vehicle."[1]

14. Tesla further promises its customers that it will only ever use the videos and images it collects to "Communicate with you; Fulfill our products and services; and Improve and enhance development of our products and services."[2]

## II. IN VIOLATION OF ITS PRIVACY POLICY AND THEIR RIGHTS TO PRIVACY, TESLA STORED—AND TESLA EMPLOYEES ACCESSED, USED, AND SHARED—VIDEO RECORDINGS AND IMAGES OF CUSTOMERS, WITHOUT THEIR CONSENT

15. Between 2019 and 2022, Tesla employees, for their own personal reasons, and not for any legitimate business reason, viewed and shared sensitive images recorded by Tesla customers' vehicle cameras. At times, employees would circulate these videos and images, sometimes after embellishing them.

16. One crash video in 2021, for example, showed a Tesla driving at high speed in a residential area hitting a child riding a bike. The child flew in one direction, the bike in another. The video quickly spread around a Tesla office in San Mateo, California, via private one-on-one chats.

17. Some recordings appeared to have been made when cars were parked and turned off. According to one former Tesla employee, for example, "We could see inside people's garages and their

---

[1] Tesla Customer Privacy Notice, https://www.tesla.com/legal/privacy. A true and correct copy of the Privacy Notice is attached hereto as <u>Exhibit 1</u> and expressly incorporated into this Complaint.

[2] *Id.*

3

private properties. Let's say that a Tesla customer had something in their garage that was distinctive, you know, people would post those kinds of things."

18. Moreover, contrary to Tesla's representation that its camera recordings cannot be linked to individuals and their vehicles, the system Tesla used was, in fact, capable of—and did—show the location of recordings, meaning anyone viewing the videos and images could determine exactly where the Tesla owner lived, *i.e.*, who the Tesla owner was.

19. Some former Tesla employees were troubled by these practices and opined "it was a breach of privacy." One employee even stated that the employee "would never buy a Tesla after seeing how they treated some of these people." Another former Tesla said, "I'm bothered by it because the people who buy the car, I don't think they know that their privacy is, like, not respected . . . .We could see them doing laundry and really intimate things. **We could see their kids.**"

20. David Choffnes, executive director of the Cybersecurity and Privacy Institute at Northeastern University in Boston, called the sharing of sensitive videos and images by Tesla employees "morally reprehensible." Another expert noted that Tesla's actions have "nothing to do with the provision of a safe or secure car or the functionality" of Tesla's self-driving system.

21. Tesla has a history of privacy violations. In February 2023, for example, Tesla agreed to change camera settings on vehicles sold in the European Union after a Dutch privacy regulator found that the previous settings allowed privacy violations.[3]

22. Tesla's conduct in violating privacy rights and reasonable expectations of privacy of Plaintiff and Class members is particularly egregious. Tesla captures recordings of people vulnerable on their own property, in their own garages, and even in their own homes, including at least one instance where Tesla cameras captured video of a man naked in his home. Tesla also captured and disseminated videos and images of customers' pets and even their children—a group that society has long recognized as vulnerable to exploitation and manipulation. Indeed, parents' interest in their children's privacy is one of the most fundamental liberty interests society recognizes.

---

[3] Catherine Stupp, *Tesla to Change Camera Settings in Europe Over Privacy Fears*, WALL STREET JOURNAL (Feb. 22, 2023), *at* https://www.wsj.com/articles/tesla-to-change-camera-settings-in-europe-over-privacy-fears-4e15009.

23. "Invasion of privacy has been recognized [in California] as a common law tort for over a century." *Matera v. Google Inc.*, 2016 WL 5339806, at *10 (N.D. Cal, Sept. 23, 2016) (citing Restatement (Second) of Torts §§ 652A-I for the proposition "that the right to privacy was first accepted by an American court in 1905, and 'a right to privacy is now recognized in the great majority of the American jurisdictions that have considered the question'"). "The common law secures to each individual the right of determining, ordinarily, to what extent his thoughts, sentiments, and emotions shall be communicated to others." Samuel D. Warren & Louis Brandeis, *The Right to Privacy*, 4 HARV. L. REV. 193, 198 (1890).

24. The Restatement (Second) of Torts recognizes the same privacy rights through its tort of intrusion upon seclusion, explaining that "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy." Restatement (Second) of Torts § 652B (1977). The Supreme Court has similarly recognized the primacy of privacy rights, explaining that the Constitution operates in the shadow of a "right to privacy older than the Bill of Rights." *Griswold v. Connecticut*, 381 U.S. 479, 486 (1965).

25. California amended its constitution in 1972 to specifically enumerate a right to privacy in its very first section, and courts have recognized that this affords individuals a private right of action for invasions of their privacy. See CAL. CONST. ART. I, § 1. The California Supreme Court has recognized the fundamental injuries at stake in privacy violations, explaining as follows:

> [A] measure of personal isolation and personal control over the conditions of its abandonment is of the very essence of personal freedom and dignity . . . A [person] . . . whose conversations may be overhead at the will of another . . . is less of a [person], has less human dignity, on that account. He who may intrude upon another at will is the master of the other and, in fact, intrusion is a primary weapon of the tyrant.

*Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 231 (1998) (quoting Edward J. Bloustein, *Privacy as an Aspect of Human Dignity: An Answer to Dean Prosser*, 39 N.Y.U. L. REV. 962, 973-74 (1964)); *see also Gill v. Curtis Pub. Co.*, 38 Cal. 2d 273, 276 (1952) ("Recognition has been given of a right to privacy, independent of the common rights to property, contract, reputation and physical integrity . . . . In short, it is the right to be let alone." (internal quotation marks omitted)).

26. Tesla had reasonable alternatives to the defective camera system that allowed Tesla employees to access private video and images of customers without their consent. For example, Tesla could

have not captures the images in the first place, or could have ensured that any video, images, and biometric data included therein, were inaccessible by Tesla employees.

27. Given Tesla's defective system for maintaining the privacy of video and images captured by Tesla cameras, the only surefire fix to Tesla's invasion of privacy is to disable the cameras. Thus, Tesla drivers face a dilemma: continue to have their privacy invaded, or disable their Tesla vehicles cameras.

28. While it is technically possible to disable the cameras on a Tesla vehicle, doing so has a significant impact on the functionality of the vehicle's various safety and driver assistance features, including the Autopilot system. Disabling the cameras also likely voids the warranty on the Tesla vehicles. As a result, if Tesla drivers want to avoid future invasions of their privacy, the value of their Tesla vehicles would almost certainly decrease, and substantially so.

29. Moreover, disabling the cameras is difficult and requires technical expertise, which Plaintiff and most Class members don't have. Thus, in order to disable the cameras, Plaintiff and Class members will have to hire an authorized service technician to do it for them, which is an additional expense incurred to avoid having their privacy invaded in the future.

## CLASS ACTION ALLEGATIONS

30. While reserving the right to redefine or amend the class definition prior to or as part of a motion seeking class certification, pursuant to Federal Rule of Civil Procedure 23, Plaintiff seeks to represent a class of all persons in the United States, and separately a subclass all persons in California (the "California Subclass"), who, at any time from four years preceding the date of the filing of this Complaint to the time a class is notified (the "Class Period"), owned or leased a Tesla vehicle (the "Class," which includes the California Subclass).

31. The members in the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of all Class Members in a single action will provide substantial benefits to the parties and Court.

32. Questions of law and fact common to Plaintiff and the Class include:

    a. Whether Tesla collected and stored videos, images, and/or biometric data of Class Members;

      b. Whether Tesla employees could access or did access videos, images, and/or biometric data of class members;

      c. Whether Tesla's collection, storage, and dissemination of videos, images, and biometric data of Class Members as described herein was highly offensive to a reasonable person;

      d. Whether Tesla's conduct constituted and invasion of privacy based on California's common law protection against intrusion upon seclusion public policy;

      e. Whether Tesla's conduct constitutes a violations of the California Constitution right to privacy;

      f. Whether Tesla's conduct violated the California Unfair Competition Law because it was fraudulent, unlawful, or unfair;

      g. Whether Plaintiff and the Class are entitled to monetary damages and the measure of those damages;

      h. Whether Plaintiff and Class are entitled to restitution, disgorgement and/or other equitable and injunctive relief;

      i. Whether Plaintiff and the Classes are entitled to injunctive or other equitable relief; and

      j. The proper amount of attorneys' fees.

33. These common questions of law and fact predominate over questions that affect only individual Class Members.

34. Plaintiff's claims are typical of Class Members' claims because they are based on the same underlying facts, events, and circumstances relating to Tesla's conduct.

35. Plaintiff will fairly and adequately represent and protect the interests of the Class, has no interests incompatible with the interests of the Class, and has retained counsel competent and experienced in class action litigation.

36. Class treatment is superior to other options for resolution of the controversy because the relief sought for each Class Member is small, such that, absent representative litigation, it would be infeasible for Class Members to redress the wrongs done to them.

37. Tesla has acted on grounds applicable to the Class, thereby making appropriate final injunctive and declaratory relief concerning the Class as a whole.

38. As a result of the foregoing, class treatment is appropriate under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3).

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**

**Intrusion Upon Seclusion**

39. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth fully herein.

40. Plaintiff and Class Members have reasonable expectations of privacy in their homes and in their vehicles, generally. The expectation of privacy in their homes is intrinsic. Their expectation of privacy in their vehicles stemmed from Tesla's clearly-stated policy that it would not misuse videos or images it captures of customers in their vehicles.

41. Tesla's intrusions by viewing and sharing videos and images of customers and their activities, even in their own homes, are highly offensive to a reasonable person. This is evidenced by, *inter alia*, Tesla's own employees' accounts of Tesla's actions. It is also evidenced by the fact that Tesla recorded and shared images and videos of children, exploiting their special vulnerabilities.

42. Plaintiff and Class members were harmed by the intrusion into their private affairs as detailed throughout this Complaint. Tesla's actions and conduct complained of herein were a substantial factor in causing the harm suffered by Plaintiff and Class members.

43. Plaintiff and Class members therefore seek (1) injunctive relief, in the form of orders compelling Tesla's cessation of recording, viewing, and sharing videos and images in violation of state law, and destruction of all personal data obtained in violation of state law; and (2) compensatory and punitive damages in an amount to be determined at trial.

44. Plaintiff and Class members seek punitive damages because Tesla's actions—which were malicious, oppressive, willful—were calculated to injure Plaintiff and other Class Members and made in conscious disregard of their rights. Punitive damages are warranted to deter Tesla from engaging in future misconduct.

## SECOND CAUSE OF ACTION

**Violation of California's Constitutional Right to Privacy,**

**Cal. Const. Art. 1, § 1**

**(On Behalf of the California Subclass)**

45. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth fully herein.

46. Plaintiff and the California Subclass Members' private affairs include their behavior in their homes, on their property, and in their vehicles, as well as any other behavior that may be monitored by the surreptitious recording or otherwise enabled by Defendant.

47. Defendant intentionally intruded on and into Plaintiff's and the California Subclass Members' solitude, seclusion, or private affairs by intentionally and surreptitiously recording, reviewing, sharing, and/or retaining Plaintiff's and the California Subclass Members' activities through the monitoring and recording activities described herein.

48. These intrusions are highly offensive to a reasonable person.

49. These societal expectations and laws created a duty that Defendant owed to Plaintiff and California Subclass Members. Defendant breached that duty by surreptitiously recording, reviewing, sharing, and/or retaining Plaintiff's and the California Subclass Members' activities through the monitoring and recording activities described herein.

50. Defendant's conduct described herein violated Plaintiff's and the California Subclass Members' right to privacy, as guaranteed by ART. 1, § 1 of the California Constitution.

51. Plaintiff and the California Subclass Members were harmed by the intrusion into their private affairs as detailed throughout this Complaint. Defendant's actions and conduct complained of herein were a substantial factor in causing the harm suffered by Plaintiff and the California Subclass Members.

52. Plaintiff, on their own behalf and on behalf of the California Subclass Members, therefore seeks (1) injunctive relief compelling Defendant's cessation of recording, viewing, and sharing videos and images in violation of state law and destruction of all personal data obtained in violation of state law; and (2) compensatory and punitive damages in an amount to be determined at trial. Plaintiff and the California Subclass Members seek punitive damages because Defendant's actions—which were malicious, oppressive,

and willful—were calculated to injure them and were made in conscious disregard of their rights. Punitive damages are warranted to deter Defendant from engaging in future misconduct.

### THIRD CAUSE OF ACTION

### Violation of the California Unfair Competition Law,

### Cal. Bus. & Prof. Code §§ 17200, *et seq.*

53. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth fully herein.

54. The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

55. The acts, omissions, misrepresentations, practices, and non-disclosures of Tesla alleged herein constitute business acts and practices.

### Fraudulent

56. The acts, omissions, misrepresentations, practices, and non-disclosures of Tesla were fraudulent because they induced Plaintiffs and other Class Members to purchase or lease Tesla electric vehicles under false pretenses.

### Unlawful

57. The acts of Tesla alleged herein are "unlawful" under the UCL in that, as alleged herein, they violate at least the California Constitutional right to privacy and the Consumer Legal Remedies Act, and further constitute breach of contract, negligence, negligent misrepresentation, intentional misrepresentation, and unjust enrichment.

58. Plaintiff reserves the right to allege other violations of law that constitute other unlawful business acts or practices.

### Unfair

59. Tesla's conduct was unfair because it was immoral, unethical, unscrupulous, or substantially injurious to consumers, and the utility of its conduct, if any, did not outweigh the gravity of the harm to its consumers.

60. Tesla's conduct was also unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not necessarily limited to the California Constitution.

61. Tesla's conduct was also unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided.

62. There were reasonably available alternatives to further Tesla's legitimate business interests, other than the conduct described herein.

\*            \*            \*

63. Tesla profited from, and Plaintiff and other Class Members suffered injury in fact and lost money as a result of Defendants' fraudulent, unlawful, and unfair conduct. Therefore Plaintiff, individually and on behalf of the Class seeks: (1) an injunction compelling Tesla's cessation of recording, viewing, and sharing videos and images in violation of state law and destruction of all personal data obtained in violation of state law; (2) compensatory restitution; and (3) reasonable attorney's fees.

## FOURTH CAUSE OF ACTION

## Violation of the California Consumer Legal Remedies Act,

## Cal. Civ. Code §§ 1750 *et seq.*

64. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth fully herein.

65. The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

66. Tesla's false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase or lease and use Tesla vehicles by Plaintiff and other Class Members for personal, family, or household purposes, and violated and continue to violate the following sections of the CLRA:

    a. § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

    b. § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

   c. § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

   d. § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

67. Tesla profited from the sale of the falsely, deceptively, and unlawfully advertised Tesla vehicles to unwary consumers.

68. Tesla's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

69. Plaintiff seeks injunctive relief under Civil Code § 1782(d).

70. Although Plaintiff does not currently seek damages for has claims under the CLRA, In compliance with Cal. Civ. Code § 1782, he will send Tesla written notice of his claims and may thereafter amend this Complaint to seek damages under the CLRA if Tesla refuses to remedy the violation within 30 days thereof.

71. In compliance with Cal. Civ. Code § 1780(d), an affidavit of venue is filed concurrently herewith.

## FIFTH CAUSE OF ACTION

### Negligence

72. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth fully herein.

73. Tesla negligently, carelessly, recklessly, and/or unlawfully transmitted, stored, and permitted access to Plaintiff and other Class Members' sensitive personal and biometric information, including video recordings and images.

74. As a direct and legal result of Tesla's wrongful conduct and omissions, Plaintiff and other Class Members have sustained damages in a sum to be determined at trial, including punitive damages.

## SIXTH CAUSE OF ACTION

### Breach of Contract

75. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth fully herein.

76. Tesla's Privacy Policy was a contract between Tesla and purchasers and lessees of Tesla electric vehicles. Tesla violated the contract in that the cameras in Tesla electric vehicles did not "protect your privacy" and the video and images captured by the cameras did not "remain anonymous." Finally, Tesla did not limit data captured by the cameras, as it promised in the contract, to "Communicat[ing] with you; Fulfilling [Tesla's] products and services; and Improv[ing] and enhanc[ing] development of [Tesla's] products and services."

77. As a direct and proximate result of Tesla's beach of contract, Plaintiff and other Class Members have been damages in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION

### Negligent Misrepresentation

78. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

79. Tesla marketed its vehicles in a manner conveying to reasonable consumers that their privacy is protected. Reasonable consumers would attach importance to such representations and would be induced to act thereon in making purchase or leasing decisions.

80. In selling vehicles, Tesla acted in the ordinary course of its business and had a pecuniary interest in Plaintiff and other Class Members purchasing or leasing vehicles.

81. Tesla owed a duty of care to Plaintiff and other Class Members, not to provide them false information when they were making their purchase or lease decisions regarding Tesla vehicles.

82. Tesla knew or had been negligent in not knowing that its system for protecting the privacy of customers whose video and images were taken by Tesla cameras was ineffective or defective.

83. Tesla intends that Plaintiff and other consumers rely on these representations, as evidenced by the intentional and conspicuous placement of the misleading representations on Tesla's website.

84. Plaintiff and other Class Members reasonably and justifiably relied on Tesla's misrepresentations when purchasing or leasing Tesla vehicles. Had the correct facts been known, they would not have purchased or leased Tesla vehicles at the prices at which they were offered.

85. Therefore, as a direct and proximate result of Tesla's negligent misrepresentations, Plaintiff and Class Members have suffered economic losses and other general and specific damages, in the amount

of the Tesla vehicles' purchase or lease prices, or some portion thereof, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

### EIGHTH CAUSE OF ACTION

### Intentional Misrepresentation

86. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

87. Tesla marketed its vehicles in a manner conveying to reasonable consumers that their private and biometric data and information obtained through Tesla vehicles' cameras would be protected and remain private. Reasonable consumers would attach importance to such representations and would be induced to act thereon in making purchase or lease decisions.

88. At all relevant times, Tesla knew that the misrepresentations were misleading, or has acted recklessly in making the misrepresentations, without regard to their truth.

89. Tesla intends that Plaintiff and other consumers rely on these misrepresentations, as evidenced by the intentional placement of the misleading representations on its website.

90. Plaintiffs and members of the Class have reasonably and justifiably relied on Tesla's intentional misrepresentations when purchasing or leasing Tesla vehicles; had the correct facts been known, they would not have purchased or leased Tesla vehicles at the prices at which they were offered.

91. Therefore, as a direct and proximate result of Tesla's intentional misrepresentations, Plaintiff and other Class Members have suffered economic losses and other general and specific damages, in the amount of the Tesla Vehicles' purchase or lease prices, or some portion thereof, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

### NINTH CAUSE OF ACTION

### Unjust Enrichment

92. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth fully herein.

93. Plaintiff and other Class Members conferred benefits on Tesla by purchasing or leasing Tesla vehicles with defective camera control systems.

94. Tesla was unjustly enriched in retaining revenues derived from Plaintiff and other Class Members' purchase or lease of Tesla vehicles containing defective camera control systems, as well as revenue obtained from the unauthorized access, use, and leverage of customers' private and biometric data.

95. Tesla's retention of those moneys under these circumstances is unjust and inequitable. Tesla's acts and omissions caused injury to Plaintiff and other Class Members because they would not have purchased or leased Tesla vehicles at the prices they did if the true facts had been known, and if Tesla had not engaged in the malfeasance alleged.

96. Because Tesla's retention of non-gratuitous benefits conferred on it by Plaintiff and other Class Members is unjust and inequitable, Tesla has been unjustly enriched in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

97. Wherefore, Plaintiff, on behalf of himself, all others similarly situated, and the general public, prays for judgment against Tesla as to each and every cause of action, and the following remedies:

    a.    An Order declaring this action to be a proper class action, appointing Plaintiff as Class Representative, and appointing Plaintiff's undersigned counsel as Class Counsel;

    b.    An Order requiring Tesla to bear the cost of Class Notice;

    c.    A judgment awarding Plaintiff other Class Members appropriate relief, including actual, compensatory, and punitive damages (as permitted by law), in an amount to be determined at trial;

    d.    A judgment awarding any and all equitable, injunctive, and declaratory relief as may be appropriate;

    e.    Pre-judgment and post-judgment interest, as permitted by law;

    f.    Attorneys' fees and costs; and

    g.    Any other and further relief that Court deems necessary, just, or proper.

## **JURY DEMAND**

98. Plaintiff hereby demands a trial by jury on all issues so triable.

| | |
|---|---|
| Dated: April 7, 2023 | /s/ Jack Fitzgerald |
| | **FITZGERALD JOSEPH LLP** |
| | JACK FITZGERALD |
| | *jack@fitzgeraldjoseph.com* |
| | PAUL K. JOSEPH |
| | *paul@fitzgeraldjoseph.com* |
| | MELANIE PERSINGER |
| | *melanie@fitzgeraldjoseph.com* |
| | TREVOR M. FLYNN |
| | *trevor@fitzgeraldjoseph.com* |
| | CAROLINE S. EMHARDT |
| | *caroline@fitzgeraldjoseph.com* |
| | 2341 Jefferson Street, Suite 200 |
| | San Diego, California 92110 |
| | Phone: (619) 215-1741 |
| | |
| | **BLOOD HURST & O'REARDON, LLP** |
| | TIMOTHY G. BLOOD |
| | *tblood@bholaw.com* |
| | THOMAS J. O'REARDON |
| | *toreardon@bholaw.com* |
| | JAMES M. DAVIS (SBN 301636) |
| | *jdavis@bholaw.com* |
| | 501 West Broadway, Suite 1490 |
| | San Diego, CA 92101 |
| | Phone: (619) 338-1100 |
| | |
| | *Counsel for Plaintiff* |