1  MORGAN, LEWIS & BOCKIUS LLP
   David L. Schrader, Bar No. 149638          Brian M. Ercole
2  david.schrader@morganlewis.com             (*pro hac vice* motion forthcoming)
   300 South Grand Avenue                     brian.ercole@morganlewis.com
3  Twenty-Second Floor                        600 Brickell Ave, Suite 1600
   Los Angeles, CA  90071-3132                Miami, FL  33131-3075
4  Tel:    +1.213.612.2500                    Tel: +1.305.415.3000
   Fax:   +1.213.612.2501                     Fax: +1.305.415.3001
5
6  Mark A. Feller, Bar No. 319789
   mark.feller@morganlewis.com
7  One Market, Spear Street Tower
   San Francisco, CA  94105-1126
8  Tel: +1.415.442.1000
   Fax: +1.415.442.1001
9
   Attorneys for Defendant
10 TESLA, INC.

11                    UNITED STATES DISTRICT COURT
12                   NORTHERN DISTRICT OF CALIFORNIA

14 HENRY YEH on behalf of himself, all others    Case No. 3:23-cv-01704-JCS
   similarly situated, and the general public,
15                                               **DECLARATION OF JASJIT**
                  Plaintiff,                     **AHLUWALIA IN SUPPORT OF**
16                                               **DEFENDANT TESLA, INC.'S**
           vs.                                   **MOTION TO COMPEL**
17                                               **ARBITRATION AND TO DISMISS**
   TESLA, INC.,                                  **CLASS ACTION COMPLAINT**
18
                  Defendant.                     Hon. Joseph C. Spero
19                                               Date:    July 7, 2023
                                                 Ctrm: F, 15th Floor
20                                               Compl. Filed:   April 7, 2023

MORGAN, LEWIS &
 BOCKIUS LLP
ATTORNEYS AT LAW
  LOS ANGELES

DECLARATION JASJIT AHLUWALIA ISO MOTION TO COMPEL ARBITRATION

# DECLARATION OF JASJIT AHLUWALIA

I, Jasjit Ahluwalia, hereby declare pursuant to 28 U.S.C. § 1746:

1. I am over eighteen years of age. I am aware of the following based on my own personal knowledge and my review of relevant documents.

2. I am a Senior Staff Product Manager at Tesla, Inc. ("Tesla"), where I have been employed for more than ten years. In my position, I am familiar with the service, sales, and leasing of Tesla vehicles, including the related creation and record-keeping procedures. I am also familiar with those processes as of the date of the subject transaction involving Plaintiff Henry Yeh ("Mr. Yeh"). Based on such personal knowledge and my review of Tesla's file for Mr. Yeh, I am able to declare the following.

3. As part of its business, Tesla regularly generates and maintains a variety of records relating to its transactions and communications with customers. Tesla currently maintains such records in a database called DocGen. DocGen includes copies of customer Motor Vehicle Order Agreements (referenced below as an "Order Agreement") and Retail Installment Sales Contracts (referenced below as a "Sales Agreement").

4. Mr. Yeh entered into an Order Agreement for a Model Y vehicle on November 6, 2021. Mr. Yeh's Order Agreement is attached as **Exhibit 1**. When a customer agrees to an Order Agreement with an "Agreement to Arbitrate," the arbitration agreement provides instructions to the customer about where to send notice if the customer elects to opt out of the arbitration. When Tesla receives a customer notice opting out of an arbitration agreement, a copy of that notice is stored in DocGen.

5. To place an order, the customer must either select the vehicle (in the case of a used vehicle) or configure the vehicle by selecting various options (in the case of a new vehicle), enter payment details and other information, and click a button to place the order and agree to Tesla's terms and conditions. These terms and conditions are set forth in the Order Agreement. At the time of the order, the customer need only pay the "Order Payment," with the balance due at or shortly before the time they take delivery (i.e., possession) of the vehicle.

6. After customers complete the order process, they receive various documents in their Tesla Account, including a Vehicle Configuration that shows details of the customer's order and includes a record of when the customer placed the order and accepted the applicable Order Agreement. Customers also receive in their Tesla Account a copy of the Order Agreement and final price sheet.

7. The exhibits referenced in and attached to this declaration are records relating to Mr. Yeh from DocGen.

8. DocGen records do not show that Mr. Yeh mailed to Tesla at the address provided in his Order Agreement any request to opt out of the Agreement to Arbitrate. If Mr. Yeh mailed such a request to Tesla, a copy would be stored in Tesla's DocGen records.

9. On February 26, 2022, Mr. Yeh, Mr. Yeh's co-buyer, and Tesla entered into a Retail Installment Sale Contract ("Sale Agreement") for the financing and purchase of a 2021 Tesla Model Y vehicle. A true and correct copy of Mr. Yeh's Sale Agreement is attached hereto as **Exhibit 2.**

10. Mr. Yeh signed the Sale Agreement electronically. Mr. Yeh's electronic signature was made using eCore® On Demand (EOD™) Service, which authenticates the signor's identity. Once executed, the Sale Agreement became visible to Mr. Yeh on his Tesla account. Tesla also signed the Sale Agreement.

11. Once the Sale Agreement was signed electronically by both Tesla and Mr. Yeh, it was automatically saved and stored in DocGen. Given my knowledge and understanding of Tesla's procedures, the Sale Agreement is placed in the electronic file (as it did here) only after Mr. Yeh has executed the Sale Agreement.

12. Mr. Yeh signed the Sale Agreement in multiple places, including the "Agreement to Arbitrate" section on the first page.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 2nd day of June 2023, in Hayward, California.

Delivery (Jun 2, 2023 16:24 PDT)

Jasjit Ahluwalia

# EXHIBIT 1



# Motor Vehicle Order Agreement

## Vehicle Configuration

**Customer**

Henry Yeh

South San Francisco, CA

(415) 533-

| | |
|---|---|
| **Order Number** | RN116008629 |
| **Order Fee** | $250 |
| **Order placed with electronically accepted terms** | 11/06/2021 |

Price indicated does not include taxes and governmental fees, which will be calculated as your delivery date nears. You will be responsible for these additional taxes and fees.

| Description | Price (USD) |
|---|---|
| Model Y Long Range Dual Motor All-Wheel Drive | $57,990 |
| Midnight Silver Metallic Paint | Included |
| 19" Gemini Wheels | Included |
| All Black Premium Interior | Included |
| Seven Seat Interior | $3,000 |
| Autopilot | Included |
| Full Self-Driving Capability | $10,000 |
| **Subtotal** | **$70,990** |
| Destination and Documentation Fee | $1,200 |
| Order Fee | $250 |
| **Total** | **$72,440** |



## Motor Vehicle Order Agreement
### Terms & Conditions

**Documentation.**  Your Motor Vehicle Order Agreement (the "Agreement") is made up of the following documents:

1. **Vehicle Configuration:** The Vehicle Configuration describes the vehicle that you configured and ordered, including pricing (excluding taxes and official or government fees).

2. **Final Price Sheet:** The Final Price Sheet will be provided to you as your delivery date nears. It will include final pricing based on your final Vehicle Configuration and will include taxes and official or governmental fees.

3. **Terms & Conditions:** These Terms & Conditions are effective as of the date you place your order and make your Order Fee (the "Order Date").

**Agreement to Purchase.**  You agree to purchase the vehicle (the "Vehicle") described in your Vehicle Configuration from Tesla, Inc. or its affiliate ("we," "us" or "our"), pursuant to the terms and conditions of this Agreement. Your Vehicle is priced and configured based on features and options available at the time of order and you can confirm availability with a Tesla representative. Options, features or hardware released or changed after you place your order may not be included in or available for your Vehicle. If you are purchasing a used Vehicle, it may exhibit signs of normal wear and tear in line with its respective age and mileage.

**Purchase Price, Taxes and Official Fees.**  The purchase price of the Vehicle is indicated in your Vehicle Configuration. This purchase price does not include taxes and official or government fees, which could amount to up to 10% or more of the Vehicle purchase price. Because these taxes and fees are constantly changing and will depend on many factors, such as where you register the Vehicle, they will be calculated closer to the time of delivery and indicated on your Final Price Sheet. You are responsible for paying these additional taxes and fees. If Tesla is registering your Vehicle, this will be due when you pay the purchase price. If you are registering your Vehicle in a self-registration state, the sales tax and state-applicable registration fees may be due at time of registration. If you present a check for any payment, we may process the payment as a normal check transaction, or we may use information from your check to make a one-time electronic fund transfer from your account, in which case your bank account will reflect this transaction as an Electronic Fund Transfer. If you are purchasing a used Vehicle, your Order Deposit will be applied to your Purchase Price.

**Order Process; Cancellation; Changes.**  After you submit your completed order, we will begin the process of preparing and coordinating your Vehicle delivery. At this point, you agree that any paid Order Fee, Order Deposit and Transportation fee have been earned. If you cancel your order or breach this Agreement and we cancel your order, you agree that we may retain as liquidated damages the Order Fee, Order Deposit and Transportation Fee, to the extent not otherwise prohibited by law. You acknowledge that the Order Fee, Order Deposit and Transportation Fee are a fair and reasonable estimate of the actual damages we have incurred or may incur in transporting, remarketing, and reselling the Vehicle, costs which are otherwise impracticable or extremely difficult to determine. If you make changes to your order, you may be subject to potential price increases for any pricing adjustments made since your original Order Date. Any changes made by you to your Vehicle Configuration, including changes to the delivery location or estimated delivery date, will be reflected in a subsequent Vehicle Configuration that will form part of this Agreement. The Order Fee, Order Deposit, Transportation Fee and this Agreement are not made or entered into in anticipation of or pending any conditional sale contract.

**Delivery; Transfer of Title.**  If you are picking up your Vehicle in a state where we are licensed to sell the Vehicle, we will notify you of when we expect your Vehicle to be ready for delivery at your local Tesla Delivery Center, or other location as we may agree to. You agree to schedule and take delivery of your Vehicle within three (3) days of this date. If you do not respond to our notification or are unable to take delivery within the specified period, your Vehicle may be made available for sale to other customers. For new vehicles, if you do not take delivery within thirty (30) days of our first attempt to notify you, Tesla may cancel your order and keep your Order Fee.

If you wish to pick up or take delivery of your Vehicle in a state where we are not licensed to sell the Vehicle, or if you and Tesla otherwise agree, Tesla will, on your behalf and at your cost, coordinate the shipment of your Vehicle to you, generally from our factory in California or another state where we are licensed to sell the Vehicle. In such a case, you agree that this is a shipment contract under which Tesla will coordinate the shipping of the Vehicle to you via a third-party common carrier or other mode of transport. You agree that delivery of the Vehicle, including the transfer of title and risk of loss to you, will occur at the time your Vehicle is loaded onto the transport (i.e., FOB shipping point). During such transit, your Vehicle will be insured at no cost to you, and you will be the beneficiary of any claims for damage to the Vehicle or losses occurring while the Vehicle is in transit. To secure your final payment and performance under the terms of this Agreement, we will retain a security interest in the Vehicle and all proceeds therefrom until your obligations have been fulfilled.

If you choose to pick up or take delivery of your Vehicle in a state in which we are not licensed to sell the Vehicles, the Vehicle may be delivered or shipped to you from a state in which Tesla likewise does not have a license to sell the Vehicles. In such a case, you agree that the sale is transacted, and legal title to the Vehicle transfers to you, in the State of California, at the later of the time that (i) you make your final payment to Tesla in California or (ii) Tesla approves your purchase from a sales or delivery location in California (if applicable).

The estimated delivery date of your Vehicle, if provided, is only an estimate as we do not guarantee when your Vehicle will actually be delivered. Your actual delivery date is dependent on many factors, including your Vehicle's configuration and manufacturing availability.

**Incentives.**  Tesla makes no promises, warranties or guarantees regarding your eligibility for any incentives, rebates and tax credits (the "Incentives") related to the Vehicle. If Tesla has credited your Purchase Price for the amount of an Incentive, but you do not qualify for the Incentive at no fault of Tesla's, you shall reimburse Tesla for the amount of the credit.



**Premium Connectivity.**  A trial of Premium Connectivity will be included following delivery of the Vehicle. Once this trial is over as detailed at www.tesla.com/support/connectivity, you may subscribe to Premium Connectivity or your Vehicle will return to Standard Connectivity. Features included in Premium Connectivity are subject to change and may be limited or unavailable due to Obsolete Hardware. You understand and agree that the cellular or other network needed for any Connectivity is provided by your local telecommunications company and other external providers, and that we are not liable for any parts, software, upgrades or any other costs (including labor) needed to use or maintain network connectivity or compatibility with any features or services externally supplied to the Vehicle. Any connectivity issues (including for quality, functionality or coverage) or gaps in service unrelated to a hardware fault or failure are not covered by Tesla warranties.

**Obsolete Hardware and Future Firmware Updates.**  The Vehicle will regularly receive over-the-air software updates that add new features and enhance existing ones over Wi-Fi. Future software updates may not be provided for your Vehicle, or may not include all existing or new features or functionality, due to your Vehicle's age, configuration, data storage capacity or parts, after the expiration of your Warranty. We are not liable for any parts or labor or any other cost needed to update or retrofit the Vehicle so that it may receive these updates, or any Vehicle issues occurring after the installation of any software updates due to obsolete, malfunctioning (except as covered by your Warranty) or damaged hardware.

**Privacy Policy; Payment Terms for Services; Supercharger Fair Use Policy.**  Tesla's Customer Privacy Policy; Payment Terms for Services and Supercharger Fair Use Policy are incorporated into this Agreement and can be viewed at www.tesla.com/about/legal.

**Warranty.**  You will receive the Tesla New Vehicle Limited Warranty or the Tesla Used Vehicle Limited Warranty, as applicable, at or prior to the time of Vehicle delivery or pickup. You may also obtain a written copy of your warranty from us upon request or from our website.

**Limitation of Liability.**  We are not liable for any incidental, special or consequential damages arising out of this Agreement. Your sole and exclusive remedy under this Agreement will be limited to reimbursement of your Order Fee, Order Deposit and Transportation Fee.

---

**Agreement to Arbitrate.** Please carefully read this provision, which applies to any dispute between you and Tesla, Inc. and its affiliates, (together "Tesla").

If you have a concern or dispute, please send a written notice describing it and your desired resolution to resolutions@tesla.com.

If not resolved within 60 days, you agree that any dispute arising out of or relating to any aspect of the relationship between you and Tesla will not be decided by a judge or jury but instead by a single arbitrator in an arbitration administered by the American Arbitration Association (AAA) under its Consumer Arbitration Rules. This includes claims arising before this Agreement, such as claims related to statements about our products.

We will pay all AAA fees for any arbitration, which will be held in the city or county of your residence. To learn more about the Rules and how to begin an arbitration, you may call any AAA office or go to www.adr.org.

The arbitrator may only resolve disputes between you and Tesla, and may not consolidate claims without the consent of all parties. The arbitrator cannot hear class or representative claims or requests for relief on behalf of others purchasing or leasing Tesla vehicles. In other words, you and Tesla may bring claims against the other only in your or its individual capacity and not as a plaintiff or class member in any class or representative action. If a court or arbitrator decides that any part of this agreement to arbitrate cannot be enforced as to a particular claim for relief or remedy, then that claim or remedy (and only that claim or remedy) must be brought in court and any other claims must be arbitrated.

If you prefer, you may instead take an individual dispute to small claims court.

You may opt out of arbitration within 30 days after signing this Agreement by sending a letter to: Tesla, Inc.; P.O. Box 15430; Fremont, CA 94539-7970, stating your name, Vehicle Identification Number, and intent to opt out of the arbitration provision. If you do not opt out, this agreement to arbitrate overrides any different arbitration agreement between us, including any arbitration agreement in a lease or finance contract.

---

**No Resellers; Discontinuation; Cancellation.**  Tesla and its affiliates sell cars directly to end-consumers, and we may unilaterally cancel any order that we believe has been made with a view toward resale of the Vehicle or that has otherwise been made in bad faith. We may also cancel your order and refund your Order Fee, Order Deposit and Transportation Fee if we discontinue a product, feature or option after the time you place your order or if we determine that you are acting in bad faith. We work to fulfill your order as quickly as we can. If you do not take delivery of your Vehicle within ninety (90) days of placing your order at no fault of Tesla's, we may cancel your order and keep your Order Fee, Order Deposit and Transportation Fee. Alternatively, Tesla may give you the option to reconfigure your Vehicle at the current pricing.

**Default and Remedies.**  You will be in default of this Agreement if you provide false or misleading information in your order, or do anything else the law says is a default. If you are in default, we may, after any legally required notice or waiting period: (i) do anything to protect our interest in the Vehicle, including repossessing the Vehicle using legally permitted means, (ii) locate and disable the Vehicle electronically using our remote dynamic vehicle connection described in our Privacy Policy, (iii) sue you for damages or to get the Vehicle back, and/or (iv) charge you for amounts we spend taking these actions.

**Governing Law; Integration; Assignment.**  Except as provided below, the terms of this Agreement are governed by, and to be interpreted according to, the laws of the State in which we are licensed to sell motor vehicles that is nearest to your address indicated on your Vehicle Configuration. Prior agreements, oral statements, negotiations, communications or representations about the Vehicle sold under this Agreement are superseded by this Agreement. Terms relating to the purchase not expressly contained herein are not binding. We may assign this Agreement at our discretion to one of our affiliated entities.

**State-Specific Provisions.**  You acknowledge that you have read and understand the provisions applicable to you in the State-Specific Provisions attachment to this Agreement.

This Agreement is entered into and effective as of the date you accept this Agreement, by electronic means or otherwise. By confirming and accepting this Agreement, you agree to the terms and conditions of this Agreement.



## State Specific Provisions

For **NEW YORK** residents: If the Vehicle is not delivered in accordance with the Agreement within 30 days following the estimated delivery date, you have the right to cancel the Agreement and receive a full refund, unless the delay in delivery is attributable to you.

For **MASSACHUSETTS** residents: ATTENTION PURCHASER: All vehicles are WARRANTED as a matter of state law. They must be fit to be driven safely on the roads and must remain in good running condition for a reasonable period of time. If you have significant problems with the Vehicle or if it will not pass a Massachusetts inspection, you should notify us immediately. We may be required to fix the car or refund your money. THIS WARRANTY IS IN ADDITION TO ANY OTHER WARRANTY GIVEN BY US.

For **MICHIGAN** residents and purchasers: The terms of this Agreement are governed by, and are to be interpreted according to, Michigan law. The sale of your vehicle will be transacted outside of Michigan, and in a state in which Tesla has a license to sell vehicles, as explained in the body of the Agreement.

For **WASHINGTON, D.C.** residents:

NOTICE TO PURCHASER

IF, AFTER A REASONABLE NUMBER OF ATTEMPTS, THE MANUFACTURER, ITS AGENT, OR AUTHORIZED DEALER IS UNABLE TO REPAIR OR CORRECT ANY NON-CONFORMITY, DEFECT, OR CONDITION WHICH RESULTS IN SIGNIFICANT IMPAIRMENT OF THE MOTOR VEHICLE, THE MANUFACTURER, AT THE OPTION OF THE CONSUMER, SHALL REPLACE THE MOTOR VEHICLE WITH A COMPARABLE MOTOR VEHICLE, OR ACCEPT RETURN OF THE MOTOR VEHICLE FROM THE CONSUMER AND REFUND TO THE CONSUMER THE FULL PURCHASE PRICE, INCLUDING ALL SALES TAX, LICENSE FEES, REGISTRATION FEES, AND ANY SIMILAR GOVERNMENT CHARGES. IF YOU HAVE ANY QUESTIONS CONCERNING YOUR RIGHTS, YOU MAY CONTACT THE DEPARTMENT OF CONSUMER AND REGULATORY AFFAIRS.

Seller certifies that the information contained in the itemization of the purchase price, including the Vehicle Configuration, and required by Chapter 3 (Buying, Selling and Financing Motor Vehicles) of Title 16 of the Code of D.C. Municipal Regulations, is true to the best of our knowledge.

For **RHODE ISLAND** residents: Rhode Island law requires that all motor vehicles sold at retail must be in such condition as to pass a State safety inspection at the time of sale so as to protect consumers.

# EXHIBIT 2

LAW 553-CA-ARB-e 7/16

# RETAIL INSTALLMENT SALE CONTRACT – SIMPLE FINANCE CHARGE (WITH ARBITRATION PROVISION)

Dealer Number _____  Contract Number _____  R.O.S. Number _____  Stock Number _____

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| Henry Ba Yeh | Sharon Yu Ng | Tesla Motors Inc.<br>45500 Fremont Blvd<br>Fremont, CA 94538<br>Alameda |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on all pages of this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Odometer | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| New | 2022 | Tesla Model Y | 15 | ███ | Personal, family or household unless otherwise indicated below.<br>☐ business or commercial |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $ 7,971.45 is |
|---|---|---|---|---|
| 2.49 % | $ 5,700.88 (e) | $ 72,440.00 (e) | $ 78,140.88 (e) | $ 86,112.33 (e) |

(e) means an estimate

**YOUR PAYMENT SCHEDULE WILL BE:**

| Number of Payments: | Amount of Payments: | When Payments Are Due: |
|---|---|---|
| One Payment of  N/A | N/A | N/A |
| One Payment of  N/A | N/A | N/A |
| One Payment of  N/A | N/A | N/A |
| 72 | 1,085.29 | Monthly beginning 04/12/2022 |
| N/A | N/A | N/A |
| One final payment  N/A | N/A | N/A |

**Late Charge.** If payment is not received in full within 10 days after it is due, you will pay a late charge of 5% of the part of the payment that is late.
**Prepayment.** If you pay early, you may be charged a minimum finance charge.
**Security Interest.** You are giving a security interest in the vehicle being purchased.
**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date, minimum finance charges, and security interest.

### STATEMENT OF INSURANCE

**NOTICE.** No person is required as a condition of financing the purchase of a motor vehicle to purchase or negotiate any insurance through a particular insurance company, agent or broker. You are not required to buy any other insurance to obtain credit. Your decision to buy or not buy other insurance will not be a factor in the credit approval process.

**Vehicle Insurance**

| | | Term | Premium |
|---|---|---|---|
| $ N/A Ded. Comp., Fire & Theft | | N/A Mos. | $ N/A |
| $ N/A Ded. Collision | | N/A Mos. | $ N/A |
| Bodily Injury $ N/A Limits | | N/A Mos. | $ N/A |
| Property Damage $ N/A Limits | | N/A Mos. | $ N/A |
| Medical N/A | | N/A Mos. | $ N/A |
| N/A | | N/A Mos. | $ N/A |
| Total Vehicle Insurance Premiums | | | $ N/A |

UNLESS A CHARGE IS INCLUDED IN THIS AGREEMENT FOR PUBLIC LIABILITY OR PROPERTY DAMAGE INSURANCE, PAYMENT FOR SUCH COVERAGE IS NOT PROVIDED BY THIS AGREEMENT.
You may buy the physical damage insurance this contract requires from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit.

Buyer X *Henry Ba Yeh*
Co-Buyer X *Sharon Yu Ng*
Seller X *Yaron Klein*

**Agreement to Arbitrate:** By signing below, you agree that, pursuant to the Arbitration Provision on page 7 of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

Buyer Signs X *Henry Ba Yeh*
Co-Buyer Signs X *Sharon Yu Ng*

**AUTO BROKER FEE DISCLOSURE**
If this contract reflects the retail sale of a new motor vehicle, the sale is not subject to a fee received by an autobroker from us unless the following box is checked:
☐ Name of autobroker receiving fee, if applicable: N/A

**ITEMIZATION OF THE AMOUNT FINANCED** (Seller may keep part of the amounts paid to others.)

1. **Total Cash Price**
   A. Cash Price of Motor Vehicle and Accessories $ 72,440.00 (A)
      1. Cash Price Vehicle $ 72,440.00
      2. Cash Price Accessories $ N/A
      3. Other (Nontaxable)
         Describe ___N/A___ $ N/A
         Describe ___N/A___ $ N/A
   B. Document Processing Charge (not a governmental fee) $ N/A (B)
   C. Emissions Testing Charge (not a governmental fee) $ N/A (C)
   D. (Optional) Theft Deterrent Device(s)
      1. (paid to) ___N/A___ $ N/A (D1)
      2. (paid to) ___N/A___ $ N/A (D2)
      3. (paid to) ___N/A___ $ N/A (D3)
   E. (Optional) Surface Protection Product(s)
      1. (paid to) ___N/A___ $ N/A (E1)
      2. (paid to) ___N/A___ $ N/A (E2)
   F. EV Charging Station (paid to) ___N/A___ $ N/A (F)
   G. Sales Tax (on taxable items in A through F) $ 7,153.45 (G)
   H. Electronic Vehicle Registration or Transfer Charge (not a governmental fee) (paid to) Tesla, Inc. $ 30.00 (H)
   I. (Optional) Service Contract(s)
      1. (paid to) ___N/A___ $ N/A (I1)
      2. (paid to) ___N/A___ $ N/A (I2)
      3. (paid to) ___N/A___ $ N/A (I3)
      4. (paid to) ___N/A___ $ N/A (I4)
      5. (paid to) ___N/A___ $ N/A (I5)
   J. Prior Credit or Lease Balance (e) paid by Seller to
      Vehicle 1 ___N/A___ Vehicle 2 ___N/A___ $ 0.00 (J)
      (see downpayment and trade-in calculation)
   K. (Optional) Debt Cancellation Agreement $ N/A (K)
   L. (Optional) Used Vehicle Contract Cancellation Option Agreement $ N/A (L)
   M. Other (paid to) ___N/A___ $ N/A (M)
      For ___N/A___
   N. Other (paid to) ___N/A___ $ N/A (N)
      For ___N/A___
   **Total Cash Price (A through N)** $ 79,623.45 (1)

2. **Amounts Paid to Public Officials**
   A. Vehicle License Fees $ 470.00 (A)
   B. Registration/Transfer/Titling Fees $ 311.00 (B)
   C. California Tire Fees $ 7.00 (C)
   D. Other ___N/A___ $ N/A (D)
   **Total Official Fees (A through D)** $ 788.00 (2)

3. **Amount Paid to Insurance Companies**
   (Total premiums from Statement of Insurance) $ N/A (3)

4. ☐ State Emissions Certification Fee or ☐ State Emissions Exemption Fee $ N/A (4)

5. **Subtotal** (1 through 4) $ 80,411.45 (5)

6. **Total Downpayment**
   A. Total Agreed Value of Property Being Traded-In (see Trade-In Vehicle(s)): $ 0.00 (A)
      Vehicle 1 $ 0.00  Vehicle 2 $ N/A
   B. Total Less Prior Credit or Lease Balance (e) $ 0.00 (B)
      Vehicle 1 $ 0.00  Vehicle 2 $ N/A
   C. Total Net Trade-In (A-B) (indicate if negative number) $ 0.00 (C)
      Vehicle 1 $ 0.00  Vehicle 2 $ N/A
   D. Deferred Downpayment Payable to Seller $ N/A (D)
   E. Manufacturer's Rebate $ 750.00 (E)
   F. Other ___N/A___ $ N/A (F)
   G. Cash, Cash Equivalent, Check, Credit Card, or Debit Card $ 7,221.45 (G)
   **Total Downpayment (C through G)** $ 7,971.45 (6)
   (If negative, enter zero on line 6 and enter the amount less than zero as a positive number on line 1J above)

7. **Amount Financed** (5 less 6) $ 72,440.00 (7)

---

**OPTIONAL SERVICE CONTRACT(S)** You want to purchase the service contract(s) written with the following company(ies) for the term(s) shown below for the charge(s) shown in item 1I.

I1 Company ___N/A___
Term ___N/A___ Mos. or ___N/A___ Miles
I2 Company ___N/A___
Term ___N/A___ Mos. or ___N/A___ Miles
I3 Company ___N/A___
Term ___N/A___ Mos. or ___N/A___ Miles
I4 Company ___N/A___
Term ___N/A___ Mos. or ___N/A___ Miles
I5 Company ___N/A___
Term ___N/A___ Mos. or ___N/A___ Miles
Buyer X ___N/A___

**OPTIONAL DEBT CANCELLATION AGREEMENT.** A debt cancellation agreement is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy debt cancellation, the charge is shown in item 1K of the Itemization of Amount Financed. See your debt cancellation agreement for details on the terms and conditions it provides. It is a part of this contract.

Term ___N/A___ Mos. _____
                                Debt Cancellation Agreement

I want to buy a debt cancellation agreement.

Buyer Signs X ___N/A___

**Trade-In Vehicle(s)**

1. Vehicle 1
Year ___N/A___ Make ___N/A___
Model ___N/A___ Odometer ___N/A___
VIN ___N/A___
a. Agreed Value of Property $ 0.00
b. Buyer/Co-Buyer Retained Trade Equity $ N/A
c. Agreed Value of Property
   Being Traded-In (a–b) $ 0.00
d. Prior Credit or Lease Balance $ 0.00
e. Net Trade-In (c–d) (must be ≥ 0
   for buyer/co-buyer to retain equity) $ 0.00

2. Vehicle 2
Year ___N/A___ Make ___N/A___
Model ___N/A___ Odometer ___N/A___
VIN ___N/A___
a. Agreed Value of Property $ N/A
b. Buyer/Co-Buyer Retained Trade Equity $ N/A
c. Agreed Value of Property
   Being Traded-In (a–b) $ N/A
d. Prior Credit or Lease Balance $ N/A
e. Net Trade-In (c–d) (must be ≥ 0
   for buyer/co-buyer to retain equity) $ N/A

**Total Agreed Value of Property**
   Being Traded-In (1c+2c) $ 0.00 *
**Total Prior Credit or Lease**
   Balance (1d+2d) $ 0.00 *
**Total Net Trade-In** (1e+2e) $ 0.00 *
(*See item 6A–6C in the Itemization of Amount Financed.)

**OPTION:** ☐ You pay no finance charge if the Amount Financed, item 7, is paid in full on or before ___N/A___ , Year ___N/A___ .
SELLER'S INITIALS ___N/A___

RN116008629-1645810714    This is a retention copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 3:23-cv-01704-JCS   Document 22-2   Filed 06/02/23   Page 12 of 16

**Trade-In Payoff Agreement.** Seller relied on information from you and/or the lienholder or lessor of your trade-in vehicle(s) to arrive at the payoff amount shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s). You understand that the amount quoted is an estimate.

Seller agrees to pay the payoff amount shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s) to the lienholder or lessor of the trade-in vehicle(s), or its designee. If the actual payoff amount is more than the amount shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s), you must pay the Seller the excess on demand. If the actual payoff amount is less than the amount shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s), Seller will refund to you any overage Seller receives from your prior lienholder or lessor. Except as stated in the "NOTICE" on page 5 of this contract, any assignee of this contract will not be obligated to pay the Prior Credit or Lease Balance shown in Trade-In Vehicle(s) or any refund.

**Buyer Signature X** _____ **Co-Buyer Signature X** _____

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to the contract must be in writing and both you and we must sign it. No oral changes are binding.

**Buyer Signs X** *Henry Ba Yeh* _____ **Co-Buyer Signs X** *Sharon Yu Ng* _____

**SELLER'S RIGHT TO CANCEL** If Buyer and Co-Buyer sign here, the provisions of the Seller's Right to Cancel section on page 5 of this contract giving the Seller the right to cancel if Seller is unable to assign this contract to a financial institution will apply.

**Buyer X** *Henry Ba Yeh* _____ **Co-Buyer X** *Sharon Yu Ng* _____

THE MINIMUM PUBLIC LIABILITY INSURANCE LIMITS PROVIDED IN LAW MUST BE MET BY EVERY PERSON WHO PURCHASES A VEHICLE. IF YOU ARE UNSURE WHETHER OR NOT YOUR CURRENT INSURANCE POLICY WILL COVER YOUR NEWLY ACQUIRED VEHICLE IN THE EVENT OF AN ACCIDENT, YOU SHOULD CONTACT YOUR INSURANCE AGENT.
WARNING:
YOUR PRESENT POLICY MAY NOT COVER COLLISION DAMAGE OR MAY NOT PROVIDE FOR FULL REPLACEMENT COSTS FOR THE VEHICLE BEING PURCHASED. IF YOU DO NOT HAVE FULL COVERAGE, SUPPLEMENTAL COVERAGE FOR COLLISION DAMAGE MAY BE AVAILABLE TO YOU THROUGH YOUR INSURANCE AGENT OR THROUGH THE SELLING DEALER. HOWEVER, UNLESS OTHERWISE SPECIFIED, THE COVERAGE YOU OBTAIN THROUGH THE DEALER PROTECTS ONLY THE DEALER, USUALLY UP TO THE AMOUNT OF THE UNPAID BALANCE REMAINING AFTER THE VEHICLE HAS BEEN REPOSSESSED AND SOLD.
FOR ADVICE ON FULL COVERAGE THAT WILL PROTECT YOU IN THE EVENT OF LOSS OR DAMAGE TO YOUR VEHICLE, YOU SHOULD CONTACT YOUR INSURANCE AGENT.
THE BUYER SHALL SIGN TO ACKNOWLEDGE THAT HE/SHE UNDERSTANDS THESE PUBLIC LIABILITY TERMS AND CONDITIONS.

**S/S X** *Henry Ba Yeh* _____ **X** *Sharon Yu Ng* _____

**Electronic Contracting and Signature Acknowledgment.** You agree that (i) this contract is an electronic contract executed by you using your electronic signature, (ii) your electronic signature signifies your intent to enter into this contract and that this contract be legally valid and enforceable in accordance with its terms to the same extent as if you had executed this contract using your written signature and (iii) the authoritative copy of this contract ("Authoritative Copy") shall be that electronic copy that resides in a document management system designated by us for the storage of authoritative copies of electronic records, which shall be deemed held by us in the ordinary course of business. Notwithstanding the foregoing, if the Authoritative Copy is converted by printing a paper copy which is marked by us as the original (the "Paper Contract"), then you acknowledge and agree that (1) your signing of this contract with your electronic signature also constitutes issuance and delivery of such Paper Contract, (2) your electronic signature associated with this contract, when affixed to the Paper Contract, constitutes your legally valid and binding signature on the Paper Contract and (3) subsequent to such conversion, your obligations will be evidenced by the Paper Contract alone.

**CREDIT DISABILITY INSURANCE NOTICE**
**CLAIM PROCEDURE**

If you become disabled, you must tell us right away. (You are advised to send this information to the same address to which you are normally required to send your payments, unless a different address or telephone number is given to you in writing by us as the location where we would like to be notified.) We will tell you where to get claim forms. You must send in the completed form to the insurance company as soon as possible and tell us as soon as you do.

If your disability insurance covers all of your missed payment(s), WE CANNOT TRY TO COLLECT WHAT YOU OWE OR FORECLOSE UPON OR REPOSSESS ANY COLLATERAL UNTIL THREE CALENDAR MONTHS AFTER your first missed payment is due or until the insurance company pays or rejects your claim, whichever comes first. We can, however, try to collect, foreclose, or repossess if you have any money due and owing us or are otherwise in default when your disability claim is made or if a senior mortgage or lien holder is foreclosing.

If the insurance company pays the claim within the three calendar months, we must accept the money as though you paid on time. If the insurance company rejects the claim within the three calendar months or accepts the claim within the three calendar months on a partial disability and pays less than for a total disability, you will have 35 days from the date that the rejection or the acceptance of the partial disability claim is sent to pay past due payments, or the difference between the past due payments and what the insurance company pays for the partial disability, plus late charges. You can contact us, and we will tell you how much you owe. After that time, we can take action to collect or foreclose or repossess any collateral you may have given.

If the insurance company accepts your claim but requires that you send in additional forms to remain eligible for continued payments, you should send in these completed additional forms no later than required. If you do not send in these forms on time, the insurance company may stop paying, and we will then be able to take action to collect or foreclose or repossess any collateral you may have given.

LAW 553-CA-ARB-e 7/16 v1    Page 3 of 7

This retention copy was created on Feb 26, 2022 12:45:45 PM for Tesla, Inc..

RN116008629-1645810714
Case 2:23-cv-01704-JCS   Document 22-2   Filed 06/02/23   Page 13 of 16
This is a retention copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

**OTHER IMPORTANT AGREEMENTS**

1. **FINANCE CHARGE AND PAYMENTS**
   a. **How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed. Seller - Creditor may receive part of the Finance Charge.
   b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.
   c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on page 1 of this contract on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.
   d. **You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment. As of the date of your payment, if the minimum finance charge is greater than the earned Finance Charge, you may be charged the difference; the minimum finance charge is as follows: (1) $25 if the original Amount Financed does not exceed $1,000, (2) $50 if the original Amount Financed is more than $1,000 but not more than $2,000, or (3) $75 if the original Amount Financed is more than $2,000.

2. **YOUR OTHER PROMISES TO US**
   a. **If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

   > **GAP LIABILITY NOTICE**
   > In the event of theft or damage to your vehicle that results in a total loss, there may be a gap between the amount you owe under this contract and the proceeds of your insurance settlement and deductible. THIS CONTRACT PROVIDES THAT YOU ARE LIABLE FOR THE GAP AMOUNT. An optional debt cancellation agreement for coverage of the gap amount may be offered for an additional charge.

   b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.
   c. **Security Interest.**
   You give us a security interest in:
   - The vehicle and all parts or goods put on it;
   - All money or goods received (proceeds) for the vehicle;
   - All insurance, maintenance, service, or other contracts we finance for you; and
   - All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.
   This secures payment of all you owe on this contract. It also secures your other agreements in this contract as the law allows. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.

   d. **Insurance you must have on the vehicle.**
   You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium for the insurance and a finance charge computed at the Annual Percentage Rate shown on page 1 of this contract or, at our option, the highest rate the law permits. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.
   e. **What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

3. **IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**
   a. **You may owe late charges.** You will pay a late charge on each late payment as shown on page 1 of this contract. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments. If you pay late, we may also take the steps described below.
   b. **You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once, subject to any right the law gives you to reinstate this contract.
   Default means:
   - You do not pay any payment on time;
   - You give false, incomplete, or misleading information on a credit application;
   - You start a proceeding in bankruptcy or one is started against you or your property;
   - The vehicle is lost, damaged or destroyed; or
   - You break any agreements in this contract.
   The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.
   c. **You may have to pay collection costs.** You will pay our reasonable costs to collect what you owe, including attorney fees, court costs, collection agency fees, and fees paid for other reasonable collection efforts. You agree to pay a charge not to exceed $15 if any check you give to us is dishonored.
   d. **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.
   e. **How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). You may redeem the vehicle by paying all you owe, or you may have the right to reinstate this contract and redeem the vehicle by paying past due payments and any late charges, providing proof of insurance, and/or taking other action to cure the default. We will provide you all notices required by law to tell you when and how much to pay and/or what action you must take to redeem the vehicle.

RN116008629-1645810714   This is a retention copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 3:23-cv-01704-JCS   Document 22-2   Filed 06/02/23   Page 14 of 16

f. **We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.

   We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at the Annual Percentage Rate shown on page 1 of this contract, not to exceed the highest rate permitted by law, until you pay.

g. **What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, you agree that we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

4. **WARRANTIES SELLER DISCLAIMS**

   **If you do not get a written warranty, and the Seller does not enter into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.**

   This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide. If the Seller has sold you a certified used vehicle, the warranty of merchantability is not disclaimed.

5. **Used Car Buyers Guide.** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

   Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

6. **SERVICING AND COLLECTION CONTACTS**

   You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you. **You agree that you will within a reasonable time notify us of any change in your name, address, or employment.**

7. **APPLICABLE LAW**

   Federal law and California law apply to this contract. If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.

8. **WARRANTIES OF BUYER**

   You promise you have given true and correct information in your application for credit, and you have no knowledge that will make that information untrue in the future. We have relied on the truth and accuracy of that information in entering into this contract. Upon request, you will provide us with documents and other information necessary to verify any item contained in your credit application.

You waive the provisions of Calif. Vehicle Code Section 1808.21 and authorize the California Department of Motor Vehicles to furnish your residence address to us.

---

**Seller's Right to Cancel**

a. Seller agrees to deliver the vehicle to you on the date this contract is signed by Seller and you. You understand that it may take some time for Seller to verify your credit and assign the contract. You agree that if Seller is unable to assign the contract to any one of the financial institutions with whom Seller regularly does business under an assignment acceptable to Seller, Seller may cancel the contract.

b. Seller shall give you written notice (or in any other manner in which actual notice is given to you) within 10 days of the date this contract is signed if Seller elects to cancel. Upon receipt of such notice, you must immediately return the vehicle to Seller in the same condition as when sold, reasonable wear and tear excepted. Seller must give back to you all consideration received by Seller, including any trade-in vehicle.

c. If you do not immediately return the vehicle, you shall be liable for all expenses incurred by Seller in taking the vehicle from you, including reasonable attorney's fees.

d. While the vehicle is in your possession, all terms of the contract, including those relating to use of the vehicle and insurance for the vehicle, shall be in full force and you shall assume all risk of loss or damage to the vehicle. You must pay all reasonable costs for repair of any damage to the vehicle until the vehicle is returned to Seller.

---

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only to goods or services obtained primarily for personal, family or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

LAW 553-CA-ARB-e 7/16 v1    Page 5 of 7

This retention copy was created on Feb 26, 2022 12:45:45 PM for Tesla, Inc..

**Notice to buyer:** (1) Do not sign this agreement before you read it or if it contains any blank spaces to be filled in. (2) You are entitled to a completely filled in copy of this agreement. (3) You can prepay the full amount due under this agreement at any time. (4) If you default in the performance of your obligations under this agreement, the vehicle may be repossessed and you may be subject to suit and liability for the unpaid indebtedness evidenced by this agreement.

If you have a complaint concerning this sale, you should try to resolve it with the seller.
Complaints concerning unfair or deceptive practices or methods by the seller may be referred to the city attorney, the district attorney, or an investigator for the Department of Motor Vehicles, or any combination thereof.
After this contract is signed, the seller may not change the financing or payment terms unless you agree in writing to the change. You do not have to agree to any change, and it is an unfair or deceptive practice for the seller to make a unilateral change.

Buyer Signature X _Henry Ba Yeh_    Co-Buyer Signature X _Sharon Yu Ng_

**The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.**

**THERE IS NO COOLING-OFF PERIOD UNLESS YOU OBTAIN A CONTRACT CANCELLATION OPTION**
California law does not provide for a "cooling-off" or other cancellation period for vehicle sales. Therefore, you cannot later cancel this contract simply because you change your mind, decide the vehicle costs too much, or wish you had acquired a different vehicle. After you sign below, you may only cancel this contract with the agreement of the seller or for legal cause, such as fraud. However, California law does require a seller to offer a two-day contract cancellation option on used vehicles with a purchase price of less than forty thousand dollars ($40,000), subject to certain statutory conditions. This contract cancellation option requirement does not apply to the sale of a recreational vehicle, a motorcycle, or an off-highway motor vehicle subject to identification under California law. See the vehicle contract cancellation option agreement for details.

YOU AGREE TO THE TERMS OF THIS CONTRACT. YOU CONFIRM THAT BEFORE YOU SIGNED THIS CONTRACT, WE GAVE IT TO YOU, AND YOU WERE FREE TO TAKE IT AND REVIEW IT. YOU ACKNOWLEDGE THAT YOU HAVE READ ALL PAGES OF THIS CONTRACT, INCLUDING THE ARBITRATION PROVISION ON PAGE 7 OF THIS CONTRACT, BEFORE SIGNING BELOW. YOU CONFIRM THAT YOU RECEIVED A COMPLETELY FILLED-IN COPY WHEN YOU SIGNED IT.

Buyer Signature X _Henry Ba Yeh_   Date 02/26/2022   Co-Buyer Signature X _Sharon Yu Ng_   Date 02/26/2022

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other Owner Signature X ___N/A___   Address ___N/A___

**GUARANTY:** To induce us to sell the vehicle to Buyer, each person who signs as a Guarantor individually guarantees the payment of this contract. If Buyer fails to pay any money owing on this contract, each Guarantor must pay it when asked. Each Guarantor will be liable for the total amount owing even if other persons also sign as Guarantor, and even if Buyer has a complete defense to Guarantor's demand for reimbursement. Each Guarantor agrees to be liable even if we do one or more of the following: (1) give the Buyer more time to pay one or more payments; (2) give a full or partial release to any other Guarantor; (3) release any security; (4) accept less from the Buyer than the total amount owing; or (5) otherwise reach a settlement relating to this contract or extend the contract. Each Guarantor acknowledges receipt of a completed copy of this contract and guaranty at the time of signing.

Guarantor waives notice of acceptance of this Guaranty, notice of the Buyer's non-payment, non-performance, and default; and notices of the amount owing at any time, and of any demands upon the Buyer.

Guarantor X ___N/A___   Date ___N/A___    Guarantor X ___N/A___   Date ___N/A___
Address ___N/A___                         Address ___N/A___

Seller Signs _Tesla Motors Inc._   Date 02/26/2022   By X _Yaron Klein_   Title _Treasurer_

```
```
RN116008629-1645810714
This is a retention copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.
Case 3:23-cv-01704-JCS   Document 22-2   Filed 06/02/23   Page 16 of 16

**ARBITRATION PROVISION**
**PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS**

1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.
2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.
3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose the American Arbitration Association, 1633 Broadway, 10th Floor, New York, New York 10019 (www.adr.org), or any other organization to conduct the arbitration subject to our approval. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district in which you reside unless the Seller-Creditor is a party to the claim or dispute, in which case the hearing will be held in the federal district where this contract was executed. We will pay your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $5000, unless the law or the rules of the chosen arbitration organization require us to pay more. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Provision, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Provision shall be unenforceable.



LAW® FORM NO. 553-CA-ARB-e (REV. 7/16)
©2016 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

LAW 553-CA-ARB-e 7/16 v1    Page 7 of 7

This retention copy was created on Feb 26, 2022 12:45:45 PM for Tesla, Inc..