MORGAN, LEWIS & BOCKIUS LLP
David L. Schrader, Bar No. 149638
david.schrader@morganlewis.com
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA  90071-3132
Tel: +1.213.612.2500
Fax 1.213.612.2501

Mark A. Feller, Bar No. 319789
mark.feller@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA  94105-1126
Tel: +1.415.442.1000
Fax: +1.415.442.1001

Brian M. Ercole
(admitted *pro hac vice*)
brian.ercole@morganlewis.com
600 Brickell Ave, Suite 1600
Miami, FL  33131-3075
Tel: +1.305.415.3000
Fax: +1.305.415.3001

Attorneys for Defendant
TESLA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HENRY YEH and G.Y., a minor by and
through his guardian Henry Yeh, on behalf of
themselves, all others similarly situated, and
the general public,

　　　　　　　　Plaintiffs,

　　　　vs.

TESLA, INC.,

　　　　　　　　Defendant.

Case No. 3:23-cv-01704-JCS

**DEFENDANT TESLA INC.'S NOTICE
OF MOTION AND MOTION TO
COMPEL ARBITRATION OF
PLAINTIFFS' CLAIMS ON AN
INDIVIDUAL BASIS  AND TO
DISMISS THE ACTION;
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT
THEREOF**

[Declarations of David L. Schrader, Jasjit
Ahluwalia, and Minu Sinha, and Proposed
Order submitted concurrently herewith]

Hearing Date:　September 15, 2023
Time:　　　　　9:30 a.m.
Ctrm:　　　　　F, 15th Floor
Judge:　　　　 Hon. Joseph C. Spero

Compl. Filed:　April 7, 2023

DEFENDANT TESLA INC.'S NOTICE OF MOTION, MOTION TO COMPEL ARBITRATION OF
PLAINTIFFS' CLAIMS ON AN INDIVIDUAL BASIS AND TO DISMISS THE ACTION, AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION

1
2

**NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OF PLAINTIFFS'**

**CLAIMS ON AN INDIVIDUAL BASIS AND TO DISMISS THE ACTION**

3       PLEASE TAKE NOTICE that on September 15, 2023, at 9:30 a.m. or as soon thereafter as

4    the matter may be heard before the Honorable Joseph C. Spero, Courtroom F, of the above-entitled

5    Court, located at 450 Golden Gate Avenue San Francisco, CA 94102, Tesla, Inc. ("Tesla") moves

6    this Court to compel Plaintiffs Henry Yeh and G. Y. ("Plaintiffs") to submit their claims to

7    individual, non-class arbitration per the terms of Plaintiff Yeh's agreements with Tesla and to

8    dismiss the case.  Alternatively, Tesla seeks a stay of the action pending the outcome of individual,

9    non-class arbitration.

10      Tesla makes this Motion under the Federal Arbitration Act, 9 U.S.C. §§ 1-16, on the ground

11   that Plaintiff Henry Yeh entered into enforceable arbitration agreements that forego class claims

12   and require arbitration of his causes of action against Tesla in the Amended Complaint on an

13   individual, non-class basis.  Plaintiff G.Y., Yeh's one-year old minor son, also must arbitrate his

14   claims under applicable state law contract principles, including principles of estoppel.

15      This Motion is based on this Notice of Motion and Motion, the accompanying

16   Memorandum of Points and Authorities, the concurrently filed declarations of Minu Sinha and

17   Jasjit Ahluwalia, and all exhibits thereto, all pleadings and files in this action, and any written or

18   oral argument presented to the Court at or prior to the hearing on this Motion.

19    Dated: July 31, 2023            MORGAN, LEWIS & BOCKIUS LLP
                                       David L. Schrader
20                                     Brian M. Ercole
                                       Mark A. Feller
21

22                                     By   */s/ David L. Schrader*
23                                         David L. Schrader

24                                     *Attorneys for Defendant Tesla, Inc.*

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT TESLA INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OF
PLAINTIFFS' CLAIMS ON AN INDIVIDUAL BASIS AND TO DISMISS THE ACTION

**TABLE OF CONTENTS**

                                                                                                      **Page**

I.      INTRODUCTION .................................................................................................... 1

II.     SUMMARY OF ARGUMENT ............................................................................... 2

III.    RELEVANT FACTS AND ALLEGATIONS ......................................................... 4

        A.    Yeh First Agreed To Arbitrate Any Disputes With Tesla When He Ordered
              His Model Y Vehicle And Entered Into The Order Agreement. ......................... 4

        B.    Yeh Again Agreed To Arbitrate Any Disputes With Tesla When He Took
              Delivery Of His New Model Y Vehicle And Signed The Sale Agreement. ........... 7

        C.    Ignoring These Agreements, Yeh Filed This Putative Class Action Lawsuit
              Based On An Inaccurate News Article. ................................................................. 8

        D.    Rather Than File His Claims In Arbitration, Yeh Again Breached The
              Agreements And Filed An Amended Complaint Adding His Infant Son As
              A Named Plaintiff ................................................................................................. 9

IV.     LEGAL ARGUMENT ............................................................................................. 10

        A.    Yeh Must Arbitrate All Of His Claims Against Tesla On An Individual
              Basis. ................................................................................................................... 10

              1.    Yeh Entered Into Two Separate Agreements To Arbitrate His
                    Disputes With Tesla. ................................................................................ 13

                    a.    Sale Agreement ............................................................................ 13

                    b.    Order Agreement .......................................................................... 14

              2.    Each Agreement Delegates The Arbitrability Of  Yeh's Claims To
                    The Arbitrator To Decide. ....................................................................... 16

                    a.    Sale Agreement ............................................................................ 16

                    b.    Order Agreement .......................................................................... 17

              3.    Yeh's Claims Clearly Fall Within Scope Of The Arbitration
                    Provisions In The Agreements. ................................................................ 18

                    a.    The Sale Agreement ..................................................................... 18

                    b.    Order Agreement .......................................................................... 19

              4.    Arbitration Must Be Conducted On An Individual, Non-Class
                    Basis. ......................................................................................................... 20

        B.    G.Y. Also Must Arbitrate His Derivative Claims. ............................................... 21

        C.    The Court Should Dismiss This Action, Or, In The Alternative, Stay It
              Pending The Outcome Of Arbitration. ................................................................. 23

V.      CONCLUSION ....................................................................................................... 24

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

DEFENDANT TESLA INC.'S MOTION TO COMPEL ARBITRATION OF PLAINTIFFS' CLAIMS ON AN
INDIVIDUAL BASIS AND TO DISMISS THE ACTION

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Am. Exp. Co. v. Italian Colors Rest.*,
5
    570 U.S. 228 (2013) ............................................................................................ 4, 11, 20

6

*Arab v. BMW of N. Am., LLC*,
7
    2019 WL 8011713 (C.D. Cal. Sept. 10, 2019) ......................................................... 17

8

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) ................................................................................................. 20

9

*Ball v. Tesla Motors, Inc.*,
10
    2022 WL 1433646 (E.D. Wis. Mar. 31, 2022), *appeal dismissed*, 2022 WL
    16627493 (7th Cir. Oct. 17, 2022) ............................................................................ 2
11

*Brennan v. Opus Bank*,
12
    796 F.3d 1125 (9th Cir. 2015) .............................................................................. 3, 18

13

*Cap. Grp. Commc'ns Inc v. Xedar Corp.*,
14
    2013 WL 4013711 (N.D. Cal. Aug. 5, 2013) .......................................................... 12

15

*Chan v. Charter Commc'ns Holding Co.*,
    2015 WL 12655701 (C.D. Cal. Aug. 6, 2015) ................................................. 4, 21, 22

16

*Chatman v. Jimmy Gray Chevrolet, Inc.*,
17
    2016 WL 5745697 (N.D. Miss. Sept. 30, 2016) ...................................................... 17

18

*Chavez v. Bank of Am.*,
19
    2011 WL 4712204 (N.D. Cal. Oct. 7, 2011) (Spero, J.) ......................................... 13

20

*Chien v. Bumble Inc.*,
    2022 WL 17069842 (S.D. Cal. Nov. 17, 2022) ...................................................... 19

21

*Crowley Mar. Corp. v. Bos. Old Colony Ins. Co.*,
22
    158 Cal. App. 4th 1061 (2008) ................................................................................ 21

23

*Cty. of Contra Costa v. Kaiser Found. Health Plan, Inc.*,
24
    47 Cal. App. 4th 237 (1996), *as modified* (Aug. 1, 1996) ..................................... 21

25

*Dohrmann v. Intuit, Inc.*,
    823 F. App'x 482 (9th Cir. 2020) ............................................................................ 15

26

*Doyle v. Giuliucci*,
27
    62 Cal. 2d 606, 401 P.2d 1 (1965) .......................................................................... 21

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

ii

DEFENDANT TESLA INC.'S MOTION TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS AND TO
DISMISS THE ACTION

*Epic Sys. Corp. v. Lewis*,
   138 S. Ct. 1612 (2018) ................................................................................................. 20

*First Options of Chicago, Inc. v. Kaplan*,
   514 U.S. 938 (1995) .................................................................................................. 2, 11

*Fish v. Tesla, Inc.*,
   2022 WL 1552137 (C.D. Cal. May 12, 2022) ........................................................ 2, 14, 20

*Fontana v. Chef's Warehouse Inc.*,
   2017 WL 2591872 (N.D. Cal. June 15, 2017) ............................................................ 12

*Forrest v. Spizzirri*,
   62 F.4th 1201 (9th Cir. 2023) ................................................................................. 4, 23

*Gabriella v. Recology Inc.*,
   2022 WL 6271866 (N.D. Cal. Sept. 9, 2022) ............................................................. 16

*Gala v. Tesla Motors TN, Inc.*,
   2020 WL 7061764 (W.D. Tenn. Dec. 2, 2020) ......................................................... 2, 15

*Garcia v. Dell, Inc.*,
   905 F. Supp. 2d 1174 (S.D. Cal. 2012) ...................................................................... 19

*Harris v. Pac. Gas & Elec. Co.*,
   h2022 WL 16637987 (N.D. Cal. Nov. 2, 2022) (Spero, J.) ........................................ *passim*

*Hawkins v. Ford Motor Co.*,
   2021 WL 9031130 (C.D. Cal. Nov. 24, 2021) ............................................................. 23

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   139 S. Ct. 524 (2019) ............................................................................................ 3, 11, 16

*Hiatt v. Tesla Inc.*,
   2021 WL 6052266 (D. Haw. Dec. 21, 2021) .......................................................... 2, 14, 18

*Johnmohammadi v. Bloomingdale's, Inc.*,
   755 F.3d 1072 (9th Cir. 2014) .................................................................................. 12, 23

*Kamineni v. Tesla, Inc.*,
   2020 WL 57867 (D.N.J. Jan. 6, 2020) ................................................................... 3, 14, 19

*Karobkoff v. Nissan Motor Acceptance Co. LLC*,
   2022 WL 2124901 (C.D. Cal. Mar. 22, 2022) ............................................................ 16

*Kim v. Tinder, Inc.*,
   2018 WL 6694923 (C.D. Cal. July 12, 2018) ............................................................ 10

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

iii

*Lamps Plus, Inc. v. Varela*,
    139 S. Ct. 1407 (2019) ................................................................ 3, 20

*Lee v. Postmates Inc.*,
    2018 WL 4961802 (N.D. Cal. Oct. 15, 2018) (Spero, J.) ................................. 15, 20

*Lee v. Tesla, Inc.*,
    2020 WL 10573281 (C.D. Cal. Oct. 1, 2020) ........................................ 2, 15

*Lee v. Ticketmaster L.L.C.*,
    817 F. App'x. 393 (9th Cir. 2020) ...................................................... 15

*Lira v. Nat'l Distribution Centers, LLC*,
    2021 WL 6693934 (C.D. Cal. Dec. 22, 2021) .......................................... 13

*Lowden v. T-Mobile USA, Inc.*,
    512 F.3d 1213 (9th Cir. 2008) .......................................................... 11

*Lyman v. Ford Motor Co.*,
    2023 WL 2667736 (E.D. Mich. Mar. 28, 2023) ........................................ 17

*Marselian v. Wells Fargo & Co.*,
    514 F. Supp. 3d 1166 (N.D. Cal. 2021) ................................................ 18

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ...................................................................... 11

*Ngo v. PMGI Fin., LLC*,
    2018 WL 6618316 (N.D. Cal. Dec. 18, 2018) (Spero, J.) ............................. 11, 13

*Nguyen v. Barnes & Noble Inc.*,
    763 F.3d 1171 (9th Cir. 2014) .......................................................... 11

*Nguyen v. Tesla, Inc.*,
    2020 WL 2114937 (N.D. Cal. Apr. 6, 2020), *appeal dismissed*, 2020 WL
    6875203 (9th Cir. Nov. 20, 2020) .................................................. 2, 15

*Perei v. Arrigo DCJ Sawgrass, Inc.*,
    2018 WL 1182570 (S.D. Fla. Mar. 7, 2018) .......................................... 17

*Poublon v. C.H. Robinson Co.*,
    846 F.3d 1251 (9th Cir. 2017).......................................................... 12

*Raebel v. Tesla, Inc.*,
    451 F. Supp. 3d 1183 (D. Nev. 2020) .............................................. 2, 15, 20

*Rent-A-Ctr., W., Inc. v. Jackson*,
    561 U.S. 63 (2010) ...................................................................... 16

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

iv

*In re Ring LLC Priv. Litig.*,
    2021 WL 2621197 (C.D. Cal. June 24, 2021), *appeal dismissed,* 2022 WL
    3339845 (9th Cir. Aug. 3, 2022) ............................................................................................ 22

*Rizvi v. BMW of N. Am. LLC*,
    2020 WL 2992859 (N.D. Cal. June 4, 2020) ........................................................................ 19

*S.S. by & through Stern v. Peloton Interactive, Inc.*,
    566 F. Supp. 3d 1019 (S.D. Cal. 2021) ................................................................................. 22

*Saperstein v. Thomas P. Gohagan & Co.*,
    476 F. Supp. 3d 965 (N.D. Cal. 2020) (Spero, J.) ................................................................ 20

*Skiles v. Tesla, Inc.*,
    No. 17-cv-05434-WHO (N.D. Cal.) ............................................................................ 2, 14, 16

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010) ......................................................................................................... 4, 20

*Surkhabi v. Tesla, Inc.*,
    2022 WL 19569540 (C.D. Cal. Oct. 27, 2022) ................................................................ 2, 14

*Taylor Morrison of Texas, Inc. v. Ha*,
    660 S.W.3d 529 (Tex. 2023) ................................................................................................ 22

*Tompkins v. 23andMe, Inc.*,
    840 F.3d 1016 (9th Cir. 2016) .............................................................................................. 12

*U.S. v. Sutcliffe*,
    505 F.3d 944 (9th Cir. 2007) ................................................................................................ 11

*Wiseman v. Tesla, Inc.*,
    2017 WL 7058142 (C.D. Cal. Sept. 12, 2017) ................................................................. 2, 14

**Statutes**

2 U.S.C. § 9 ................................................................................................................................ 11

9 U.S.C. § 2 ................................................................................................................................ 11

9 U.S.C. § 3 ............................................................................................................................ 4, 23

9 U.S.C. § 4 ................................................................................................................................ 20

Cal. Civ. Code § 1550 ............................................................................................................... 13

Cal. Civ. Code § 1633.9(a) ....................................................................................................... 13

Federal Arbitration Act ...................................................................................................... *passim*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

v

DEFENDANT TESLA INC.'S MOTION TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS AND TO
DISMISS THE ACTION

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2
## I.   INTRODUCTION

3       Within less than 24 hours of publication of a dubious news article about the use of camera

4  recordings from Tesla vehicles, Plaintiff Henry Yeh ("Yeh") hastily filed this putative class action.

5  In both his original Complaint and Amended Complaint, he essentially copies and pastes portions

6  of that article and not much more.  Although Yeh continues to claim that Tesla allowed some

7  unidentified employees to access certain unidentified camera recordings from unidentified Tesla

8  vehicles, he again does not allege that any Tesla employee ever improperly accessed or shared any

9  data from his vehicle, that he sustained any injury that would give him standing to bring this lawsuit,

10 or any essential facts to support the core elements of his claims.  Indeed, he concedes that his claims

11 are based upon nothing more than speculation about a "potential" privacy "intrusion."  (Am.

12 Compl. ¶ 74.)  As discussed in Tesla's alternative motion to dismiss, his claims are fundamentally

13 deficient.

14      There is another reason why Yeh's claims should never have been brought in this Court.

15 Yeh promised—twice—to arbitrate any dispute with Tesla on an individual basis and to forego

16 class claims.  In November 2021, when he ordered his Model Y vehicle, Yeh agreed to Tesla's

17 Motor Vehicle Order Agreement ("Order Agreement"), which requires arbitration of any "dispute

18 arising out of or relating to any aspect of the relationship between [him] and Tesla" and precludes

19 him from bringing "any class or representative action."  Declaration of Jasjit Ahluwalia

20 ("Ahluwalia Decl."), ¶ 3, Exhibit 1 (Order Agreement) at 3.  Then, when Yeh took possession of

21 his Tesla vehicle in February 2022, he signed and agreed to a Retail Installment Sale Contract

22 ("Sale Agreement").  *Id.* ¶ 9, Exhibit 2 (Sale Agreement).  The Sale Agreement also contains a

23 broad arbitration provision requiring arbitration "on an individual basis" of any dispute arising out

24 of or relating to the "purchase or condition of [his] vehicle . . . or any resulting transaction or

25 relationship" with Tesla.  *Id.*, Exhibit 2 at 7.  These agreements require that Yeh's claims be

26 resolved in arbitration.

27

28

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1
DEFENDANT TESLA INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS AND TO DISMISS THE ACTION

1   In an attempt to skirt these agreements, Yeh now seeks to bring claims not only on behalf

2   of himself but also as the guardian of his infant son.  The Amended Complaint does not contain a

3   single factual allegation that his infant son was ever recorded from any camera in Yeh's vehicle,

4   much less that any images of him were shared with Tesla.  Regardless, if any claims could be stated

5   on behalf of Yeh's infant son (and none have been), those too would be subject to arbitration.

6   Whatever claims that Yeh's son might have are entirely dependent upon, intertwined with, and

7   derivative of Yeh's claims.  Yeh, in fact, seeks to control his son's claims as guardian.  Yeh cannot

8   use his son as a pawn to circumvent the arbitration process.

9   Pursuant to the Federal Arbitration Act ("FAA") and controlling law, the Court should

10   compel arbitration of Plaintiffs' claims on an individual basis and dismiss this action.

11   ## II.   SUMMARY OF ARGUMENT

12   Under controlling law, the Court should compel arbitration for the following reasons:

13   *First*, two valid arbitration agreements exist.  Yeh willingly entered into both the Sale

14   Agreement and the Order Agreement (collectively, the "Agreements") with Tesla.  Each Agreement

15   contains a clear, conspicuous, and broad arbitration provision requiring the arbitration of disputes

16   between the parties on an individual basis.  As numerous courts have recognized, each Agreement

17   is valid and enforceable under the FAA and California law.  *See, e.g., Fish v. Tesla, Inc.*, 2022 WL

18   1552137, at *4 (C.D. Cal. May 12, 2022) (California law); *Surkhabi v. Tesla, Inc.*, 2022 WL

19   19569540, at *5 (C.D. Cal. Oct. 27, 2022) (California law); *Nguyen v. Tesla, Inc.*, 2020 WL

20   2114937, at *3 (N.D. Cal. Apr. 6, 2020), *appeal dismissed*, 2020 WL 6875203 (9th Cir. Nov. 20,

21   2020) (California law); *Lee v. Tesla, Inc.*, 2020 WL 10573281, at *6 (C.D. Cal. Oct. 1, 2020)

22   (California law); May 16, 2018 Order, *Skiles v. Tesla, Inc.*, No. 17-cv-05434-WHO (N.D. Cal.), at

23   ECF No. 76 (California law); *Wiseman v. Tesla, Inc.*, 2017 WL 7058142, at *3 (C.D. Cal. Sept. 12,

24   2017) (California law).[1]

25

26   _____

[1]   *See also Ball v. Tesla Motors, Inc.*, 2022 WL 1433646, at *2 (E.D. Wis. Mar. 31, 2022)

27   (Wisconsin law), *appeal dismissed*, 2022 WL 16627493 (7th Cir. Oct. 17, 2022); *Hiatt v. Tesla

28   Inc.*, 2021 WL 6052266, at *4 (D. Haw. Dec. 21, 2021) (Hawaii law); *Raebel v. Tesla, Inc.*, 451 F.
Supp. 3d 1183, 1189 (D. Nev. 2020) (Nevada law); *Gala v. Tesla Motors TN, Inc.*, 2020 WL

2

DEFENDANT TESLA INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS AND TO DISMISS THE ACTION

*Second,* each Agreement clearly and unmistakably delegates the issue of arbitrability to an arbitrator.  The Sale Agreement's arbitration provision requires that the arbitrator resolve any issues pertaining to the "interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute."  Ahluwalia Decl., ¶ 9, Exhibit 2 at 7; *see, e.g., Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) (delegation clause requires arbitrator to decide issues of arbitrability).  This language cannot be clearer.  Moreover, the Order Agreement incorporates the AAA's Consumer Arbitration Rules, which give the arbitrator the power to address any questions as to the existence, scope, or validity of the arbitration agreement or the arbitrability of any claim.  Ahluwalia Decl., ¶ 3, Exhibit 1 at 3; *see, e.g., Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) ("incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability").

Nonetheless, even if this Court were to decide whether Plaintiffs' claims are arbitrable (and it should not), their claims clearly fall within the broad scope of the arbitration provisions in the Agreements.  Each Agreement requires arbitration of any dispute arising of or relating to any aspect of the "relationship" between Yeh and Tesla.  Ahluwalia Decl., ¶ 3, Exhibit 1 at 3; Ahluwalia Decl., ¶ 9, Exhibit 2 at 7.  All of Plaintiffs' claims arise out of or relate to this relationship, including Yeh's purchase of his Tesla vehicle (and its allegedly defective camera system), Tesla's alleged access to and use of camera data collected from his Tesla vehicle, and alleged misstatements by Tesla about customer privacy.

*Third*, consistent with controlling Supreme Court law, all claims must be arbitrated on an individual basis, because each Agreement contains a class waiver.  Ahluwalia Decl., ¶ 3, Exhibit 1 at 3 ("In other words, you and Tesla may bring claims against the other only in your or its individual capacity and not as a plaintiff or class member in any class or representative action."); *id.*, ¶ 9, Exhibit 2 at 7 ("Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action.").  *See, e.g., Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1419 (2019);

7061764, at *4 (W.D. Tenn. Dec. 2, 2020) (Tennessee law); *Kamineni v. Tesla, Inc.*, 2020 WL 57867, at *1 (D.N.J. Jan. 6, 2020) (New Jersey law).

DEFENDANT TESLA INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS AND TO DISMISS THE ACTION

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

*Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 238 (2013); *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 683 (2010).

*Fourth*, any claims on behalf of Yeh's son, G.Y., must be arbitrated as well.  Under California law, a nonsignatory can be compelled to arbitrate where a special relationship exists because "the nonsignatory and one of the parties to the arbitration agreement," such as a parent-child relationship, "making it equitable to compel the nonsignatory to also be bound to arbitrate his or her claim." *Chan v. Charter Commc'ns Holding Co.*, 2015 WL 12655701, at *5 (C.D. Cal. Aug. 6, 2015) (collecting authority).  That is the precisely case here.  Yeh is G.Y.'s father, and purports to serve as his son's guardian in this litigation.  G.Y.'s claims are entirely derivative of and intertwined with Yeh's claims, and will be impacted by what Yeh agreed to when he purchased his Tesla vehicle.  G.Y.'s claims also rest in part upon alleged violations of Tesla's Privacy Policy, which is incorporated into Yeh's Order Agreement.  Under these circumstances, it would be inequitable to allow Yeh to pursue the very claims he must arbitrate merely by adding his one-year-old son as plaintiff and then serving as "guardian" to him.

*Lastly*, this case should be dismissed because "all claims are subject to mandatory arbitration." *Forrest v. Spizzirri*, 62 F.4th 1201, 1203, 1205 (9th Cir. 2023).  Alternatively, the Court should stay this case pending the outcome of any arbitration proceeding.  9 U.S.C. § 3.[2]

## III.    RELEVANT FACTS AND ALLEGATIONS

### A.    Yeh First Agreed To Arbitrate Any Disputes With Tesla When He Ordered His Model Y Vehicle And Entered Into The Order Agreement.

Yeh alleges that he ordered a Tesla Model Y vehicle in November 2021 and took delivery of that vehicle in February 2022.  (Am. Compl. ¶ 9.)  Tesla sells its vehicles on its website. Ahluwalia Decl., ¶ 5; Declaration of Minu Sinha ("Sinha Decl.") ¶ 3.  Customers who want to buy or lease a vehicle from Tesla can start the process by placing an order online through either the

---

[2]    Tesla is also filing an alternative motion to dismiss Yeh's claims under Rule 12(b) and Rule 9(b).  Tesla respectfully submits that the Court must first resolve this motion and address whether Yeh's claims must be compelled to individual arbitration under the FAA.  If so, the Court will not need to resolve Tesla's alternative Rule 12(b) motion to dismiss.

4

1  desktop or mobile version of Tesla's website.  Ahluwalia Decl., ¶ 5; Sinha Decl. ¶¶ 3-4.  At the end

2  of the online order process (on the right side), customers view the below screen:



16  Sinha Decl., ¶¶ 4, 8, Exhibits 1 and 2.  A customer must click the "PLACE ORDER" button to

17  complete the process of ordering a Tesla vehicle.  *Id.*

18      As indicated on the screen depicted above, by clicking the "PLACE ORDER" button for a

19  Model Y Tesla vehicle, Tesla purchasers "agree to the Model Y Order Agreement" (along with the

20  Terms of Use and Privacy Notice).  *Id.* ¶ 4, Exhibit 1.  When Yeh ordered his Model Y vehicle (and

21  at all relevant times), the blue "Model Y Order Agreement" language operated as a direct hyperlink

22  to an online copy of the Order Agreement—as shown by the colored font.  *Id.*  It was positioned

23  directly over the "PLACE ORDER" button.

24      On November 6, 2021, Yeh placed an online order for a Model Y vehicle for $72,440

25  through the process described above.  Ahluwalia Decl., ¶ 4, Ex. 1; Sinha Decl. ¶ 8, Ex. 1; Am.

26  Compl. ¶ 9.  In doing so, he clicked "PLACE ORDER" and accepted the Order Agreement as part

27  of his purchase.  *See* Sinha Decl. ¶¶ 4, 8.  The first page of the Order Agreement—right under Yeh's

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

5

DEFENDANT TESLA INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS AND TO DISMISS THE ACTION

1   customer information, his Order Number, and his Order Fee—states that his "Order [was] placed

2   with electronically accepted terms." Ahluwalia Decl. ¶ 3, Ex. 1 at 1.[3]

3          The Order Agreement contains an "Agreement to Arbitrate" that is prominently displayed

4   in a standalone text box.  The arbitration provision includes the following language:

5          **Agreement to Arbitrate.** Please carefully read this provision, which applies to any
       dispute between you and Tesla, Inc. and its affiliates, (together "Tesla").

6          ***

7          [Y]ou agree that any dispute arising out of or relating to any aspect of the
       relationship between you and Tesla will not be decided by a judge or jury but instead

8       by a single arbitrator in an arbitration administered by the American Arbitration
       Association (AAA) under its Consumer Arbitration Rules. This includes claims

9       arising before this Agreement, such as claims related to statements about our
       products.

10

11         We will pay all AAA fees for any arbitration, which will be held in the city or county
       of your residence.

12         ***

13         The arbitrator may only resolve disputes between you and Tesla, and may not
       consolidate claims without the consent of all parties. The arbitrator cannot hear clear

14      or representative claims or request for relief on behalf of others purchasing or
       leasing Tesla vehicles. In other words, you and Tesla may bring claims against the

15      other only in your or its individual capacity and not as a plaintiff or class member
       in any class or representative action. If a court or arbitrator decides that any part of

16      this agreement to arbitrate cannot be enforced as to a particular claim or relief or
       remedy, then that claim or remedy (and only that claim or remedy) must be brought

17      in court and any other claims must be arbitrated.

18         If you prefer, you may instead take an individual dispute to small claims court.

19         You may opt out of arbitration within 30 days after signing this Agreement by
       sending a letter to [Tesla's designated address].

20

21   *Id.* at 3.

22         Yeh was given the ability to "opt out of the Agreement to Arbitrate" within 30 days after

23   entering into the Order Agreement; however, he did not do so.  Ahluwalia Decl. ¶ 8.

24

25

26

27   ───────────────
     [3]      The Order Agreement incorporates Tesla's Customer Privacy Policy under a bolded

28   heading and provided a link where it could be viewed.  Ahluwalia Decl. ¶ 3, Ex. 1 at 3.

6

DEFENDANT TESLA INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS AND TO DISMISS THE ACTION

**B.**   **Yeh Again Agreed To Arbitrate Any Disputes With Tesla When He Took Delivery Of His New Model Y Vehicle And Signed The Sale Agreement.**

Yeh financed and took delivery of his Model Y vehicle in February 2022.  Am. Compl. ¶ 9; Ahluwalia Decl. ¶¶ 9-10.   On February 26, 2022, as part of this process, Yeh (and a co-buyer) entered into the Sale Agreement with Tesla.  *See* Ahluwalia Decl. ¶¶ 9-10, Ex. 2 at 1.  The title of this contract—RETAIL INSTALLMENT SALES CONTRACT – SIMPLE FINANCE CHARGE (WITH ARBITRATION PROVISION)—makes clear that it contains an arbitration provision. Ahluwalia Decl. ¶ 9, Ex. 2 at 1.

On the first page of the Sale Agreement, Yeh placed his electronic signature in a box that reads:

> **Agreement to Arbitrate**: By signing below, you agree that, pursuant to the Arbitration Provision on page 7 of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

*Id.*  Page 7 of the Sale Agreement contains the "Arbitration Provision."  To signal the importance of this provision, the top of this page contains the following bold and capitalized terms:

> **ARBITRATION PROVISION**
> **PLEASE REVIEW – IMPORTANT – AFFECTS YOUR LEGAL RIGHTS**
>
> 1. **EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL**
>
> 2. **IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.**
>
> 3. **DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

Ahluwalia Decl. ¶ 9, Ex. 2 at 7.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

7
DEFENDANT TESLA INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS AND TO DISMISS THE ACTION

The language of the "ARBITRATION PROVISION" immediately follows the above-referenced request to consumers to carefully review its language.  It states:

> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship … shall, at your or our election, be resolved by neutral binding arbitration and not by a court action.
>
> ***
>
> Any claim or disputed is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action.  You may choose [AAA] or any other organization to conduct the arbitration subject to our approval.
>
> ***
>
> The arbitration hearing shall be conducted in the federal district in which you reside unless the Seller-Creditor is a party to the claim or dispute, in which case the hearing will be held in the federal district where this contract was executed.
>
> We will pay your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $5000, unless the law or the rules of the chosen arbitration organization requires us to pay more…

*Id.*

By signing the Sale Agreement, Yeh (and his co-buyer) agreed that Tesla gave the Sale Agreement to him and that he was free to review it.  Ahluwalia Decl. ¶ 9, Ex. 2 at 6.  Yeh also "ACKNOWLEDGE[D] THAT [HE] HA[D] READ ALL PAGES OF THIS CONTRACT, **INCLUDING THE ARBITRATION PROVISION ON PAGE 7 OF THIS CONTRACT**, BEFORE SIGNING BELOW."  *Id.* (emphasis added).  Yeh further agreed that his electronic signature reflected his intent to enter the Sale Agreement, and that the contract was legally valid and enforceable.  Ahluwalia Decl. ¶ 9, Ex. 2 at 3.

**C.**      **Ignoring These Agreements, Yeh Filed This Putative Class Action Lawsuit Based On An Inaccurate News Article.**

On April 7, 2023, within just a day of the publication of a *Reuters* article concerning the alleged internal sharing of camera recordings by Tesla employees, Yeh filed this putative class action lawsuit in violation of his Agreements to arbitrate his claims against Tesla.  Yeh lifted his

flawed allegations straight from that article. Yeh claimed that his vehicle camera system is defective; that unidentified Tesla employees accessed and improperly shared images and recordings captured by cameras in Tesla vehicles; and that Tesla made misrepresentations about privacy protections for customers. (Am. Compl. ¶¶ 1-5, 13-15, 34-41, 45-48.) Yeh did not allege a single fact to show that Tesla ever improperly accessed or shared any data from his vehicle or that he sustained any injury.

On May 12, 2023, Tesla's counsel informed Yeh's counsel in writing that Yeh was obligated to arbitrate his claims against Tesla on an individual basis, that Tesla was exercising its right to arbitrate any such disputes, and that Yeh should withdraw his lawsuit and submit any claim he believes he may have to arbitration. Declaration of David L. Schrader ("Schrader Decl.") ¶ 3. Exhibit B. Yeh refused to do so. As a result, Tesla moved to compel arbitration and, alternatively, to dismiss Yeh's original Complaint. ECF Nos. 22, 23. Rather than comply with his contractual commitments, Yeh doubled down.

**D.** **Rather Than File His Claims In Arbitration, Yeh Again Breached The Agreements And Filed An Amended Complaint Adding His Infant Son As A Named Plaintiff.**

Yeh's Amended Complaint makes no mention of his arbitration commitments. Nonetheless, to try to evade individual arbitration of all claims, Yeh now names his one-year-old son, G.Y., as a plaintiff—with Yeh serving as his guardian. (Am. Compl. ¶¶ 10, 61.) The Amended Complaint lacks a single factual allegation about G.Y., other than that he has no "social media accounts" and no online photos. (*Id.* ¶ 56.) There are no facts that Tesla has ever had access to a single camera recording of G.Y.

As alleged, Tesla vehicles come with state-of-the-art autopilot technology that relies on a supporting camera system. (Am. Compl. ¶ 13; Privacy Policy, ECF No. 32-1, at 1, 5.) The individual cameras monitor areas around the vehicle, enhance driver and passenger safety, and support autopilot technology. *Id.* Yeh (and now his son) again claim that the camera system for Yeh's vehicle is "defective"; that unidentified Tesla employees accessed and improperly shared

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

9

DEFENDANT TESLA INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS AND TO DISMISS THE ACTION

unidentified videos captured by cameras in unidentified vehicles up until 2022; and that Tesla made misrepresentations about privacy protections for customers, invaded their privacy, and made revenue from their images.  (Am. Compl. ¶¶ 1-4, 34-39, 54-57.)  Plaintiffs' claims rest on the allegation that Yeh activated "Sentry Mode" on his vehicle (*id.* ¶ 52), which records certain "suspicious activity" when the vehicle is powered off (*id.* ¶ 30), even though Yeh does not and cannot allege that such data was ever transmitted to Tesla.  To the contrary, the very exhibits Plaintiffs rely upon show that such data remains with the vehicle.  Privacy Policy, ECF No. 32-1, at 6 (Sentry Mode).

Notwithstanding the entirely speculative nature of the lawsuit, Plaintiffs bring ten claims: (1) intrusion upon seclusion (Am. Compl. ¶¶ 70-74); (2) violation of California's constitutional right to privacy (*id.* ¶¶ 75-79); (3) violation of California's right to publicity (*id.* ¶¶ 80-83); (4) violation of the Unfair Competition Law ("UCL") (*id.* ¶¶ 84-94); (5) violation of the Consumer Legal Remedies Act ("CLRA") (*id.* ¶¶ 95-102), (6) negligence (*id.* ¶¶ 103-105); (7) breach of contract (*id.* ¶¶ 106-109); (8) negligent misrepresentation (*id.* ¶¶ 110-117); (9) intentional misrepresentation (*id.* ¶¶ 118-123); and (10) unjust enrichment (*id.* ¶¶ 124-128).[4]  Plaintiffs seek statutory, compensatory, and punitive damages, restitution, injunctive relief, and declaratory relief. *Id.* ¶¶ 63(h), 74, 79, 83, 94, 101, 105, 109, 123, 128, 129.

Ignoring the arbitration provisions and class waivers in the Agreements, Yeh and his son purport to bring their claims on behalf of a variety of classes.  *Id.* ¶ 61.  As set forth below, all claims brought by Yeh and G.Y. should be compelled to arbitration and dismissed, or, in the alternative, stayed pending the outcome of arbitration proceedings.

## IV.   LEGAL ARGUMENT

### A.   Yeh Must Arbitrate All Of His Claims Against Tesla On An Individual Basis.

The Federal Arbitration Act ("FAA")[5] makes the arbitration provisions in both the Sale Agreement and Order Agreement "valid, irrevocable, and enforceable, save upon such grounds as

---

[4]   Counts V, VII, VIII, and IX are only asserted on behalf of Yeh and not his son.

[5]   There can be no question that the FAA governs the Sale Agreement and the Order Agreement, because both include a "FAA choice of law" clause. *See Kim v. Tinder, Inc*., 2018 WL 6694923, at *2 (C.D. Cal. July 12, 2018) (citing *Brennan*, 796 F.3d at 1129-31 (9th Cir. 2015)).

1    exist at law or in equity for the revocation of any contract . . . ."  9 U.S.C. § 2.  Consistent with the

2    text of the FAA, "courts must 'rigorously enforce' arbitration agreements according to their terms

3    . . . ."  *Am. Exp. Co.*, 570 U.S. at 228.  The FAA creates a heavy presumption in favor of arbitrability,

4    requiring that "any doubts concerning the scope of arbitrable issues should be resolved in favor of

5    arbitration, whether the problem at hand is the construction of the contract language itself or an

6    allegation of waiver, delay, or a like defense to arbitrability."  *Moses H. Cone Mem'l Hosp. v.*

7    *Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *Ngo v. PMGI Fin., LLC*, 2018 WL 6618316, at

8    *3 (N.D. Cal. Dec. 18, 2018) (Spero, J.)

9           Where a party attempts to litigate claims covered by a contract "containing an arbitration

10   agreement subject to the FAA, the court must determine '(1) whether a valid agreement to arbitrate

11   exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'"  *Lowden v. T-*

12   *Mobile USA, Inc.*, 512 F.3d 1213, 1217 (9th Cir. 2008) (quoting *Chiron Corp. v. Ortho Diagnostic*

13   *Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)).  However, where an arbitration clause delegates

14   questions of arbitrability to the arbitrator by "clear and unmistakable" evidence, the Court must

15   refer the matter to arbitration, without addressing whether the claim is, in fact, arbitrable.  *See, e.g.,*

16   *Henry Schein, Inc.*, 139 S. Ct. at 530 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S.

17   938, 944 (1995)).  In such circumstances, the Court "may not override the contract … [and]

18   ***possesses no power to decide the arbitrability issue.***"  *Henry Schein, Inc.*, 139 S. Ct. at 529

19   (emphasis added); *see also Harris v. Pac. Gas & Elec. Co.*, No. 21-CV-04096-JCS, 2022 WL

20   16637987, at *8 (N.D. Cal. Nov. 2, 2022) (Spero, J.) (applying principle in compelling arbitration

21   and dismissing action).

22          State law governs questions of contract formation and interpretation.  *See, e.g.*, *First*

23   *Options of Chicago, Inc.*, 514 U.S. at 944; *see also Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171,

24   1175 (9th Cir. 2014) (quoting *First Options of Chicago, Inc.*, 514 U.S. at 944) ("In determining

25   whether a valid arbitration agreement exists, federal courts 'apply ordinary state-law principles that

26

27   Further, "the Internet is an instrumentality and channel of interstate commerce"  (*U.S. v. Sutcliffe*,
     505 F.3d 944, 952-53 (9th Cir. 2007) [citation omitted]), bringing the Agreements within the gambit

28   of the FAA.  2 U.S.C. § 9.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

11

1  govern the formation of contracts.'").   California law, like federal law, "strongly favor[s]

2  enforcement of arbitration provisions."   *Cap. Grp. Commc'ns Inc v. Xedar Corp.*, 2013 WL

3  4013711, at *3 (N.D. Cal. Aug. 5, 2013).  Under California law, "a heavy presumption weighs the

4  scales in favor of arbitrability; an order directing arbitration should be granted 'unless it may be

5  said with positive assurance that the arbitration provision is not susceptible of an interpretation that

6  covers the asserted dispute.'"  *Id.* (quoting *Gravillis v. Coldwell Banker Residential Brokerage Co.*,

7  143 Cal. App. 4th 761, 771 (2000)).

8          Once a party establishes the existence of an arbitration agreement and that the dispute falls

9  within its scope (or that arbitrability issues have been delegated to the arbitrator to decide), the

10  burden shifts to the party opposing arbitration to "establish[] a defense to the agreement's

11  enforcement by a preponderance of the evidence."  *Fontana v. Chef's Warehouse Inc.*, 2017 WL

12  2591872, at *2 (N.D. Cal. June 15, 2017); *see also Tompkins v. 23andMe, Inc.*, 840 F.3d 1016,

13  1029 (9th Cir. 2016) ("plaintiffs have not met their burden of proving" arbitration agreement was

14  unconscionable).  Under California law, "the party opposing arbitration bears the burden of proving

15  any defense, such as unconscionability."  *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th

16  Cir. 2017) (quoting *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th

17  223, 236 (2012)).  If the party opposing arbitration fails to meet his or her burden, the Court may

18  dismiss the action or stay the matter pending the outcome of the arbitration.  *Johnmohammadi v.*

19  *Bloomingdale's, Inc.*, 755 F.3d 1072, 1073–74 (9th Cir. 2014) ("a district court may either stay the

20  action or dismiss it outright when, as here, the court determines that all of the claims raised in the

21  action are subject to arbitration."); *Harris*, 2022 WL 16637987, at *14 (dismissing action).

22          Here, applying these principles, it is clear that:  (1) Yeh and Tesla entered into two separate

23  and independent agreements to arbitrate; (2) each Agreement delegates any questions about the

24  arbitrability of Yeh's claims to the arbitrator, and, even if they did not, Yeh's claims clearly fall

25  within the scope of the arbitration provisions in each Agreement; and (3) any arbitration must take

26  place on an individual basis.

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

12

DEFENDANT TESLA INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS AND TO DISMISS THE ACTION

1.       **Yeh Entered Into Two Separate Agreements To Arbitrate His Disputes With Tesla.**

Under California law,[6] a valid contract exists when (1) the parties are capable of contracting, and (2) there was mutual assent, (3) a lawful object, and (4) sufficient cause or consideration.  Cal. Civ. Code § 1550.  Both the Sale Agreement and the Order Agreement meet these requirements. Yeh is an adult who entered into the Order Agreement with Tesla to purchase a Tesla Model Y vehicle for $72,440.  He then entered into the Sale Agreement with Tesla to finance that vehicle. There was consideration for each Agreement.  Each Agreement contains a mandatory arbitration provision.  And Yeh assented to each Agreement.

a.       **Sale Agreement**

On February 25, 2022, Yeh entered into the Sale Agreement, acknowledged he had an opportunity to review it, and signed it with an electronic signature in no fewer than six places. Ahluwalia Decl. ¶ 9-10, Ex. 2.  Electronic signatures are valid under California law.  Cal. Civ. Code § 1633.9(a); *see, e.g.*, *Ngo*, 2018 WL 6618316, at *6 (enforcing arbitration agreement which bore plaintiff's electronic signature); *Lira v. Nat'l Distribution Centers, LLC*, 2021 WL 6693934, at *3 (C.D. Cal. Dec. 22, 2021) (same).  The Sale Agreement is binding.  *See Chavez v. Bank of Am.*, 2011 WL 4712204, at *6 (N.D. Cal. Oct. 7, 2011) (Spero, J.) ("The law is clear that a party entering a contract has responsibility for learning its terms and that each and every term need not be explained orally to a party." (citations omitted))

In fact, Yeh signed a provision titled "**Agreement To Arbitrate**" and expressly agreed to the terms of the arbitration provision in the Sale Agreement: "By signing below, you agree that, pursuant to the Arbitration Provision on page 7 of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for

---

[6]      Yeh appears to have executed both Agreements in California, where he resides.  (Am. Compl. ¶ 9.)  In addition, the Order Agreement calls for the application of the law of the state nearest to the address on his Vehicle Configuration—that is, California law.  Ahluwalia Decl., ¶ 3, Exhibit 1, at 3 ("Governing Law").  The Sale Agreement also expressly calls for the application of California law.  *Id.* ¶ 9, Exhibit 2, at p. 5, ¶ 7 ("Federal law and California law apply to this contract").

additional information concerning the agreement to arbitrate."  Ahluwalia Decl. ¶ 9-10, Ex. 2 at 1. As other courts have recognized, the Sale Agreement is a binding contract that Tesla customers assent to when they finance their purchase of a Tesla vehicle.  *See, e.g., Kamineni*, 2020 WL 57867, at *3 (enforcing Sale Agreement and compelling arbitration of claims that Tesla vehicle was allegedly defective under New Jersey law); *Skiles v. Tesla, Inc.*, No. 17-cv-05434-WHO (N.D. Cal.), at ECF No. 76 (granting motion to compel arbitration based upon Sale Agreement under California law); *Wiseman*, 2017 WL 7058142, at *3 (enforcing earlier version of Sale Agreement under California law).  It is binding here, too.

### b.    Order Agreement

On November 6, 2021, Yeh accepted the Order Agreement electronically on Tesla's website.  He did so by clicking the "PLACE ORDER" button on a screen that directly linked to the Order Agreement and advised that "By placing this order [you] agree to the Model Y Order Agreement, Terms Of Use, and Privacy Notice."  Sinha Decl. ¶¶ 4, 8, Ex. 1.  The Order Agreement expressly requires arbitration of any dispute relating to Yeh's relationship with Tesla.  Ahluwalia Decl. ¶ 3, Ex. 1 at 3.  Moreover, while Yeh had the opportunity to opt out of the arbitration provision in the Order Agreement within 30 days, he never did.  Ahluwalia Decl. ¶ 8.  As a matter of California law, Yeh assented to the Order Agreement and its terms.

Courts have routinely enforced Order Agreements between Tesla and its customers under California law (and other state laws), finding that a valid contract formed when the customer ordered the Tesla vehicle online by clicking the "PLACE ORDER" button.  *See, e.g., Surkhabi*, 2022 WL 19569540, at *3, *5 (finding customer assented to Order Agreement because "before clicking the 'Place Order' button, there is an option to click an underlined hyperlink labeled 'Model X Order Agreement'" and plaintiff "had sufficient opportunity to see and review the arbitration agreement"); *Fish*, 2022 WL 1552137, at *4 (compelling arbitration of claims on an individual basis brought by consumers because "the fact that they could not have completed their online orders without clicking the 'Place Order' button is sufficient to establish their assent"); *Hiatt*, 2021 WL 6052266, at *4 (concluding that "all issues related to Hiatt's individual claims, including potentially

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

14

DEFENDANT TESLA INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS AND TO DISMISS THE ACTION

dispositive gateway issues regarding arbitrability, must be arbitrated" under the Order Agreement); *Nguyen*, 2020 WL 2114937, at *3 (reaching same result and reasoning that "[w]hether or not he recalls having seen the agreement or signed it is of no moment, for Tesla presents sufficient evidence that the agreement was presented to Nguyen (and the other Plaintiffs, for that matter) and that he (and the other Plaintiffs) assented to it"); *Lee*, 2020 WL 10573281, at *2, 4 (finding Order Agreement to be valid and enforceable); *Gala*, 2020 WL 7061764, at *4 ("Plaintiff Visanji Gala had to agree to the Motor Vehicle Order Agreement, which included the arbitration agreement, to select the Place Order button on the Tesla website"); *Raebel*, 451 F. Supp. 3d at 1189 (same).

Likewise, the Ninth Circuit and this Court consistently have found that a binding contract is formed under California law where a customer has an opportunity to review the terms of an agreement in the form of a hyperlink on the website screen immediately above or below a button that must be clicked to affirmatively place an order or use a service. *See, e.g., Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 484 (9th Cir. 2020) (agreement formed where user accessing a TurboTax account "was required to click a 'Sign In' button," where "directly under which the following language appeared: 'By clicking Sign In, you agree to the Turbo Terms of Use, TurboTax Terms of Use, and have read and acknowledged our Privacy Statement,'" and where agreements "were each light blue hyperlinks which, if clicked, directed the user to a new webpage" with the terms); *Lee v. Ticketmaster L.L.C.*, 817 F. App'x. 393, 394-95 (9th Cir. 2020) (finding assent by customer to Ticketmaster's Terms of Use under California law where Ticketmaster provided notice of its Terms of Use adjacent to the "Place Order" button, included a hyperlink to the terms in a contrasting color, and informed the user that  placing an order would indicate assent to the terms); *Lee v. Postmates Inc.*, 2018 WL 4961802, at *10 (N.D. Cal. Oct. 15, 2018) (Spero, J.) (compelling arbitration and finding formation of agreement because employee was presented with link to agreement during the process of signing up to make deliveries for Postmates, clicked "Agree" before moving to the next step, and did not opt out of the arbitration obligation within 30 days of signing the agreement).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

15
DEFENDANT TESLA INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS AND TO DISMISS THE ACTION

In short, Yeh entered into two separate, valid Agreements with Tesla in connection with the purchase and finance of his Model Y vehicle.  Each Agreement contains provisions mandating arbitration on an individual basis.  Accordingly, under each Agreement and the FAA, the Court must compel Yeh's claims to where they belong – individual, non-class arbitration.

## 2.    Each Agreement Delegates The Arbitrability Of  Yeh's Claims To The Arbitrator To Decide.

It is well-settled that the "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular dispute or controversy."  *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010).  Where the parties' agreement contains a provision referring questions of arbitrability to the arbitrator, "the court's role is limited to determining whether there is clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."  *Gabriella v. Recology Inc.*, 2022 WL 6271866, at *1 (N.D. Cal. Sept. 9, 2022); *see also Henry Schein, Inc.*, 139 S.Ct. at 530 (same).  Both the Sale Agreement and the Order Agreement "clearly and unmistakably" delegate any questions about the arbitrability of Yeh's claims to the arbitrator to decide, including whether his claims fall within the scope of the arbitration provisions.

### a.    Sale Agreement

The Sale Agreement includes a clear delegation clause.  The arbitration provision states that "any claim or dispute . . . (*including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute*) . . . shall . . . be resolved by neutral, binding arbitration and not by a court action."  Ahluwalia Decl. ¶ 9-10, Ex. 2 at 7 (emphasis added).  As a result, Yeh and Tesla have agreed to delegate the issue of whether the dispute falls within the scope of the arbitration provision to the arbitrator.

Indeed, Judge Orrick and others have held that identical delegation clauses require an arbitrator to decide the arbitrability of the claims at issue.  *See, e.g.*, *Skiles v. Tesla*, No. 17-cv-05434-WHO (N.D. Cal.), at ECF No. 76 (holding that "the controlling [Tesla] contract requires arbitration over arbitrability" and referring matter to arbitrator); *Karobkoff v. Nissan Motor*

DEFENDANT TESLA INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS AND TO DISMISS THE ACTION

*Acceptance Co. LLC*, 2022 WL 2124901, at *3 (C.D. Cal. Mar. 22, 2022) (holding that parties who entered into purchase agreement for vehicle that requires arbitration of "[a]ny claim or dispute, whether in contract, tort, statute or otherwise [including the interpretation and scope of this Arbitration Provision, and the *arbitrability* of the claim or dispute]" delegated issues of arbitrability, including whether a dispute falls within the scope of the arbitration clause, to the arbitrator); *Arab v. BMW of N. Am., LLC*, 2019 WL 8011713, at *3 (C.D. Cal. Sept. 10, 2019) (enforcing nearly identical delegation clause); *Lyman v. Ford Motor Co.*, 2023 WL 2667736, at *5 (E.D. Mich. Mar. 28, 2023) (finding under nearly identical purchase agreement that plaintiffs are "required to arbitrate their claims, and the arbitrator can determine any issues of arbitrability"); *Perei v. Arrigo DCJ Sawgrass, Inc.*, 2018 WL 1182570, at *4 (S.D. Fla. Mar. 7, 2018) (same); *Chatman v. Jimmy Gray Chevrolet, Inc.*, 2016 WL 5745697, at *4 (N.D. Miss. Sept. 30, 2016) (same); *see also Harris*, 2022 WL 16637987, at *7 (emphasis added) (finding that agreement which referred disputes "arising out of or relating to this Agreement, *including any question regarding its existence, validity or termination* to arbitration under the American Arbitration Rules" delegated arbitrability of gateway questions).

The same result follows here, too. Because Yeh and Tesla unambiguously agreed to delegate arbitrability issues to the arbitrator in the Sale Agreement, the Court must enforce that agreement and refer his claims to arbitration.

### b.   Order Agreement

The Order Agreement also delegates issues about the arbitrability of Plaintiffs' claims to the arbitrator. It expressly incorporates AAA's Consumer Arbitration Rules, which provide that the arbitrator "shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." *See* Schrader Decl. ¶ 2, Exhibit A (AAA Consumer Arbitration Rules at R-14(a)).

The Ninth Circuit and courts within this District have held that incorporation of these rules is "clear and unmistakable evidence" that the parties intended the arbitrator to decide any threshold

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

17

DEFENDANT TESLA INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS AND TO DISMISS THE ACTION

issues concerning arbitrability.  *See, e.g., Brennan*, 796 F.3d at 1130 ("we hold that incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability");[7] *Harris*, 2022 WL 16637987, at *8 (compelling arbitration of employment discrimination claims and finding issues of arbitrability were delegated to the arbitrator in part because "the arbitration provision in this case incorporates the rules of the American Arbitration Association"); *Marselian v. Wells Fargo & Co.*, 514 F. Supp. 3d 1166, 1175-76 (N.D. Cal. 2021) (applying principle).  Other courts have held that the specific Order Agreement at issue here delegates issues of arbitrability by incorporating the AAA Consumer Arbitration Rules.  *See Hiatt*, 2021 WL 6052266, at *4 (incorporation of AAA Consumer Arbitration Rules constituted "clear and unmistakable evidence" that Tesla and vehicle purchaser intended to delegate any gateway issues to the arbitrator).  Accordingly, an arbitrator must decide any questions over the arbitrability of Yeh's claims under the Order Agreement, too.

> **3.**   **Yeh's Claims Clearly Fall Within Scope Of The Arbitration Provisions In The Agreements.**

Through the Agreements, the parties delegated gateway issues of arbitrability to the arbitrator.  Nonetheless, if the Court were to address this issue (and it should not), Yeh's claims fall within the broad scope of the arbitration provision in each Agreement.

> **a.**   **The Sale Agreement**

The arbitration provision of the Sale Agreement covers "any claim or dispute" between Yeh and Tesla "which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship."  Ahluwalia Decl. ¶ 9, Ex. 2 at 7.  This language plainly covers the claims in this case.

---

[7]      The Ninth Circuit made clear that its "holding today should not be interpreted to require that the contracting parties be sophisticated or that the contract be 'commercial' before a court may conclude that incorporation of the AAA rules constitutes 'clear and unmistakable' evidence of the parties' intent." *Brennan*, 796 F.3d at 1130.  It noted that "the vast majority of the circuits that hold that incorporation of the AAA rules constitutes clear and unmistakable evidence of the parties' intent do so without explicitly limiting that holding to sophisticated parties or to commercial contracts." *Id.*  Moreover, Yeh does not allege that he is an unsophisticated party and, in fact, purchased a vehicle more than $70,000.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

18

DEFENDANT TESLA INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS AND TO DISMISS THE ACTION

All of Yeh's claims arise out of or relate to his relationship with Tesla. Those claims are based upon conclusory allegations that Tesla made alleged misrepresentations or omissions to customers about its vehicles (*see* Am. Compl. ¶¶ 13-14, 87-88, 110-130), that Tesla sold Yeh a vehicle with a defective camera system (*id.* ¶¶ 3, 45-46, 114, 125-126), and that Tesla violated Yeh's privacy and breached a contract with Yeh as a result of its employees internally sharing unidentified recordings from those cameras (*id.* ¶¶ 1, 3, 34-49, 70-83). All claims, therefore, must be arbitrated. *See, e.g.*, *Kamineni*, 2020 WL 57867, at *1, 3 (claims based upon problems with Tesla vehicle and inability to repair or address problems fall within "broad" scope of arbitration provision in Sale Agreement); *Chien v. Bumble Inc.*, 2022 WL 17069842, at *15 (S.D. Cal. Nov. 17, 2022) (compelling privacy claims to arbitration where agreement to arbitrate included broad language governing user's relationship with dating app company); *Garcia v. Dell, Inc.*, 905 F. Supp. 2d 1174, 1177 (S.D. Cal. 2012) (finding that similarly broad arbitration provision covered invasion of privacy claims).

Yeh's claims also arise out of or relate to the "purchase or condition" of Yeh's Model Y vehicle, including the recording of data from an allegedly "defective" camera system in his vehicle and Tesla's alleged use, storage, and sharing of that camera data. (Am. Compl. ¶¶ 3, 45-56.) Indeed, Yeh repeatedly alleges that "had the correct facts been known, [he and other class members] would not have purchased or leased Tesla vehicles at the prices at which they were offered." (Am. Compl. ¶¶ 84, 91, 95.) Accordingly, his claims must be arbitrated. *See, e.g.*, *Rizvi v. BMW of N. Am. LLC*, 2020 WL 2992859, at *3 (N.D. Cal. June 4, 2020) (finding that similar language was broad and encompassed suit over defective fuel pump).

**b.    Order Agreement**

In the Order Agreement, Yeh expressly agreed to arbitrate "any dispute arising out of or relating to ***any aspect*** of the relationship between [he] and Tesla." Ahluwalia Decl. ¶ 3, Ex. 1 at 3 (emphasis added). In addition, the arbitration provision in the Order Agreement specifically covers "claims arising before this Agreement, such as claims related to statements about our products." *Id.*

DEFENDANT TESLA INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS AND TO DISMISS THE ACTION

1   As detailed above, all of Yeh's claims (as well as those by his son) relate to his "relationship"

2   with Tesla.  Accordingly, the claims at issue in this case also fall within the scope of the arbitration

3   provision in the Order Agreement.  *Fish*, 2022 WL 1552137, at *4 (Order Agreement requires

4   individual arbitration of claims based upon alleged "defects in batteries and deficient battery

5   performance"); *Raebel*, 451 F. Supp. 3d at 1189 (compelling acceleration defect claims to

6   individual arbitration under Order Agreement).[8]

7   **4.      Arbitration Must Be Conducted On An Individual, Non-Class Basis.**

8   The Court must "enforce arbitration agreements according to their terms—including terms

9   providing for individualized proceedings." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018).

10   The FAA authorizes the Court to enter an order "directing that such arbitration proceed in the

11   manner provided for such agreement." 9 U.S.C. § 4.  Consistent with these principles, the

12   Supreme Court has made clear that arbitration must proceed on an individual and non-class basis

13   where the agreement is silent or otherwise prohibits class claims.  *See, e.g., Lamps Plus, Inc.*, 139

14   S. Ct. at 1419 (reversing order compelling arbitration on class basis because "[c]ourts may not infer

15   from an ambiguous agreement that parties have consented to arbitrate on a classwide basis"); *Am.*

16   *Exp. Co.*, 570 U.S. at 238 (upholding contractual waiver of class-wide arbitration); *AT&T Mobility*

17   *LLC v. Concepcion*, 563 U.S. 333, 344, 352 (2011) (FAA preempts state law barring class waiver

18   and reasoning that "[r]equiring the availability of classwide arbitration," contrary to parties'

19   agreement, "interferes with fundamental attributes of arbitration and thus creates a scheme

20   inconsistent with the FAA"); *Stolt-Nielsen S.A.*, 559 U.S. at 683 (court may not compel arbitration

21   on classwide basis when agreement is "silent" on availability of such arbitration).

22   Here, both the Sale Agreement and the Order Agreement contain class waivers and require

23   arbitration on an individual basis.  Ahluwalia Decl. ¶ 9, Ex. 2 (Sales Agreement) at 7 ("Any claim

24   or disputed is to be arbitrated by a single arbitrator on an individual basis and not as a class action.

25   You expressly waive any right you may have to arbitrate a class action."); Ahluwalia Decl. ¶ 9, Ex.

---

[8]      As this Court has recognized in prior decisions, Yeh's request for injunctive relief is also subject to arbitration. *See, e.g., Saperstein v. Thomas P. Gohagan & Co.*, 476 F. Supp. 3d 965, 977 (N.D. Cal. 2020) (Spero, J.) (compelling arbitration of claims seeking injunctive relief); *Lee*, 2018 WL 4961802, at *10 (same).

DEFENDANT TESLA INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS AND TO DISMISS THE ACTION

1 (Order Agreement) at 3 ("The arbitrator cannot hear class or representative claims or request for relief on behalf of others purchasing or leasing Tesla vehicles. In other words, you and Tesla may bring claims against the other only in your or its individual capacity and not as a plaintiff or class member in any class or representative action.").  Accordingly, Yeh should be compelled to arbitrate his claims on an individual basis.

## B.   G.Y. Also Must Arbitrate His Derivative Claims.

Plaintiff Yeh's son is bound by the arbitration agreement as well.  *See, e.g.*, *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (recognizing that "'traditional principles'" of applicable state contract law, such as estoppel and third-party beneficiary theories, may "allow a[n] [arbitration] contract to be enforced by or against nonparties to the contract").  Under California law, a nonsignatory can be compelled to arbitrate where "a preexisting relationship existed between the nonsignatory and one of the parties to the arbitration agreement, making it equitable to compel the nonsignatory to also be bound to arbitrate his or her claim."  *Chan*, 2015 WL 12655701, at *5 (collecting authority); *see also Cty. of Contra Costa v. Kaiser Found. Health Plan, Inc*., 47 Cal. App. 4th 237, 242-43 (1996), *as modified* (Aug. 1, 1996).  One such relationship is the "parent-child relationship." *Crowley Mar. Corp. v. Bos. Old Colony Ins. Co.*, 158 Cal. App. 4th 1061, 1070 (2008).  Where such equitable circumstances are present, "arbitration agreements are enforced with regularity against nonsignatories." *Cnty. Of Contra Costa*, 47 Cal. App. 4th at 242 (citing *Mormile v. Sinclair*, 21 Cal. App. 4th 1508, 1511 (1994) and other cases); *see also Doyle v. Giuliucci*, 62 Cal. 2d 606, 609, 401 P.2d 1, 3 (1965).

*Chan* is instructive.  There, a husband entered into a subscription agreement with a cable company that included an arbitration clause.  2015 WL 12655701 at *2.  The husband and his wife alleged that the cable company's employees improperly entered their property, installed a signal blocking device, and monitored their cable usage.  *Id.*  The husband and wife brought, among others, invasion of privacy claims against the cable company.  *Id.*  The Court compelled arbitration of the privacy claims of the husband, since he signed the arbitration agreement and his privacy claims fell within its scope.  *Id.* at *5.  Applying California law, the Court then rejected the wife's

21

1   attempt to avoid the arbitration clause as a non-signatory.  *Id*  The Court reasoned that a special

2   relationship existed between the husband (signatory) and wife (non-signatory) and that "an

3   arbitration clause often applies to the spouse and children of the signatory*." Id*.  Given this

4   relationship and the intertwined nature of the claims, the Court compelled arbitration of the wife's

5   claims.

6        This case presents an even stronger basis to compel arbitration.  Yeh is G.Y.'s father; Yeh

7   is purporting to serve as G.Y.'s guardian in this case; and Yeh only named his infant son as a

8   plaintiff **after** Tesla moved to compel arbitration of Yeh's claims.  G.Y.'s claims also are

9   intertwined with and dependent upon Yeh's claims.  There is not a single factual allegation about

10  G.Y. in the Amended Complaint (other than his lack of social media presence in Paragraph 56).

11  Rather, G.Y.'s claims rest solely upon what conduct Yeh engaged in, including his purchase of the

12  Tesla vehicle, what camera features Yeh activated, and what data sharing, if any, Yeh agreed to for

13  his Tesla vehicle.  The Amended Complaint, in fact, simply lumps G.Y. together with Yeh—

14  without  distinction—for each count asserted on behalf of G.Y.  (Am. Compl. ¶¶ 70-84, 89, 94,

15  103-105, 124-128 (referring to "Plaintiffs" without distinction).)  As a result, G.Y. also must

16  arbitrate his claims.

17       Some courts have suggested that, with respect to children, this estoppel principle does not

18  apply to "goods beyond necessities, like education or medical care."  *In re Ring LLC Priv. Litig.*,

19  2021 WL 2621197, at *8 (C.D. Cal. June 24, 2021), *appeal dismissed,* 2022 WL 3339845 (9th Cir.

20  Aug. 3, 2022); *see also S.S. by & through Stern v. Peloton Interactive, Inc.*, 566 F. Supp. 3d 1019,

21  1039 (S.D. Cal. 2021).  The logic of those cases, however, support compelling arbitration here.

22  Just as educational and medical services contracts can be entered into for a child's direct benefit,

23  so too can agreements to purchase vehicles.  *See Chan*, 2015 WL 12655701, at *5; *accord Taylor*

24  *Morrison of Texas, Inc. v. Ha*, 660 S.W.3d 529, 534–35 (Tex. 2023) (applying Texas law) ("when

25  a nonsignatory spouse and children live in a family home purchased by the signatory spouse, the

26  nonsignatory family members have accepted direct benefits from the purchase agreement such that

27  they may be compelled through direct-benefits estoppel to arbitrate when the family sues as an

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

22
DEFENDANT TESLA INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS AND TO DISMISS THE ACTION

integrated unit for factually intertwined construction-defect claims.").   That is the case here. Plaintiffs allege that Yeh and his wife purchased their Tesla "as they were expecting their first child," because they believed "it would be a safe and reliable vehicle" for G.Y. and would "protect[] [the] family's privacy."  (Am. Compl. ¶¶ 50-51.)  Yeh entered into his Agreements for G.Y.'s benefit.

Lastly, equitable estoppel principles apply for another reason—G.Y.'s claims are intertwined with Yeh's Order Agreement, which contains the mandatory arbitration provision. G.Y. alleges that Tesla violated its Privacy Policy and that his "expectation of privacy" stems from that document.  (Am. Compl. ¶ 71 ("Their expectation of privacy in their vehicle stemmed from Tesla's clearly-stated [Privacy] [P]olicy that it would not misuse videos or images it captures"); *see also id.* ¶¶ 13-14, 31, 33-34 (discussing Privacy Policy and allegedly violation of it by Tesla).)  That Privacy Policy is expressly incorporated into and made part of Yeh's Order Agreement.  *See* Ahluwalia Decl. ¶ 3, Ex. 1 at 3 ("Privacy Policy").  Because the Privacy Policy on which G.Y. bases his claims is linked to and incorporated into the Order Agreement, G.Y. cannot now avoid the arbitration provision in that Agreement.  *See, e.g., Hawkins v. Ford Motor Co.*, 2021 WL 9031130, at *4 (C.D. Cal. Nov. 24, 2021) (applying equitable estoppel principles under California law to require non-signatory to arbitrate claims against vehicle manufacturer because non-signatory's claims and agreement with arbitration clause "are sufficiently intertwined"); *Philadelphia Indem. Ins. Co. v. SMG Holdings, Inc.*, 44 Cal. App. 5th 834, 841 (2019) (reversing order denying motion to compel arbitration and applying equitable estoppel principles to require arbitration of non-signatory seeking benefit of contract).

Put simply, given G.Y.'s unique relationship to Yeh and the derivative nature of his claims in this case, G.Y. also must arbitrate his claims on an individual basis.

### C.   The Court Should Dismiss This Action, Or, In The Alternative, Stay It Pending The Outcome Of Arbitration.

Under controlling Ninth Circuit law, this Court has the discretion to dismiss the action when all of the claims are arbitrable.  *See, e.g.*, *Forrest v. Spizzirri*, 62 F.4th 1201, 1203, 1205 (9th Cir.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1  2023) (holding that "binding precedent establishes that district courts may dismiss suits when, as

2  here, all claims are subject to arbitration" and that the "district court's discretion to dismiss extends

3  to cases in which a stay is requested"); *Johnmohammadi*, 755 F.3d at 1073–74 (recognizing rule).

4  Indeed, it has done so in other cases. *Harris*, 2022 WL 16637987, at *14 (dismissing action because

5  all claims were subject to arbitration). Because all of Plaintiffs' claims are arbitrable, the Court

6  should dismiss this action without prejudice.

7          In the alternative, the Court should stay this case pending the outcome of arbitration

8  proceedings involving the parties. 9 U.S.C. § 3 (allowing for stay until completion of arbitration).

9  **V.     CONCLUSION**

10         The Court should order Plaintiffs to arbitrate all their claims against Tesla on an individual,

11  non-class basis and dismiss this action without prejudice. Alternatively, the Court should stay this

12  action pending the outcome of arbitration.

13

14   Dated: July 31, 2023                        MORGAN, LEWIS & BOCKIUS LLP
                                                   David L. Schrader
15                                                 Brian M. Ercole
                                                   Mark A. Feller
16

17                                         By    */s/ David L. Schrader*
18                                                 David L. Schrader

19                                         *Attorneys for Defendant Tesla, Inc.*

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

24
DEFENDANT TESLA INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS AND TO DISMISS THE ACTION