1

MORGAN, LEWIS & BOCKIUS LLP
David L. Schrader, Bar No. 149638
david.schrader@morganlewis.com
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA  90071-3132
Tel: +1.213.612.2500
Fax 1.213.612.2501

Brian M. Ercole
(admitted *pro hac vice*)
brian.ercole@morganlewis.com
600 Brickell Ave, Suite 1600
Miami, FL  33131-3075
Tel: +1.305.415.3000
Fax: +1.305.415.3001

2

3

4

5

6

Mark A. Feller, Bar No. 319789
mark.feller@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA  94105-1126
Tel: +1.415.442.1000
Fax: +1.415.442.1001

7

8

9

Attorneys for Defendant
TESLA, INC.

10

11

12

UNITED STATES DISTRICT COURT

13

NORTHERN DISTRICT OF CALIFORNIA

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HENRY YEH and G.Y., a minor and through his guardian Henry Yeh, on behalf of themselves, all others similarly situated, and the general public,

Plaintiff,

vs.

TESLA, INC.,

Defendant.

Case No. 3:23-cv-01704-JCS

**DEFENDANT TESLA INC.'S NOTICE OF MOTION, MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT PURSUANT TO RULE 12(B)(1), RULE 12(B)(6), AND RULE 9(B) AND TO STRIKE THE CLASS ALLEGATIONS, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

Hearing Date:       September 15, 2023
Time:                    9:30 a.m.
Ctrm:                   F, 15th Floor
Judge:                  Hon. Joseph C. Spero

Compl. Filed:      April 7, 2023

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT TESLA INC.'S MOTION TO DISMISS AND STRIKE CLASS ALLEGATIONS

## NOTICE OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT PURSUANT TO RULE 12(b)(1), RULE 12(b)(6), AND RULE 9(b) AND TO STRIKE THE CLASS ALLEGATIONS

**PLEASE TAKE NOTICE** that on September 15, 2023, at 9:30 a.m. or as soon thereafter as the matter may be heard before the Honorable Joseph C. Spero, Courtroom F, of the above-entitled Court, located at 450 Golden Gate Avenue San Francisco, CA 94102, Tesla, Inc. ("Tesla") will and hereby does move to dismiss the claims brought by Plaintiffs Henry Yeh ("Yeh") and his one-year-old son, G.Y., pursuant to Rules 12(b)(1), 12(b)(6), and 9(b) of the Federal Rules of Civil Procedure, and to strike the class allegations under Rules 23(d)(1)(D) and 12(f).  Tesla makes this motion ("Motion") in the alternative to its pending motion to compel arbitration on an individual basis under the Federal Arbitration Act ("Motion to Compel").

The Court should compel Plaintiffs to arbitrate their claims on an individual, non-class basis for the reasons set forth in Tesla's Motion to Compel.  In the alternative, the Court should dismiss Plaintiffs' Amended Complaint under Rule 12(b)(1), Rule 12(b)(6), and Rule 9(b).  All of Plaintiffs' claims fail because neither Yeh nor his son alleges facts to show that Tesla engaged in any actionable conduct as to either of them or that either suffered a cognizable injury.  Plaintiffs also cannot pursue injunctive relief, because they do not allege any imminent risk of future harm. Each claim also fails as a matter of California law for additional independent claim-specific reasons, including because Plaintiffs have not pled and cannot plead the essential elements of those claims and cannot satisfy the heightened pleading requirements of Rule 9(b) for certain claims. Lastly, the class allegations should be stricken under Rules 23(d)(1)(D) and 12(f) because neither Yeh nor G.Y. are adequate class representatives.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the exhibits attached to the declaration of David L. Schrader, all pleadings and filings in this action, and on any written or oral argument presented to the Court at or prior to the hearing on this Motion.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: July 31, 2023        MORGAN, LEWIS & BOCKIUS LLP
                            David L. Schrader
                            Brian M. Ercole
                            Mark A. Feller


                      By   /s/ David L. Schrader
                            David L. Schrader

                          Attorneys for Defendant Tesla, Inc.

3

DEFENDANT TESLA INC.'S MOTION TO DISMISS AND STRIKE CLASS ALLEGATIONS

1

**TABLE OF CONTENTS**

2

Page

3

I.     INTRODUCTION ........................................................................ 1

4

II.    BACKGROUND ......................................................................... 2

       A.     Yeh Ordered A Model Y Tesla Vehicle In November 2021. ................................ 2

5

6      B.     Tesla's Privacy Policy Disclosed What Camera Data Would Be Collected
              And Continues To Give Yeh The Right Not To Have Data Collected. ................. 3

7      C.     Yeh Activated Sentry Mode On His Vehicle, But Plaintiffs' Own Exhibits
              Make Clear That Such Data Is Not Collected By Or Sent To Tesla. ..................... 4

8

9      D.     On April 6, 2023, Reuters Published An Article About Unidentified Tesla
              Camera Recordings In Unidentified Vehicles. ...................................................... 4

10     E.     Yeh Filed This Putative Class Action Complaint One Day Later. ........................ 5

       F.     Yeh's Amended Complaint Cures None Of The Defects Identified By
11            Tesla. ...................................................................................................................... 5

12     III.   PLAINTIFFS' AMENDED COMPLAINT SHOULD BE DISMISSED ......................... 6

13     A.     All Claims (Counts I-IX) Fail Because There Are No Facts That Tesla
              Improperly Accessed And Shared Any Camera Data From Yeh's Vehicle. .......... 7

14     B.     All Claims (Counts I-X) Fail Because Neither Yeh Nor G.Y. Alleges That
              He Suffered Any Cognizable And Particularized Injury. ...................................... 8

15     C.     Plaintiffs' Request For Injunctive Relief Must Be Dismissed. ............................ 11

16     D.     Plaintiffs' Individual Claims Fail For Additional Reasons. .................................. 13

17            1.     Plaintiffs' Intrusion Upon Seclusion (Count I) And Constitutional
                     Right To Privacy (Count II) Claims Are Fundamentally Flawed. ............. 13

18
19            2.     Plaintiffs' Statutory Claim For A Violation Of The Right To
                     Publicity Under Cal. Civ. Code § 3344(a) (Count III) Is Frivolous. ........ 15

20            3.     Plaintiffs' Equitable Claims (Counts IV, V, And X) Fail Because
                     They Allege An Adequate Remedy At Law. ............................................. 16

21            4.     Yeh's Intentional And Negligent Misrepresentation Claims (Counts
22                   VIII-IX) Must Be Dismissed For Several Reasons. ................................... 17

23            5.     Plaintiffs' Negligence (Count VI) And Negligent Misrepresentation
                     (Count VIII) Claims Are Barred By The Economic Loss Rule. ............... 20

24            6.     Plaintiffs' UCL And CLRA Claims (Counts IV And V) Are
                     Flawed. ..................................................................................................... 20

25
              7.     There Is No Basis For The Unjust Enrichment Claims (Count X). .......... 22

26            8.     Yeh Does Not State A Breach Of Contract Claim (Count VII). ............... 23

27     IV.    THE COURT SHOULD STRIKE THE CLASS ALLEGATIONS ................................. 24

28     V.     CONCLUSION ........................................................................... 25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**FEDERAL CASES**

4

*Aguilera v. Pirelli Armstrong Tire Corp.*
   223 F.3d 1010 (9th Cir. 2000) ......................................................................... 9, 24

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009) ................................................................................................ 7

*Ashwander v. Tennessee Valley Auth.*
   297 U.S. 288 (1936) ................................................................................................ 9

*Astiana v. Hain Celestial Grp., Inc.*
   783 F.3d 753 (9th Cir. 2015) ................................................................................ 22

*Bell Atl. Corp. v. Twombly*
   550 U.S. 544 (2007) ................................................................................................ 6

*Beyer v. Symantec Corp.*
   2019 WL 935135 (N.D. Cal. Feb. 26, 2019) ..................................................... 9, 11

*Blanco v. Cnty. of Kings*
   142 F. Supp. 3d 986 (E.D. Cal. 2015) ................................................................. 15

*Bongiovanni v. State Farm Fin. Servs., F.S.B.*
   2015 WL 13916261 (C.D. Cal. July 22, 2015) .................................................... 15

*Burkhalter Travel Agency v. MacFarms Int'l, Inc.*
   141 F.R.D. 144 (N.D. Cal. 1991) ......................................................................... 25

*City of Los Angeles v. Lyons*
   461 U.S. 95 (1983) ................................................................................................ 11

*Cooper v. Pickett*
   137 F.3d 616 (9th Cir. 1997) ................................................................................ 21

*Costa v. Reliance Vitamin Co.*
   2023 WL 2989039 (N.D. Cal. Apr. 18, 2023) ..................................................... 20

*DaimlerChrysler Corp. v. Cuno*
   547 U.S. 332 (2006) ................................................................................................ 6

*Damner v. Facebook Inc.*
   2020 WL 7862706 (N.D. Cal. Dec. 31, 2020) (Spero, J.) ............................... 19, 23

*Davidson v. Kimberly-Clark Corp.*
   889 F.3d 956 (9th Cir. 2018) ................................................................................ 12

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

ii

DEFENDANT TESLA INC.'S MOTION TO DISMISS AND STRIKE CLASS ALLEGATIONS

*Del Llano v. Vivint Solar Inc.*
2018 WL 656094 (S.D. Cal. Feb. 1, 2018) .................................................................. 15

*Fenaroli v. Stickleman*
2016 WL 11745085 (C.D. Cal. May 12, 2016) ......................................................... 25

*Forrett v. Gourmet Nut, Inc.*
2022 WL 6768217 (N.D. Cal. Oct. 11, 2022)............................................................ 12

*Freund v. HP, Inc.*
2023 WL 187506 (N.D. Cal. Jan. 13, 2023) .............................................. 16, 20, 23

*Gibson v. Jaguar Land Rover N. Am., LLC*
2020 WL 5492990 (C.D. Cal. Sept. 9, 2020)............................................................ 17

*Hamm v. Mercedes-Benz USA, LLC*
2022 WL 913192 (N.D. Cal. Mar. 29, 2022) ........................................................... 16

*Hammerling v. Google LLC*
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ..................................................................... 13

*Havensight Cap. LLC v. Nike, Inc.*
2014 WL 12613382 (C.D. Cal. Nov. 19, 2014)........................................................ 16

*Holden v. Fluent, Inc.*
2020 WL 6822914 (N.D. Cal. Nov. 20, 2020)..................................................... 7, 18

*Hovsepian v. Apple, Inc.*
2009 WL 5069144 (N.D. Cal. Dec. 17, 2009) ......................................................... 24

*In re Apple Processor Litig.*
2022 WL 2064975 (N.D. Cal. June 8, 2022) ........................................................... 19

*In re Facebook, Inc. Internet Tracking Litig.*
956 F.3d 589 (9th Cir. 2020)........................................................................... 13, 15

*In re Facebook Privacy Litig.*
791 F. Supp. 2d 705 (N.D. Cal. 2011), *aff'd,* 572 F. App'x 494 (9th Cir. 2014) .................. 24

*In re Google, Inc. Privacy Policy Litig.*
2012 WL 6738343 (N.D. Cal. Dec. 28, 2012) ......................................................... 10

*In re Google, Inc. Privacy Policy Litig.*
58 F. Supp. 3d 968 (N.D. Cal. 2014) ........................................................................ 22

*In re iPhone Application Litig.*
844 F. Supp. 2d 1040 (N.D. Cal. 2012) .............................................................. 14, 20

*In re Zoom Video Commc'ns Inc. Priv. Litig.*
525 F. Supp. 3d 1017 (N.D. Cal. 2021) .................................................................... 20

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

iii

DEFENDANT TESLA INC.'S MOTION TO DISMISS AND STRIKE CLASS ALLEGATIONS

*Kearns v. Ford Motor Co.*
    567 F.3d 1120 (9th Cir. 2009)..............................................................21

*Lopez v. Apple, Inc.*
    519 F. Supp. 3d 672 (N.D. Cal. 2021) .............................................8, 10, 14

*Low v. LinkedIn Corp.*
    2011 WL 5509848 (N.D. Cal. Nov. 11, 2011)................................10, 11

*Low v. LinkedIn Corp.*
    900 F. Supp. 2d 1010 (N.D. Cal 2012) ..............................11, 13, 22, 24

*McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc.*
    339 F.3d 1087 (9th Cir. 2003) ..............................................................16

*McNeary-Calloway v. JP Morgan Chase Bank, N.A.*
    863 F. Supp. 2d 928 (N.D. Cal. 2012) (Spero, J.)................................21

*Mish v. TForce Freight, Inc.*
    2021 WL 4592124 (N.D. Cal. Oct. 6, 2021) ........................................16

*Missud v. Oakland Coliseum Joint Venture*
    2013 WL 812428 (N.D. Cal. Mar. 5, 2013) (Spero, J.) .......................20

*Moore v. Rodriguez*
    2021 WL 2222590 (S.D. Cal. June 2, 2021) ........................................15

*Moulton v. Gjerde*
    2020 WL 3078182 (N.D. Cal. June 10, 2020) ................................11, 12

*Najarian Holdings LLC v. Corevest Am. Fin. Lender LLC*
    2020 WL 5993225 (N.D. Cal. Oct. 9, 2020)..........................................18

*Newcombe v. Adolf Coors Co.*
    157 F.3d 686 (9th Cir. 1998)..............................................................9, 16

*Opperman v. Path, Inc.*
    87 F. Supp. 3d 1018 (N.D. Cal. 2014) ...................................................9

*Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*
    96 F.3d 1151 (9th Cir. 1996)..................................................................23

*Pascal v. Concentra, Inc.*
    2020 WL 4923974 (N.D. Cal. Aug. 21, 2020)........................................24

*Phillips v. Apple Inc.*
    2016 WL 1579693 (N.D. Cal. Apr. 19, 2016) .................................18, 22

*Pirozzi v. Apple Inc.*
    913 F. Supp. 2d 840 (N.D. Cal. 2012) .................................................9, 11

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

iv

DEFENDANT TESLA INC.'S MOTION TO DISMISS AND STRIKE CLASS ALLEGATIONS

*Reade v. New York Times Co.*
2022 WL 2396083 (E.D. Cal. July 1, 2022), *appeal dismissed*, 2022 WL 18493987 (9th Cir. Sept. 13, 2022) ........................................................................................................... 13

*Ruiz v. Gap, Inc.*
540 F. Supp. 2d 1121 (N.D. Cal. 2008), *aff'd*, 380 F. App'x 689 (9th Cir. 2010) .................. 14

*Sali v. Corona Reg'l Med. Ctr.*
909 F.3d 996 (9th Cir. 2018)........................................................................................... 25

*San Diego Cnty. Gun Rts. Comm. v. Reno*
98 F.3d 1121 (9th Cir. 1996)........................................................................................... 11

*San Francisco Bay Area Rapid Transit Dist. v. Spencer*
358 F. App'x 793 (9th Cir. 2009) ....................................................................................... 9

*San Pedro-Salcedo v. Haagen-Dazs Shoppe Co., Inc.*
2019 WL 6493978 (N.D. Cal. Dec. 3, 2019) ..................................................................... 25

*Sanders v. Brown*
504 F.3d 903 (9th Cir. 2007)............................................................................................. 5

*Sharma v. Volkswagen AG*
524 F. Supp. 3d 891 (N.D. Cal. 2021) ......................................................................... 16, 17

*Shorter v. Cnty. of Los Angeles*
2022 WL 3636687 (C.D. Cal. July 12, 2022) ................................................................... 15

*Shuman v. SquareTrade Inc.*
2020 WL 7458001 (N.D. Cal. Dec. 18, 2020) (Spero, J.) ................................................. 23

*Sinatro v. Mrs. Gooch's Nat. Food Markets, Inc.*
2023 WL 2324291 (N.D. Cal. Feb. 16, 2023)................................................................... 20

*Snapkeys, Ltd. v. Google LLC*
442 F. Supp. 3d 1196 (N.D. Cal. 2020) ........................................................................... 19

*Sonner v. Premier Nutrition Corp.*
971 F.3d 834 (9th Cir. 2020)............................................................................... 16, 17, 22

*Spokeo, Inc. v. Robins*
578 U.S. 330 (2016), *as revised* (May 24, 2016)................................................................ 8

*Stark v. Patreon, Inc.*
2023 WL 2090979 (N.D. Cal. Feb. 17, 2023) (Spero, J.) ................................................. 21

*Stearns v. Select Comfort Retail Corp.*
2009 WL 1635931 (N.D. Cal. June 5, 2009) ................................................................... 22

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

*Sutcliffe v. Wells Fargo Bank, N.A.*
2012 WL 4835325 (N.D. Cal. Oct. 9, 2012) (Spero, J.) ........................................................ 24

*Tabler v. Panera LLC*
2020 WL 3544988 (N.D. Cal. June 30, 2020) ...................................................................... 21

*Vess v. Ciba-Geigy Corp. USA*
317 F.3d 1097 (9th Cir. 2003) ............................................................................................... 7

*Watkins v. MGA Ent., Inc.*
550 F. Supp. 3d 815 (N.D. Cal. 2021) (Spero, J.) ......................................................... 17, 21

*Whitaker v. Ramon Bravo, Inc.*
2021 WL 4133871 (N.D. Cal. Sept. 10, 2021) (Spero, J.) .................................................. 11

*White v. Soc. Sec. Admin.*
111 F. Supp. 3d 1041 (N.D. Cal. 2015) .............................................................................. 13

*Winzig v. Stockpile Invs., Inc.*
2021 WL 4812956 (C.D. Cal. July 2, 2021) ......................................................................... 9

*Yarber v. Kia Am., Inc.*
2023 WL 2654186 (N.D. Cal. Mar. 27, 2023) ............................................................... 18, 19

*Yastrab v. Apple Inc.*
2015 WL 1307163 (N.D. Cal. Mar. 23, 2015) ..................................................................... 18

*Yunker v. Pandora Media, Inc.*
2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) ...................................................... 10, 13, 24

**CALIFORNIA CASES**

*Apollo Cap. Fund, LLC v. Roth Cap. Partners, LLC*
158 Cal. App. 4th 226 (2007) .............................................................................................. 9

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*
222 Cal. App. 3d 1371 (1990) ............................................................................................ 19

*Chapman v. Skype, Inc.*
220 Cal. App. 4th 217 (2013) ......................................................................................... 8, 17

*Christiansen v. Roddy*
186 Cal. App. 3d 780 (1986) .............................................................................................. 18

*De Havilland v. FX Networks, LLC*
21 Cal. App. 5th 845 (2018) .............................................................................................. 22

*Hall v. Time Inc.*
158 Cal. App. 4th 847 (2008), *as modified* (Jan. 28, 2008) ................................................ 8

*Hill v. Nat'l Collegiate Athletic Ass'n*
    7 Cal. 4th 1 (1994) .................................................................................................. 14

*Kwikset Corp. v. Superior Ct.*
    51 Cal. 4th 310 (2011) ............................................................................................ 22

*Mendoza v. City of Los Angeles*
    66 Cal. App. 4th 1333 (1998) ................................................................................... 9

*Meyer v. Sprint Spectrum L.P.*
    45 Cal. 4th 634 (2009) .............................................................................................. 9

*Peterson v. Cellco P'ship*
    164 Cal. App. 4th 1583 (2008) ................................................................................. 9

*Robinson Helicopter Co., v. Dana Corp.*
    34 Cal. 4th 979 (2004) ............................................................................................ 20

*Seely v. White Motor Co.*
    63 Cal. 2d 9 (1965) ................................................................................................. 20

**STATUTES**

Cal. Bus. & Prof. Code § 17204 .................................................................................... 22

Cal. Civ. Code § 1780(a) ............................................................................................... 22

Cal. Civ. Code § 3344 .............................................................................................. 9, 15

**OTHER AUTHORITIES**

Fed. R. Civ. P. 9(b) ..................................................................................... 2, 7, 18, 21

Fed. R. Civ. P. 12(b)(1) .................................................................................................. 6

Fed. R. Civ. P. 12(b)(6) .................................................................................................. 6

Fed. R. Civ. P. 12(f) ..................................................................................................... 24

Fed. R. Civ. P. 23(a)(4) ......................................................................................... 24, 25

Fed. R. Civ. P. 23(d)(1)(D) ........................................................................................... 24

Fed. R. Evid. 201 ............................................................................................................ 5

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT TESLA INC.'S MOTION TO DISMISS AND STRIKE CLASS ALLEGATIONS

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.  <u>INTRODUCTION</u>**

3      This lawsuit never should have been filed in this Court.  As a threshold matter, Plaintiff

4  Henry Yeh ("Yeh") agreed in two separate contracts to arbitrate his grievances with Tesla on an

5  individual basis.  In response to Tesla's motion to compel his claims to arbitration, and in an effort

6  to dodge his contractual arbitration obligations, Yeh added his one-year-old son ("G.Y.") as a

7  plaintiff.  As set forth in Tesla's concurrently-filed Motion to Compel Arbitration, Yeh's ploy does

8  not work.  G.Y.'s duplicative claims also must be compelled to individual arbitration.

9      The problems with the claims in this case, however, go well beyond where it was filed.  As

10  a substantive matter, these claims never should have been filed in any forum.  Plaintiffs do not base

11  their claims on any injury or harm that they experienced but, instead, on a news article.  That article

12  reported that some ***unidentified*** former Tesla employees allegedly looked at ***unidentified*** camera

13  recordings from ***unidentified*** Tesla vehicles.  The authors of the article themselves disclosed that

14  they never saw any recordings, had no basis to say such conduct was widespread, and had no

15  evidence that it continues.  Without any basis to allege that Tesla collected, much less shared, any

16  camera recording from ***his*** vehicle, Yeh nonetheless rushed to court to file this putative class action

17  the very next day.  Plaintiffs even acknowledge that their claims are based upon nothing more than

18  a "***potential*** . . . intrusion." (Am. Compl. ¶ 74 (emphasis added).)  This hastily-filed and speculative

19  action must be dismissed for numerous reasons.

20      ***First***, all of Plaintiffs' claims fail because they allege no facts to show that Tesla improperly

21  accessed or shared any data from ***Yeh's vehicle***—the entire basis for this lawsuit.  In fact, Plaintiffs'

22  own allegations foreclose this theory.  Yeh claims only that he activated "Sentry Mode" on his

23  vehicle's camera system, but any such images are ***not*** transmitted to Tesla.  (Privacy Policy, ECF

24  No. 32-1, at 6.)  There are no allegations that any camera recording from his vehicle was ever shared

25  with anyone within or outside of Tesla.  Plaintiffs fail to support the very essence of their lawsuit.

26      ***Second***, Yeh and his infant son must allege that they (not others) personally suffered a

27  cognizable injury—both for Article III standing and as an element of their claims.  They do not.

28  Plaintiffs do not allege facts to show that Tesla collected data from Yeh's vehicle and shared it

1  internally, do not allege that any personal or sensitive images of Yeh or G.Y. exist on any recordings

2  from Yeh's vehicle, and do not allege that they experienced any resulting non-economic harm.  Nor

3  do Plaintiffs allege facts to show they suffered any form of economic loss or that Tesla used their

4  images to make money.  Neither Yeh nor his one-year-old son have been harmed in any way.

5  *Third*, Plaintiffs cannot pursue injunctive relief, because they do not allege any imminent

6  risk of future harm.  To the contrary, Plaintiffs allege that any alleged sharing of camera recordings

7  took place "[b]etween 2019 and 2022."  (Am. Compl. ¶ 34.)  Yeh further alleges that he has

8  deactivated "Sentry Mode."  (*Id.* ¶ 52)  Plaintiffs also do not dispute that even if Yeh enabled the

9  sharing of camera recordings with Tesla, he can disable such sharing at any time through his display

10  screen, as set forth in Tesla's Privacy Policy—a document upon which Plaintiffs rely.

11  *Fourth*, Plaintiffs' claims fail under California law for many additional reasons.  Their

12  constitutional privacy and intrusion upon seclusion claims fail because they allege no violation of

13  their privacy, much less a "highly offensive" intrusion.  Their equitable claims must be dismissed

14  because they allege they have an adequate remedy at law.  Their commercial misappropriation of

15  likeness claims fail because Plaintiffs do not and cannot allege that Tesla ever used their images

16  for any commercial purpose.  The misrepresentation, UCL, and CLRA claims fail because Plaintiffs

17  do not allege any misrepresentation by Tesla that Yeh received and relied upon at the time of his

18  purchase, much less with the specificity required by Rule 9(b), or any other basis for those claims.

19  Plaintiffs' negligence claims are barred by the economic loss doctrine.  Their unjust enrichment

20  claims are wholly unsupported and duplicative.  And Yeh's breach of contract claim fails because

21  he does not identify any contractual provision that Tesla breached or any basis for damages.

22  *Lastly*, the class allegations should be stricken.  Both Yeh's claims and G.Y.'s claims must

23  be arbitrated on an individual basis.  Moreover, G.Y. does not allege facts to show that he is a

24  member of the broad putative class he seeks to certify, and, as a matter of common sense, an

25  uninjured one-year-old child is simply not an adequate class representative.

26  **II.   BACKGROUND**

27  **A.   Yeh Ordered A Model Y Tesla Vehicle In November 2021.**

28  Tesla is a world leader in electric vehicles.  (Am. Compl. ¶ 1.)  As Tesla discloses to

customers in its Customer Privacy Notice ("Privacy Policy"),[1] its vehicles are equipped with advanced driver assistance and safety features, including Autopilot, that rely on a supporting camera system. (*Id.* ¶¶ 15-17; Privacy Policy, ECF No. 32-1, at 1, 5.) The cameras monitor the areas around the vehicle, enhance driver and passenger safety, and support Autopilot. (*Id.* at ¶ 17.)

Yeh ordered a Model Y vehicle in November 2011 and took delivery of it in February 2022. (Am. Compl. ¶ 9.) Yeh claims he purchased the vehicle because "he believed Tesla . . . . would be more sensitive to privacy and data concerns than traditional car manufacturers." (*Id.* ¶ 51.) Yeh does not allege any facts about his purchase, his experience with the vehicle, or any data from it.

**B.    Tesla's Privacy Policy Disclosed What Camera Data Would Be Collected And Continues To Give Yeh The Right Not To Have Data Collected.**

Tesla's Privacy Policy discloses to customers that Tesla vehicles "make use of a camera suite that provides advanced features such as Autopilot, Smart Summon, and Autopark." (Privacy Policy, ECF No. 32-1, at 1, 5.) Tesla's camera system is designed to protect customer privacy. (*Id.*) There are no "continuous recordings" and no "live-view functionality." (*Id.* at 5.) Any camera recordings transmitted to Tesla "are not linked" to a particular vehicle. (*Id.* at 1.)

The cameras automatically capture serious safety events ("Safety Event Recording"), such as a vehicle collision or airbag deployment, to help provide emergency services and assistance to owners; those short clips are no longer than 30 seconds. (*Id.* (describing Safety Event camera recordings).) For any other camera recording data, Tesla owners must affirmatively "opt-in" and consent to share that data with Tesla, and they may "opt-out" at any time. (*Id.*) These "opt-in" recordings ("Fleet Learning Recordings") use the vehicles' "external cameras to learn how to recognize things like lane lines, street signs and traffic light positions" in order to help improve the self-driving ability of Tesla vehicles. (*Id.* at 5 (describing Fleet Learning camera recordings).) Fleet Learning Recordings are not associated with a particular user or vehicle. (*Id.* at 1, 5-6.) Safety Event Recordings and opt-in Fleet Learning Recordings are the ***only*** categories of camera recordings "eligible to be transmitted from [a customer's] vehicle to Tesla." (*Id.*)

---

[1]    The Privacy Policy is attached to the Amended Complaint, referenced in the Amended Complaint, and forms the basis for Plaintiff's breach of contract claim. (Am. Compl. ¶ 107.) Thus, it can be considered in connection with Tesla's motion to dismiss.

1    The Privacy Policy informs owners that "if you no longer wish for us to collect vehicle data

2    or any other data from your Tesla vehicle, please contact us to deactivate connectivity." (Privacy

3    Policy at 5 ("Opting out of vehicle data").)  Tesla owners also can disable the collection of camera

4    data through a few easy steps via their vehicle's touchscreen.  (*Id.* at 4 ("Advanced features").)

5    Moreover, once any personal data is collected, Tesla owners can have it restricted or deleted by

6    submitting an online data privacy request to Tesla, sending Tesla an email, or simply accessing

7    their Tesla customer account to update their preferences.  (*Id.* at 10 ("Rights and Choices").)

8         **C.    Yeh Activated Sentry Mode On His Vehicle, But Plaintiffs' Own Exhibits**

9              **Make Clear That Such Data Is Not Collected By Or Sent To Tesla.**

10   Tesla owners can place their vehicles in "Sentry Mode" by affirmatively enabling this

11   feature.  (Am. Compl. ¶¶ 30, 52.)  Sentry Mode "uses the vehicles sensors and external cameras to

12   detect and notify [the owner] when there is suspicious activity or a significant threat to your vehicle

13   while parked."  (Privacy Policy, ECF No. 32-1, at 6 ("Sentry Mode").)  Where a threat is detected,

14   Sentry Mode "will flicker the headlights, display a message on the touchscreen indicating that the

15   cameras are recording, and save footage of the event to your [the owner's] USB drive (if installed)."

16   (*Id.*)  Only activity deemed to be "suspicious" is recorded.  (Am. Compl. ¶ 30.)  Sentry Mode

17   footage "is ***not*** transmitted to Tesla."  (Privacy Policy, ECF No. 32-1, at 6 (emphasis added).)

18   Yeh claims that after his purchase, he activated "Sentry Mode," because he saw a post-

19   purchase statement on his display screen that images captured by his vehicle's camera in this mode

20   "would only be stored locally on the vehicle's data storage system."  (*Id.* ¶ 52.)  Yeh alleges no

21   facts to show that any data captured by Sentry Mode was ever transmitted to Tesla.  It was not.

22        **D.    On April 6, 2023, Reuters Published An Article About Unidentified Tesla**

23              **Camera Recordings In Unidentified Vehicles.**

24   On April 6, *Reuters* published an article raising privacy concerns about Tesla employees

25   sharing camera recordings within Tesla, based upon hearsay statements from anonymous ex-

26   employees.  The article did not distinguish between Safety Event Recordings or Fleet Learning

27   Recordings, and it did not report, let alone suggest, that Sentry Mode footage is transmitted to Tesla.

28   Nor did it purport to identify how many camera recordings were supposedly shared between Tesla

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

4

employees.  To the contrary, the article "discloses that Reuters *wasn't* able to obtain any of the shared videos or images, which ex-employees said they hadn't kept. The news agency also *wasn't* able to determine if the practice of sharing recordings, which occurred within some parts of Tesla as recently as last year, continues today or how widespread it was. Some former employees contacted said the only sharing they observed was for legitimate work purposes, such as seeking assistance from colleagues or supervisors." [2]  (*Reuters* Article, attached as Exhibit A to 7/31/2023 Decl. of David Schrader ("Schrader Decl."), at 3 (emphasis added).)

**E.      Yeh Filed This Putative Class Action Complaint One Day Later.**

Within 24 hours after the publication of the *Reuters* Article, Yeh filed this putative class action.  He lifted his allegations straight from the article, without alleging that Tesla ever improperly accessed and shared recordings from *his* Tesla vehicle.  Because he signed multiple arbitration agreements, Tesla moved to compel arbitration of Yeh's claims.  (ECF No. 22.)  Tesla also moved to dismiss the lawsuit.  (ECF No. 23.)  In response, Yeh amended his complaint.

**F.      Yeh's Amended Complaint Cures None Of The Defects Identified By Tesla.**

Yeh's Amended Complaint continues to lift his core allegations straight from the *Reuters* article, even after Tesla pointed out the deficiencies with this approach.  Yeh claims only that unidentified Tesla employees accessed and improperly shared unidentified videos captured by cameras in unidentified vehicles up until 2022, and then broadly accuses Tesla of making misrepresentations about privacy protections for customers and invading his privacy.  (Am. Compl. ¶¶ 1-4, 34-39, 54-57.)  Once again, Yeh does not allege a single fact to show that Tesla improperly accessed or shared any camera recordings from *his* vehicle.  While Yeh claims that he activated "Sentry Mode" on his vehicle (*id.* ¶ 52), he does not and cannot allege that such data was ever transmitted to Tesla.  As a result, Yeh expressly acknowledges that his claims rest upon the "risk" of a "potential . . . intrusion."  (*Id.* ¶¶ 54, 74.)

[2]     This article is central to Plaintiffs' Amended Complaint because he quotes nearly verbatim or lifts passages from it without any attribution, including in Paragraphs 34, 35, 36, 38, 39, and 40. Thus, it can and should be considered in connection with this motion to dismiss.  *See, e.g., Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007).  Moreover, the Court can take judicial notice of the article, since it was published in *Reuters*, is available online, and its existence cannot be disputed. Fed. R. Evid. 201.

DEFENDANT TESLA INC.'S MOTION TO DISMISS AND STRIKE CLASS ALLEGATIONS

1   To try to evade arbitration, Yeh also now names his one-year son, G.Y., as a plaintiff—with

2   Yeh serving as his guardian.  G.Y. was not born when Yeh purchased his Tesla vehicle (*id.* ¶ 50),

3   and the Amended Complaint lacks a single factual allegation about G.Y., other than that he has no

4   "social media accounts" and no online photos.  (*Id.* ¶ 56.)  There are no facts that Tesla has ever

5   had access to a single camera recording of G.Y.

6   Plaintiffs bring ten claims:  (1) intrusion upon seclusion (*id.* ¶¶ 70-74); (2) violation of

7   California's constitutional right to privacy (*id.* ¶¶ 75-79); (3) violation of California's right to

8   publicity (*id.* ¶¶ 80-83); (4) violation of the Unfair Competition Law ("UCL") (*id.* ¶¶ 84-94); (5)

9   violation of the Consumer Legal Remedies Act ("CLRA") (*id.* ¶¶ 95-102), (6) negligence (*id.* ¶¶

10   103-105); (7) breach of contract (*id.* ¶¶ 106-109); (8) negligent misrepresentation (*id.* ¶¶ 110-117);

11   (9) intentional misrepresentation (*id.* ¶¶ 118-123); and (10) unjust enrichment (*id.* ¶¶ 124-128).[3]

12   Plaintiffs seek statutory, compensatory, and punitive damages, restitution, injunctive relief, and

13   declaratory relief.  (*Id.* ¶¶ 63(h), 74, 79, 83, 94, 101, 105, 109, 123, 128, 129.)

14   Plaintiffs purport to bring their claims on behalf of a variety of classes.  Yeh and G.Y. seek

15   to represent a class of every person "whose images were captured by Tesla Vehicle cameras at any

16   time" after April 7, 2019 (*id.* ¶ 61), regardless of whether they agreed to data sharing.  (*Id.*)  In

17   addition, Yeh seeks to represent a broad putative class of every person in the United States who

18   owned or leased a Tesla vehicle since April 7, 2019, as well as a subclass of California owners and

19   lessees.  (*Id.*)  As described below, Plaintiffs' claims are fundamentally flawed.

20   ## III.   <u>PLAINTIFFS' AMENDED COMPLAINT SHOULD BE DISMISSED</u>

21   To have Article III standing and survive Rule 12(b)(1) dismissal, each Plaintiff "must allege

22   personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be

23   redressed by the requested relief." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006).

24   In addition, to survive a motion to dismiss under Rule 12(b)(6), Plaintiffs must provide

25   "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The

26   factual allegations must transcend the "speculative," "conceivable," and "possible," and must "state

27   a claim to relief that is plausible on its face." *Id.* at 555–57, 566–67, 570.  In making this

28

---

[3]   Counts V, VII, VIII, and IX are only asserted on behalf of Yeh and not his son.

DEFENDANT TESLA INC.'S MOTION TO DISMISS AND STRIKE CLASS ALLEGATIONS

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1    determination, the Court must disregard "legal conclusions" and "conclusory statements," and must

2    scrutinize the well-pleaded factual allegations to ensure that they are more than "'merely consistent

3    with' a defendant's liability." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009).

4         Because many of Plaintiffs' claims sound in fraud, each Plaintiff also must satisfy Rule

5    9(b)'s heightened standard for those fraud claims by pleading "'the who, what, when, where, and

6    how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir.

7    2003); *see Holden v. Fluent, Inc.*, 2020 WL 6822914, at *9 (N.D. Cal. Nov. 20, 2020) (Spero, J.).

8         Here, applying these standards, all of Plaintiffs' claims fail.  Accordingly, if the Court does

9    not compel arbitration of their claims, it should dismiss the action in its entirety.

10   **A.    All Claims (Counts I-IX) Fail Because There Are No Facts That Tesla**

11   **Improperly Accessed And Shared Any Camera Data From Yeh's Vehicle.**

12        All of Plaintiffs' claims rest upon the premise that Tesla employees accessed, viewed, and

13   shared camera recordings without customer consent.[4]  Putting aside the legal flaws in this theory

14   (as discussed below), there is not a single fact pled to support this legal theory as to Yeh or his son.

15        Plaintiffs do not allege that Tesla has any camera recordings from Yeh's vehicle.  Plaintiffs

16   do not describe the content of any recording, including whether their images are even in it (as

17   opposed, for instance, to external images of roads or street signs).  They do not allege that any

18   recording from Yeh's vehicle, even if taken and transmitted to Tesla, was disseminated among

19   Tesla employees.  And there is not a single fact that Tesla shared any camera recording from Yeh's

20

---

21   [4]      Am. Compl. ¶ 73 (Count I—alleging that Tesla "view[ed] and shar[ed] videos and images
22   of customers and their activities"); *id.* ¶ 77 (Count II—basing claim on "intentionally and
     surreptitiously recording, reviewing, sharing, and/or retaining" customer "activities through the
23   monitoring and recording activities described herein"); *id.* ¶ 82 (Count III—alleging that Tesla
     "knowingly used Plaintiffs' . . . images" without consent); *id.* ¶ 85 (Count IV—alleging fraudulent,
24   unlawful, and unfair practices based upon privacy violations and misrepresentations about privacy);
     *id.* ¶ 97 (same); *id.* ¶ 104 (Count VI—alleging unlawful storage and permitting access to video
25   recordings and images); ¶ 108 (Count VII—alleging breach of Privacy Policy because of alleged
     privacy violations through camera recordings); ¶ 114 (Count VIII—alleging that "system for
26   protecting the privacy of customers whose video and images were taken by Tesla cameras was
     ineffective or defective"); ¶ 119 (Count IX—alleging that Tesla made misrepresentations that data
27   collected from cameras "would be protected and remain private"); ¶¶ 125, 126 (Count X—alleging
     that vehicles had "defective camera control systems" due to "unauthorized access use, and leverage
28   of customer's private and biometric data"). ¶

1    vehicle with any third party.  Plaintiffs, in fact, acknowledge that their case rests upon nothing more

2    than speculation—that is, the "risk" of a "potential" privacy violation. (Am. Compl. ¶¶ 54, 74.)  In

3    short, the entire foundation of Plaintiffs' case lacks any supporting allegations.  *See, e.g.*, *Lopez v.*

4    *Apple, Inc.*, 519 F. Supp. 3d 672, 679, 681 (N.D. Cal. 2021) (dismissing lawsuit brought after

5    publication of *Guardian* article "reporting that Apple had intercepted and disclosed private

6    conversations without any user consent" through voice-activated "Siri" software because

7    "[p]laintiffs allege no facts to suggest that their own private communications were intercepted").

8    Indeed, Plaintiffs' own allegations foreclose their legal theory.  Yeh alleges that his privacy

9    concerns stem from the fact that he activated "Sentry Mode" for his vehicle's cameras.  (Am.

10   Compl. ¶ 52.)  But this data is ***not*** transmitted or uploaded to Tesla.  (Privacy Policy, ECF No. 32-

11   1, at 6.)  Plaintiffs allege no facts to show that Tesla ever had access to "Sentry Mode" or any other

12   recordings from Yeh's vehicle, much less shared them internally.[5]  Because Plaintiffs offer no facts

13   to support their core legal theory, the Amended Complaint should be dismissed.

14       **B.    All Claims (Counts I-X) Fail Because Neither Yeh Nor G.Y. Alleges That He**

15            **Suffered Any Cognizable And Particularized Injury.**

16   To have Article III standing, each Plaintiff must allege, among other things, that he

17   experienced an "injury in fact" that is "traceable" to Tesla's conduct.  *Spokeo, Inc. v. Robins*, 578

18   U.S. 330, 338 (2016), *as revised* (May 24, 2016).  To demonstrate an "injury in fact," Yeh and G.Y.

19   must show that they have "suffered 'an invasion of a legally protected interest' that is 'concrete and

20   particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Id.* at 339 (quoting *Lujan*

21   *v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).  Moreover, as an element of their claims, each

22   Plaintiff must allege facts to show that ***he*** suffered either an injury or actual damages. (Am. Compl.

23   ¶¶ 74, 79, 83, 94, 101, 105, 109, 117, 123, 128.)[6]  Critically, "[i]n the class action context, the

24   ───────────────

25   [5]    Tesla's Privacy Policy discloses that there are "two types of camera recordings that are
     eligible to be transmitted from your vehicle to Tesla:  Safety Event and Fleet Learning camera

26   recordings." (Privacy Policy, ECF No. 32-1, at 5.)  Yeh does not reference either recording in his
     Amended Complaint; indeed, Yeh does not allege that he experienced a Safety Event or opted into

27   Fleet Learning (or, if so, that any recording of his vehicle was used in any improper way).
     [6]    *See, e.g., Chapman v. Skype, Inc.*, 220 Cal. App. 4th 217, 230–31 (2013) (intentional

28   misrepresentation claim requires actual "damage"); *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 849

1    named plaintiff must show that []he personally has suffered an injury, not just that other members

2    of the putative class suffered the injury." *Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 846 (N.D.

3    Cal. 2012); *see also Beyer v. Symantec Corp.*, 2019 WL 935135, at *4 (N.D. Cal. Feb. 26, 2019).

4    Here, Plaintiffs' theory of actual injury is not just unclear—it is non-existent.

5          Even if Plaintiffs had alleged facts to show that Tesla collected and then internally shared

6    camera data from Yeh's vehicle (and they do not), they allege no facts to show that they incurred

7    any resulting injury.  While Yeh alleges that he and his wife "walk[ed] around in their garage in

8    various states of undress" (Am. Compl. ¶ 53), he does not allege they were recorded doing so or

9    that any camera data from his vehicle contains any sensitive images of his family—as opposed to

10   external images of roadways.  Plaintiffs' theory of harm is, by their own admission, "potential" and

11   speculative.  (*Id.* ¶ 74 (alleging they were "harmed by the potential . . . intrusion by Tesla").)  It is

12   a black-letter rule that standing does not exist based upon "'assumed *potential* invasions' of rights."

13   *Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 324–25 (1936) (emphasis added).  This rule

14   mandates dismissal.  *See, e.g.*, *Winzig v. Stockpile Invs., Inc.*, 2021 WL 4812956, at *1 (C.D. Cal.

15   July 2, 2021) (no standing where plaintiff alleges his data was "potentially affected" by breach).

16         Nor do Plaintiffs allege facts to show that Tesla ever disclosed any camera data from Yeh's

17   vehicle to any third party.  While Plaintiffs offer a few conclusory allegations that Tesla used

18   customers' "images" to "market its vehicles" (Am. Compl. ¶ 82), Plaintiffs do not offer a single

19   _____

20   (2008), *as modified* (Jan. 28, 2008) ("plaintiff must have suffered an 'injury in fact' and have 'lost
     money or property as a result of such unfair competition' to have standing to pursue either an

21   individual or a representative claim under the California unfair competition law"); *Meyer v. Sprint
     Spectrum L.P.*, 45 Cal. 4th 634, 641 (2009) ("in order to bring a CLRA action, not only must a

22   consumer be exposed to an unlawful practice, but some kind of damage must result"); *Mendoza v.
     City of Los Angeles*, 66 Cal. App. 4th 1333, 1339 (1998) (negligence claim requires proof of

23   "plaintiff's injury"); *Apollo Cap. Fund, LLC v. Roth Cap. Partners, LLC*, 158 Cal. App. 4th 226,
     243 (2007) (misrepresentation claims require "justifiable reliance on the misrepresentation" and

24   "resulting damage"); *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1061 (N.D. Cal. 2014)
     (intrusion upon seclusion claim requires some form of injury); *Aguilera v. Pirelli Armstrong Tire

25   Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000) ("actual damage" required for California breach of
     contract clam); *San Francisco Bay Area Rapid Transit Dist. v. Spencer*, 358 F. App'x 793, 795 (9th

26   Cir. 2009) ("unjust enrichment claim fails for want of a loss"); *Peterson v. Cellco P'ship*, 164 Cal.
     App. 4th 1583, 1594 (2008) ("actual injury" required to bring unjust enrichment claim); *Newcombe

27   v. Adolf Coors Co.*, 157 F.3d 686, 692 (9th Cir. 1998) ("resulting injury" required for statutory
     commercial misappropriation claim under Cal. Civ. Code § 3344).

28

fact to support them, much less show that Tesla used *their* images commercially. Courts regularly dismiss claims for lack of injury where, as here, there are no factual allegations that a company (with a relationship with the plaintiff) disclosed any personal information to third parties, even where such information is alleged to have been improperly collected. *See, e.g., Lopez*, 519 F. Supp. 3d at 681-82 (no cognizable injury despite *Guardian* article discussing recording of private conversations through "Siri" because article did not suggest that "all Apple's devices were subject to accidental [recording] triggers" and no facts to show any communications occurred privately and "were part of the 'small portion' of recordings sent to third party contractors"); *Yunker v. Pandora Media, Inc.*, 2013 WL 1282980, at *1, *3 (N.D. Cal. Mar. 26, 2013) (no standing based upon theory that plaintiff "consented to provide Pandora with PII based on the representations in the Privacy Policy that it would de-identify their PII and anonymize that data, when in fact it did not"); *In re Google, Inc. Privacy Policy Litig.*, 2012 WL 6738343, at *6 (N.D. Cal. Dec. 28, 2012) (no standing based upon Google's taking and use of personal information from customer without authorization, where no allegations plaintiffs' personal information was disseminated outside of Google); *Low v. LinkedIn Corp.*, 2011 WL 5509848, at *3, 6 (N.D. Cal. Nov. 11, 2011) (no standing where plaintiff did not allege highly personal information had been stolen and then exposed to public).

Plaintiffs also do not and cannot allege facts to show that they suffered any economic harm. G.Y., of course, did not experience any monetary loss. Although Yeh makes conclusory assertions that he "would not have purchased his Tesla vehicle, or would only have paid less for it, if he knew that its camera systems were capable of surreptitiously recording him and his family" and "could be accessed by Tesla employees" (Am. Compl. ¶ 57), Yeh offers no facts to support this theory. Yeh does not allege how or why his Tesla Model Y vehicle is worth less in the marketplace than what he paid for it. Nor does Yeh identify a single statement or omission about camera recordings that he considered when **purchasing** his Tesla vehicle. To the contrary, Tesla's Privacy Policy informed him that his vehicle comes with a camera system that records certain information automatically (in the event of a Safety Event), that no other camera recordings are transmitted to Telsa unless Plaintiff consents to data sharing, and that he can disable data sharing at any time. (Privacy Policy, ECF No. 32-1, at 1, 5, 10); *see, e.g., Lopez*, 519 F. Supp. 3d at 682 (rejecting

1   similar overpayment theory based upon alleged privacy violations from voice-activated technology

2   in phones); *Pirozzi*, 913 F. Supp. 2d at 847 (rejecting overpayment theory of harm in part because

3   plaintiff "fails to allege specifically which statements she found material to her decision to purchase

4   an Apple Device or App"); *Beyer*, 2019 WL 935135, at *4 (rejecting overpayment theory of harm

5   where no facts showing plaintiffs experienced problems with product); *Low*, 2011 WL 5509848, at

6   *4 ("unauthorized collection of personal information does not create an economic loss").

7          Lastly, Yeh offers the conclusory allegation that "if Tesla drivers want to [take steps] to

8   avoid future invasions of their privacy, the value of their Tesla vehicles would almost certainly

9   decrease." (Am. Compl. ¶ 47.) This conclusory speculation about a future decrease in market

10  value does not show that Yeh has suffered a particularized harm. *Low v. LinkedIn Corp.*, 900 F.

11  Supp. 2d 1010, 1028 (N.D. Cal 2012) ("Nominal damages, speculative harm, or threat of future

12  harm do not suffice to show legally cognizable injury"). It also ignores Tesla's Privacy Policy,

13  which allows customers who consented to sharing camera recordings with Tesla to opt-out of doing

14  so through the click of a button. (Privacy Policy, ECF No. 32-1, at 5-6.) Put simply, Plaintiffs'

15  theory of harm is entirely speculative, unsupported, and insufficient for Article III standing.

16         **C.      Plaintiffs' Request For Injunctive Relief Must Be Dismissed.**

17         Plaintiffs' claims for injunctive relief fare no better. (Am. Compl. ¶¶ 5, 129.) A party

18  seeking injunctive relief must allege "continuing, present adverse effects" stemming from the

19  defendant's actions; "[p]ast exposure to illegal conduct does not in itself show a present case or

20  controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Indeed, Plaintiffs must allege

21  facts to show a "real and immediate threat of repeated injury" by reason of Tesla's challenged

22  conduct. *Whitaker v. Ramon Bravo, Inc.*, 2021 WL 4133871, at *3 (N.D. Cal. Sept. 10, 2021)

23  (Spero, J.) (internal quotations omitted). "[I]t is insufficient for [Plaintiffs] to demonstrate only a

24  past injury." *San Diego Cnty. Gun Rts. Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996)); *see*

25  *also Moulton v. Gjerde*, 2020 WL 3078182, at *1 (N.D. Cal. June 10, 2020).

26         Plaintiffs seek injunctive relief in the form of preventing Tesla from "recording, viewing,

27  sharing, and profiting from videos and images . . . in violation of state law" and compelling the

28  "destruction of all personal data obtained . . . in violation of state law." (Am. Compl. ¶¶ 129(f)-

1    (i).)   Plaintiffs, however, allege no facts to suggest any immediate threat of injury.   Instead,

2    Plaintiffs allege that any videos were only shared "[b]etween 2019 and 2022." (*Id.* ¶ 34 ("Between

3    2019 and 2022, Tesla employees . . . viewed and shared sensitive images . . . recorded by Tesla

4    customers' vehicle cameras").)   The *Reuters* article upon which Plaintiff bases his entire case makes

5    clear it has ***no*** information about whether any such purported conduct "continues today." (*Reuters*

6    Article, Ex. A to Schrader Decl., at 3.)   This defeats any request for injunctive relief.   *See, e.g.,*

7    *Moulton*, 2020 WL 3078182, at *1 (dismissing request for injunctive relief because "complaint is

8    silent as to whether, at the time it was filed, plaintiff was still unable to access defendant's Facebook

9    page" and refusing to infer that allegedly improper practice is still occurring).

10        Plaintiffs also face no imminent harm necessary for injunctive relief because Yeh can

11   resolve any purported concerns with the push of a button or by contacting Tesla.   As the Privacy

12   Policy makes clear (and Plaintiffs do not dispute), only limited camera recordings are transmitted

13   to Tesla, unless a party consents to data sharing, and Yeh can enable or disable data sharing at any

14   time. (Privacy Policy, ECF No. 32-1, at 4-5.)   Moreover, "Sentry Mode" data is not transmitted to

15   Tesla, and, in any event, Yeh has "deactivated" this feature, so it creates no risk of future harm.

16   (Am. Compl. ¶ 52.)   Yeh also can have any personal data "restricted or deleted" by merely sending

17   Tesla an email or updating his Tesla account.   (Privacy Policy, ECF No. 32-1, at 10.)

18        Lastly, Plaintiffs appear to seek to enjoin Tesla from "making additional misrepresentations

19   and omissions regarding its privacy policies and practices in marketing its vehicles." (Am. Compl.

20   ¶ 129(e).)   But Plaintiffs do not identify any misrepresentations or omissions that they received.

21   Nor does Yeh allege that he intends to purchase another Tesla vehicle in the future, much less that

22   he faces the threat of immediate harm from any Tesla marketing.   *See, e.g., Davidson v. Kimberly-*

23   *Clark Corp.*, 889 F.3d 956, 970-71 (9th Cir. 2018) (finding standing to pursue injunctive relief

24   where plaintiff identifies alleged false marketing on label of household product at time of purchase,

25   alleges she intends to purchase same baby wipe product in future, and is continually presented with

26   alleged false marketing); *Forrett v. Gourmet Nut, Inc.*, 2022 WL 6768217, at *5 (N.D. Cal. Oct.

27   11, 2022) (dismissing request for injunctive relief where no allegation plaintiff will "purchase the

28   Product in the future").   There is no basis for injunctive relief.

**D.**   **Plaintiffs' Individual Claims Fail For Additional Reasons.**

**1.**   **Plaintiffs' Intrusion Upon Seclusion (Count I) And Constitutional Right To Privacy (Count II) Claims Are Fundamentally Flawed.**

To state a claim for the violation of California's constitutional right to privacy, each Plaintiff "must allege facts showing: (1) a specific, legally protected privacy interest; (2) a reasonable expectation of privacy; and (3) conduct that is 'sufficiently serious in [its] nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right.'"  *Yunker*, 2013 WL 1282980, at *14 (quoting *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1 (1994)).  The test for an "intrusion upon seclusion" claim is similar, and courts "consider them together."  *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020); *see also Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022).  California law sets a very "high bar" to show conduct that is so "highly offensive" that it constitutes an "egregious breach of the social norms."  *Low*, 900 F. Supp. 2d at 1025 (quoting *Hill*, 7 Cal. 4th at 37); *see also In Re Facebook, Inc.,* 956 F.3d at 601.  There must be a "serious invasion" of privacy.  *Id.*

Applying these principles, courts repeatedly have held that "[e]ven disclosure of personal information, including social security numbers, does not constitute an 'egregious breach of the social norms' to establish an invasion of privacy claim."  *Low*, 900 F. Supp. 2d at 1025; *see Reade v. New York Times Co.*, 2022 WL 2396083, at *7 (E.D. Cal. July 1, 2022) (dismissing privacy violation claim based upon publication of photograph with social security number), *appeal dismissed*, 2022 WL 18493987 (9th Cir. Sept. 13, 2022); *White v. Soc. Sec. Admin.*, 111 F. Supp. 3d 1041, 1053 (N.D. Cal. 2015) (dismissing privacy claims where plaintiff became a victim of identity theft after defendant's employee improperly obtained personal information and photocopied identification documents, because no facts showing that defendant distributed information); *Yunker*, 2013 WL 1282980, at *15 (holding that "obtain[ing]" plaintiff's personal identifying information and providing "that information to advertising libraries for marketing purposes, in violation of the terms of Pandora's Privacy Policy" is not "an egregious breach of social norms" as a matter of law); *Low*, 900 F. Supp. 2d at 1025 (dismissing constitutional invasion of privacy claim and intrusion on seclusion claim where defendant improperly "disclosed to third

1    parties the LinkedIn ID and the URL of the LinkedIn profile page that the user viewed (which in

2    the aggregate discloses a user's browsing history among LinkedIn profiles)"); *In re iPhone*

3    *Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (dismissing constitutional privacy

4    claim based upon disclosure to third parties of unique device identifier, personal data, and

5    geolocation information of plaintiffs' iDevices because conduct was not an "egregious breach of

6    social norms"); *Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1127–28 (N.D. Cal. 2008), *aff'd*, 380 F.

7    App'x 689 (9th Cir. 2010) (theft of laptop computers from Gap's vendor containing personal

8    information, including social security numbers, of 800,000 job applicants did not constitute

9    egregious breach of privacy sufficient to state claim).

10       Plaintiffs do not come close to meeting this high standard.  As an initial matter, Plaintiffs

11   do not allege a privacy violation.  To do so, Plaintiffs must allege the "dissemination or misuse of

12   sensitive and confidential information" or an intrusion into the "making [of] intimate decisions or

13   conducting personal activities."  *Hill*, 7 Cal. 4th at 35.  Plaintiffs, however, do not allege that Tesla

14   cameras recorded and transmitted any images of them.  Nor do Plaintiffs allege that Tesla

15   improperly obtained or shared any data from ***their*** vehicle.  At most, Yeh alleges that he activated

16   "Sentry Mode" on his vehicle (Am. Compl. ¶ 52), but this data is not transmitted to Tesla.  Nor

17   does Yeh allege that there was ever a "Sentry Mode" recording from his vehicle, given that such

18   recordings only occur if there is some potentially "suspicious activity." (*Id.* ¶ 30); *see, e.g.*, *Lopez*,

19   519 F. Supp. 3d at 691 (applying principle to dismiss privacy claims because "Plaintiffs have not

20   alleged specific circumstances to show that Apple intercepted their confidential communications").

21       Moreover, even those allegations would be legally insufficient to show "highly offensive"

22   conduct and an "egregious breach of social norms."  Yeh purchased a Tesla vehicle with cameras

23   and understood that some camera data might be captured and used by Tesla, such as for Safety

24   Events.  (Privacy Policy, ECF No. 32-1, at 5; Am. Compl. ¶¶ 12, 14 (alleging that Tesla discloses

25   that it collects data from vehicles that will be used to enhance development of products and

26   services).)  Plaintiffs do not and cannot allege any facts to show that Tesla shared any camera data

27   from their vehicle with a ***third party***.  Nor do Plaintiffs allege that any recording from their Tesla

28

vehicle contained highly sensitive or embarrassing personal information or any likelihood of serious harm to either Yeh or G.Y.[7]

Given that a company's alleged unauthorized disclosure of a customer's personal information to a third party (without more) does not give rise to a constitutional violation or an intrusion upon seclusion claim under California law, Plaintiffs' allegations here are woefully insufficient.  The alleged ***internal*** sharing by Tesla employees of unidentified short clips of Tesla camera recordings—with ***no*** alleged connection to Plaintiffs' vehicle—does not state a claim.  *See, e.g., Del Llano v. Vivint Solar Inc.*, 2018 WL 656094, at \*6 (S.D. Cal. Feb. 1, 2018) (dismissing invasion of privacy claim where plaintiff "has not sufficiently asserted that his private information was disclosed" or pled facts to show "that the disclosure was egregious"); *Bongiovanni v. State Farm Fin. Servs., F.S.B.*, 2015 WL 13916261, at \*9 (C.D. Cal. July 22, 2015) (dismissing invasion of privacy claim where plaintiff alleges her "home address and some inquiry about 'breast cancer' was shared with a few other people whose relationship to Plaintiff is not clear.").[8]

## 2.    Plaintiffs' Statutory Claim For A Violation Of The Right To Publicity Under Cal. Civ. Code § 3344(a) (Count III) Is Frivolous.

Section 3344(a) provides that "[a]ny person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner . . .  for purposes of advertising or selling . . . without such person's prior consent . . . shall be liable for any damages sustained by the person." Cal. Civ. Code § 3344(a).  To state a claim, each Plaintiff must allege the elements of a common law misappropriation claim:  (1) Tesla's use of each Plaintiff's identity; (2) the appropriation of

---

[7]   Plaintiffs' Amended Complaint still does not allege any facts to support any of the relevant factors, including "the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive." *In re Facebook, Inc.*, 956 F.3d at 606.

[8]   Plaintiff also cannot seek damages for an alleged violation of California's constitutional right to privacy.  *See, e.g., Moore v. Rodriguez*, 2021 WL 2222590, at \*20 (S.D. Cal. June 2, 2021) (quoting *Clausing v. San Francisco Unified Sch. Dist.*, 221 Cal. App. 3d 1224, 1237 (1990)) ("California's 'constitutional provision protecting the right of privacy . . . supports a cause of action for an injunction,' but it does not confer on a litigant a private right of action for damages"); *Shorter v. Cnty. of Los Angeles*, 2022 WL 3636687, at \*9 (C.D. Cal. July 12, 2022) (same), *report and recommendation adopted,* 2022 WL 3636333 (C.D. Cal. Aug. 23, 2022); *Blanco v. Cnty. of Kings*, 142 F. Supp. 3d 986, 1001 (E.D. Cal. 2015) (dismissing claim because constitutional right to privacy "does not give rise to a cause of action for money damages").

1    Plaintiff's name or likeness to Tesla's advantage; (3) lack of consent; and (4) resulting injury.

2    *Newcombe*, 157 F.3d at 692 (citing Cal. Civ. Code § 3344(a)).  Each Plaintiff also must allege three

3    additional elements:  (5) Tesla's "knowing" use of Plaintiff's name or likeness; (6) for purposes of

4    advertising; and (7) a direct connection between the use and the commercial purpose.  *Id.*; *see*

5    *Havensight Cap. LLC v. Nike, Inc.*, 2014 WL 12613382, at *2 (C.D. Cal. Nov. 19, 2014).

6            This claim must be dismissed for the simple reason that Plaintiffs do not allege any facts to

7    show that Tesla took any images of Yeh or his son, much less used those images to advertise or sell

8    Tesla products.  There is not a single fact to show commercial misappropriation.

9            **3.      Plaintiffs' Equitable Claims (Counts IV, V, And X) Fail Because They**

10                    **Allege An Adequate Remedy At Law.**

11           Plaintiffs' UCL and unjust enrichment counts provide only for equitable relief.[9]  The CLRA

12   claim is also equitable, to the extent Yeh seeks restitution.  Under Ninth Circuit law, a plaintiff

13   cannot seek equitable relief in federal court where legal relief in the form of compensatory damages

14   would make the plaintiff whole.  *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th

15   Cir. 2020).  In *Sonner*, the Ninth Court dismissed plaintiff's UCL and CLRA claims for equitable

16   relief since there was no showing that the plaintiff "lack[ed] an adequate remedy at law."  *Id*.  The

17   Court reached this decision even though no legal claims remained in the action.  *Id.* at 838.

18           Following *Sonner*, this Court and others routinely dismiss claims for equitable relief where

19   damages would be an adequate remedy to address the plaintiff's alleged harm, including from

20   allegedly defective vehicles and other products.  *See, e.g., Freund v. HP, Inc.*, 2023 WL 187506,

21   at *6 (N.D. Cal. Jan. 13, 2023) (dismissing UCL, unjust enrichment, and other statutory claims for

22   equitable restitution because plaintiffs pled legal claims for damages and do not allege why they

23   are inadequate); *Hamm v. Mercedes-Benz USA, LLC*, 2022 WL 913192, at *2 (N.D. Cal. Mar. 29,

24   2022) (applying rule to dismiss UCL and CLRA claims for equitable relief); *Sharma v. Volkswagen*

25   *AG*, 524 F. Supp. 3d 891, 908-09 (N.D. Cal. 2021) (dismissing UCL, CLRA equitable relief, and

26

27   _____

     [9]      The "UCL provides only equitable remedies."  *Mish v. TForce Freight, Inc.*, 2021 WL
28   4592124, at *5 (N.D. Cal. Oct. 6, 2021).  Unjust enrichment, too, "is an equitable rather than a
     legal" doctrine.  *McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc.*, 339 F.3d 1087,
     1091 (9th Cir. 2003).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT TESLA INC.'S MOTION TO DISMISS AND STRIKE CLASS ALLEGATIONS

1   unjust enrichment claims in light of CLRA damages claim stemming from brake sensor defect);

2   *Watkins v. MGA Ent., Inc.*, 550 F. Supp. 3d 815, 837 (N.D. Cal. 2021) (Spero, J.) (dismissing UCL

3   and CLRA claims because "Plaintiffs have not alleged any facts establishing that their remedies at

4   law are inadequate"); *Gibson v. Jaguar Land Rover N. Am., LLC*, 2020 WL 5492990, at *3-4 (C.D.

5   Cal. Sept. 9, 2020) (dismissing UCL and CLRA equitable relief claims in light of damages remedy).

6   This Court also has recognized that "[w]hile in *Sonner* this issue arose at a late stage of the case,

7   numerous courts in the wake of that decision have concluded that its reasoning applies at the

8   pleading stage as well." *Watkins*, 550 F. Supp. 3d at 837.

9           Here, Plaintiffs do not even attempt to allege that they lack an adequate remedy at law.  Nor

10   can they, given that each Plaintiffs have brought numerous legal claims.  For instance, both

11   Plaintiffs seek "statutory . . . actual, compensatory, and punitive damages" for their legal claims

12   (Am. Compl. ¶ 129(c)), including their statutory right to publicity and negligence claims.  (*Id.* ¶¶

13   83, 105.)  Yeh also seeks "damages" for his breach of contract and misrepresentation claims.  (*Id.*

14   ¶¶ 109, 117, 123.)  In fact, Yeh claims that as a result of Tesla's conduct, he has suffered economic

15   losses "in the amount of the Tesla vehicle[']s purchase or lease price[]."  (*Id.* ¶¶ 117, 123.)

16   Plaintiffs make no showing that this relief would not adequately address any purported injuries,

17   even if they had been alleged and could be proven.  Accordingly, Plaintiffs' equitable relief claims

18   fail.  *See Sharma*, 524 F. Supp. 3d at 909 (applying rule to dismiss CLRA, UCL, and unjust

19   enrichment claims).

20          **4.      Yeh's Intentional And Negligent Misrepresentation Claims (Counts**

21              **VIII-IX) Must Be Dismissed For Several Reasons.**

22          Under California law, the "essential elements of a count for intentional misrepresentation

23   are (1) a misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance, (4) actual and

24   justifiable reliance, and (5) resulting damage." *Chapman*, 220 Cal. App. 4th at 230–31 (citing

25   *Lazar v. Superior Ct.*, 12 Cal. 4th 631, 638 (1996)).  The elements of a negligent misrepresentation

26   claim "are the same except that it does not require knowledge of falsity but instead requires a

27   misrepresentation of fact by a person who has no reasonable grounds for believing it to be true."

28   *Chapman*, 220 Cal. App. 4th at 231.  For both claims, "the plaintiff must have acted in reliance

1   upon the truth of the representation and . . . must have been justified in relying upon the

2   representation." *Christiansen v. Roddy*, 186 Cal. App. 3d 780, 786 (1986); *see also Holden*, 2020

3   WL 6822914, at *11 (dismissing misrepresentation-based claims because "Plaintiffs have not

4   alleged any justifiable reliance on the allegedly deceptive emails that resulted in actual damage.").

5          Here, Yeh's claims are based upon allegedly "false information" provided "when

6   [customers] were making their purchase or lease decisions regarding Tesla vehicles." (Am. Compl.

7   ¶ 113; *see also id.* ¶¶ 111, 120-22.) Such claims sound in fraud and must satisfy Rule 9(b). *Holden*,

8   2020 WL 6822914, at *8 (applying Rule 9(b) to negligent misrepresentation and intentional

9   misrepresentation claims); *Najarian Holdings LLC v. Corevest Am. Fin. Lender LLC*, 2020 WL

10  5993225, at *5 (N.D. Cal. Oct. 9, 2020) (same as to negligent misrepresentation claim).

11         Yeh's allegations do not satisfy Rule 9(b) or otherwise support a fraud-based claim.

12         ***First***, Yeh does not allege any specific statements that he received and then relied upon

13  when purchasing his Tesla vehicle, including what materials he looked at, when he did so, or even

14  what he relied upon in making his purchase. Instead, Yeh offers a single allegation about a single

15  post-purchase statement he looked at on his vehicle's display screen "***[a]fter*** taking delivery of the

16  vehicle." (Am. Compl. ¶ 52 (emphasis added).) He could not have relied upon that statement when

17  purchasing his vehicle. Nor was that statement false. As described above, there are no facts to

18  show that any image captured through the "Sentry Mode" feature of his vehicle was ever

19  transmitted to Tesla, rather than being stored locally on his vehicle's data system. Accordingly, his

20  claims fail. *See, e.g., Yarber v. Kia Am., Inc.*, 2023 WL 2654186, at *4 (N.D. Cal. Mar. 27, 2023)

21  (dismissing fraud claim because "Plaintiff's allegations on this point are vague recitations of the

22  requirements for pleading reliance in a vehicle defect case" and did not allege "what pre-purchase

23  materials she reviewed"); *Phillips v. Apple Inc.*, 2016 WL 1579693, at *7 (N.D. Cal. Apr. 19, 2016)

24  (dismissing misrepresentation and other fraud-based claims because "Plaintiffs do not assert that

25  they read or relied on this statement when choosing to download iOS 9 or use Wi–Fi Assist.");

26  *Yastrab v. Apple Inc.*, 2015 WL 1307163, at *4, 7 (N.D. Cal. Mar. 23, 2015) (dismissing fraud-

27  based claims because "misrepresentation allegations . . . do not describe even one specific item that

28  Plaintiff allegedly viewed or where and when he viewed it" or facts to show reliance).

Yeh alleges that he "reasonably and justifiably relied" on Tesla's misrepresentations "when purchasing or leasing Tesla vehicles" (Am. Compl. ¶¶ 116; *see also id.* ¶ 122), but Yeh does not identify any such misrepresentation that he saw or relied upon.  Yeh's assertion is nothing more than a formulaic recitation of legal elements—which fails to state a claim.  *See, e.g.*, *Yarber*, 2023 WL 2654186, at \*4 (dismissing fraud claims because "allegations on this point are vague recitations of the requirements for pleading reliance in a vehicle defect case"); *In re Apple Processor Litig.*, 2022 WL 2064975, at \*10 (N.D. Cal. June 8, 2022) (dismissing fraud-based claims despite allegation that "had [plaintiffs] known of concealed facts, they would not have purchased the iDevices or would have paid less for the iDevices" because plaintiffs do not allege they "relied on any such representations when purchasing" their devices).[10]

**Second**, under California law, a tort claim cannot merely duplicate a breach of contract claim.  *See Snapkeys, Ltd. v. Google LLC*, 442 F. Supp. 3d 1196, 1211 (N.D. Cal. 2020) (dismissing tort claim because allegation that defendant induced disclosure of confidential information through fraud is "exact allegation at the heart of [plaintiff's] breach of contract claim.")  The rule is that where "the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated."  *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990).

Here, Yeh's misrepresentation claims allege that Tesla told customers that their "privacy is protected" and that the "data and information obtained through Tesla vehicles' cameras would be protected and remain private." (Am. Compl. ¶¶ 111, 119.)  This is the exact same factual predicate for his breach of contract claim—that Tesla supposedly breached its Privacy Policy because it did not protect privacy or limit the use of data captured by Tesla vehicle cameras. (*Id.* ¶ 108.)  For both sets of claims, Yeh seeks damages. (*Id.* ¶¶ 109, 117, 123.)  Because Yeh's misrepresentation claims duplicate his breach of contract claim, they should be dismissed.

---

[10]     Yeh also makes references to "misleading representations on Tesla's website" (Am. Compl. ¶¶ 115, 121), but does not identify particular statements on the website that Yeh viewed prior to ordering his vehicle or why they were false as to him.  *See Damner v. Facebook Inc.*, 2020 WL 7862706, at \*8 (N.D. Cal. Dec. 31, 2020) (Spero, J.) (dismissing claim on this ground).

DEFENDANT TESLA INC.'S MOTION TO DISMISS AND STRIKE CLASS ALLEGATIONS

1    **5.      Plaintiffs' Negligence (Count VI) And Negligent Misrepresentation**

2    **(Count VIII) Claims Are Barred By The Economic Loss Rule.**

3    As a general rule, "purely economic losses are not recoverable in tort."  *In re Zoom Video*

4    *Commc'ns Inc. Priv. Litig.*, 525 F. Supp. 3d 1017, 1038 (N.D. Cal. 2021) (internal quotations

5    omitted); *see also Seely v. White Motor Co.*, 63 Cal. 2d 9, 18 (1965).  The economic loss rule

6    "requires a purchaser to recover in contract for purely economic loss due to disappointed

7    expectations unless he can demonstrate harm above and beyond the broken contractual promise."

8    *Robinson Helicopter Co., v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004).  This Court has recognized

9    that "[t]ort damages have been permitted in contract cases" under California law only in limited

10   situations, such as "where a breach of duty directly causes physical injury, for breach of the

11   covenant of good faith and fair dealing in insurance contracts, for wrongful discharge in violation

12   of public policy, and where the contract was fraudulently induced."  *Missud v. Oakland Coliseum*

13   *Joint Venture*, 2013 WL 812428, at *20 (N.D. Cal. Mar. 5, 2013) (Spero, J.).

14   Here, Plaintiffs' negligence claims seek damages based upon the conclusory assertion that

15   Tesla transmitted, stored, and permitted access to vehicle camera recordings and made false

16   promises that customer privacy is protected.  (Am. Compl. ¶¶ 104, 111.)  But apart from lacking

17   any factual support, these same allegations form the heart of Plaintiffs' breach of contract claim

18   (*id.* ¶¶ 107-08), and Plaintiffs do not allege any harm beyond what is sought for the contact claim.

19   (*Compare id.* ¶¶ 105, 117 *with* ¶ 109.)  Thus, the economic loss rule bars their negligence claims.

20   *See, e.g.*, *Costa v. Reliance Vitamin Co.*, 2023 WL 2989039, at *6 (N.D. Cal. Apr. 18, 2023)

21   (economic loss rule bars negligent misrepresentation claim because that "claim and injury arise

22   from the underlying 'contract'—the purchase of the allegedly deceptive product"); *Sinatro v. Mrs.*

23   *Gooch's Nat. Food Markets, Inc.*, 2023 WL 2324291, at *15 (N.D. Cal. Feb. 16, 2023) (same);

24   *Freund*, 2023 WL 187506, at *4 (same); *In re iPhone Application Litig.*, 844 F. Supp. 2d at 1064

25   (dismissing negligence claim because "[p]urely economic damages to a plaintiff which stem from

26   disappointed expectations from a commercial transaction must be addressed through contract law").

27   **6.      Plaintiffs' UCL And CLRA Claims (Counts IV And V) Are Flawed.**

28   Plaintiffs' UCL claims and Yeh's CLRA claim likewise fail.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

20

DEFENDANT TESLA INC.'S MOTION TO DISMISS AND STRIKE CLASS ALLEGATIONS

1    **First**, the UCL and CLRA claims are grounded in fraud, based upon alleged

2    misrepresentations by Tesla about its vehicles.  (Am. Compl. ¶¶ 86-90 (basing UCL claim on

3    fraudulent and deceptive "acts, omissions, misrepresentations, practices, and non-disclosures"); *id.*

4    ¶¶ 96-98 (basing CLRA claim on "false and misleading statements" and "deceptive[]"

5    advertising).)  Plaintiffs' claims therefore must satisfy the heightened pleading standards of Rule

6    9(b), *see Kearns v. Ford Motor Co*., 567 F.3d 1120, 1125 (9th Cir. 2009), including "the who, what,

7    when, where, and how" of the allegedly fraudulent conduct.  *Cooper v. Pickett*, 137 F.3d 616, 627

8    (9th Cir. 1997).  In addition, because Plaintiffs' claims "under the UCL and the CLRA sound in

9    fraud, [they] must allege specific facts showing that [they] relied on the alleged misrepresentations

10   or omissions."  *Watkins*, 550 F. Supp. 3d at 833; *Tabler v. Panera LLC*, 2020 WL 3544988, at *6

11   (N.D. Cal. June 30, 2020) ("rule applies regardless of whether the statements at issue are misleading

12   because they are affirmative misrepresentations or because they contain material omissions").[11]

13   Here, apart from legal conclusions, Plaintiffs do not identify a single false statement or

14   omission forming the basis for their UCL and CLRA claims.  (Am. Compl. ¶¶ 84-101 (failing to

15   identify a single misrepresentation of fact).)  Since he had not yet been born when Yeh purchased

16   his vehicle (*id.* ¶ 50)*,* G.Y. could not have relied upon any Tesla statement.  Likewise, Yeh does

17   not identify what materials he reviewed when purchasing his vehicle; what Tesla statement, if any,

18   he relied upon at that time; when he did so; or why that statement was false as to him.  Yeh does

19   not even identify when and where, if at all, he or any member of his family was supposedly recorded

20   by his vehicle's cameras.  Yeh merely alleges that he "believed" Tesla "would be more sensitive to

21   privacy and data concerns than more traditional car manufacturers."  (*Id.* ¶ 51.)  This naked

22   subjective belief does not state a claim, much less satisfy Rule 9(b).  *See, e.g., Watkins*, 550 F.

23   Supp. 3d at 834 (dismissing claims because "Plaintiffs have not alleged with particularity the

24   misrepresentations and omissions that are the basis for its UCL and CLRA claims" or reliance on

25   them); *Stark v. Patreon, Inc.*, 2023 WL 2090979, at *15 (N.D. Cal. Feb. 17, 2023) (Spero, J.)

26

---

27   [11]    This Court has held that "under any prong, a UCL claim that is based in fraud must be supported by allegations of reliance in order to properly be pled."  *McNeary-Calloway v. JP Morgan Chase Bank, N.A.*, 863 F. Supp. 2d 928, 959 (N.D. Cal. 2012) (Spero, J.); *Watkins*, 550 F. Supp. 3d at 833–34 (same).

28

DEFENDANT TESLA INC.'S MOTION TO DISMISS AND STRIKE CLASS ALLEGATIONS

(dismissing CLRA and UCL claims due to misrepresentations in privacy policy because "Plaintiffs have not alleged either that they reviewed the terms of use . . . [or] relied on the potentially misleading statements contained therein"); *Phillips*, 2016 WL 1579693, at \*7 (same); *In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 982-85 (N.D. Cal. 2014) (same).[12]

**Second**, to bring a UCL claim or a CLRA claim for damages, each Plaintiff must allege that he "suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204; *see also* Cal. Civ. Code § 1780(a) (CLRA claim requires "damage"). This requires "some form of economic injury." *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 323 (2011). As set forth above, G.Y. has incurred no economic injury. Likewise, Yeh does not allege facts to show that he incurred any loss of money or property. Any camera recordings by Tesla did not cause any economic harm to Yeh, and he does not allege facts to show that his vehicle is worth less than what he paid for it. Thus, Plaintiffs' UCL and CLRA claims fail.

### 7.   There Is No Basis For The Unjust Enrichment Claims (Count X).

In addition to requiring dismissal under *Sonner* (and the other reasons stated above), Plaintiffs' unjust enrichment claims fail for three additional reasons.

**First**, under California law, "there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015); *De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 870 (2018) ("Unjust enrichment is not a cause of action." (internal citations omitted)). This alone warrants dismissal. *See Low*, 900 F. Supp. 2d at 1031.

**Second**, even if the Court were to construe Plaintiffs' claims as one for restitution, their theory is wholly unsupported. Plaintiffs make the conclusory assertion that Tesla obtained "revenue" from the use of "customers' and others' privacy" data (Am. Compl. ¶¶ 126, 127), yet offer no supporting facts. Nor do they allege that Tesla received any money from any camera recording from **their** Tesla vehicle. It did not. There is nothing for Tesla to pay back.

---

[12]    In addition, Plaintiff's "unlawful" UCL claim fails because Plaintiff cannot rely upon a violation of common law theories, *see, e.g., Stearns v. Select Comfort Retail Corp.*, 2009 WL 1635931, at \*16 (N.D. Cal. June 5, 2009), and, as set forth above, the California constitutional right to privacy and CLRA claims fail as a matter of law.

DEFENDANT TESLA INC.'S MOTION TO DISMISS AND STRIKE CLASS ALLEGATIONS

Yeh also alleges that he conveyed a benefit on Tesla by purchasing his vehicle (*id.* ¶ 125), but Yeh does not allege facts to show why it would be inequitable for Tesla to keep what Yeh paid for his vehicle.  Yeh ordered a Model Y vehicle with a suite of cameras used for a host of advanced driver assistance and safety features, including Autopilot, and he received that vehicle.

**Lastly**, this Court and the Ninth Circuit have recognized that "[a]n action based on quasi-contract cannot lie where a valid express contract covering the same subject matter exists between the parties." *Shuman v. SquareTrade Inc.*, 2020 WL 7458001, at *7 (N.D. Cal. Dec. 18, 2020) (Spero, J.) (internal quotations omitted)); *Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996) ("unjust enrichment is an action in quasi-contract, which does not lie when an enforceable, binding agreement exists defining the rights of the parties").  That is the case here. Yeh alleges that the Privacy Policy is a binding contract addressing the very subject matter (*i.e.*, the collection, storage, and use of camera data) that forms the basis for his unjust enrichment claim. (*Compare* Am. Compl. ¶ 108 (breach of contract) *with* ¶¶ 125-126 (unjust enrichment).)  Thus, Yeh's claim must be dismissed.  *See Freund*, 2023 WL 187506, at *6 (applying rule).

### 8.   Yeh Does Not State A Breach Of Contract Claim (Count VII).

Only Yeh asserts a breach of contract claim.  This claim fails for two additional reasons.

**First**, Yeh predicates his contract claim on an alleged breach of the Privacy Policy, but he still does not address the specific content of the Privacy Policy or identify any specific provision that Tesla supposedly breached with respect to him.  Instead, the Amended Complaint contains a few vague references to cherry-picked language about protecting customer privacy without any page citations or context.  (Am. Compl. ¶ 108.)  This is insufficient.  *See, e.g., Damner*, 2020 WL 7862706, at *7 ("Plaintiff fails to state a viable claim for breach of contract, however, because he does not point to any specific provision that was breached.").

Nor has Yeh pled any breach.  Yeh states that Tesla "did not limit [the use of] data captured by these cameras, as it promised in the contract" (Am. Compl. ¶ 108), but Yeh does not allege any facts to show that Tesla received *any* data from *his* cameras.  To the extent any information was collected by Tesla (such as for Security Event Recordings), Yeh does not allege that its use was not limited as set forth in the Privacy Policy.  For this reason alone, the claim should be dismissed.

**Second**, "[u]nder California law, a breach of contract claim requires a showing of appreciable and actual damage." *Aguilera*, 223 F.3d at 1015.  Courts "have found damages based on allegations of [the improper] collection of personal information [] insufficient to state a claim for breach of contract." *Yunker*, 2013 WL 1282980, at *13 (dismissing breach of contract claim because plaintiff "fails [to] allege actual and appreciable damage based on the collection and dissemination of his PII [personally identifiable information]" by Pandora App); *Low*, 900 F. Supp. 2d at 1028 (dismissing breach of contract claim because "unauthorized collection of personal information does not create an economic loss"); *In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 717 (N.D. Cal. 2011), *aff'd*, 572 F. App'x 494 (9th Cir. 2014) (same).

Yeh's claim is even more deficient here.  Even if Yeh could allege a breach of the Privacy Policy by the unauthorized collection or use of any images captured by his vehicle's cameras (and he cannot), he does not allege facts showing that he or his family appear in those images or that they contain any personal and sensitive information.  Nor does Yeh allege facts showing that he experienced any appreciable and actual damage from such conduct.  He did not.

## IV.    THE COURT SHOULD STRIKE THE CLASS ALLEGATIONS

Under Rule 23(d)(1)(d) and Rule 12(f), "this Court has authority to strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained." *Hovsepian v. Apple, Inc.*, 2009 WL 5069144, at *2 (N.D. Cal. Dec. 17, 2009); *see* Fed. R. Civ. P. 23(d)(1)(D) (court may require "pleadings be amended to eliminate allegations about representation of absent persons"); Fed. R. Civ. P. 12(f) (court may strike "immaterial" or "impertinent" matter). This Court has held that while motions to strike class allegations are disfavored, it is appropriate to do so "where i[t] is apparent from the pleadings that a class cannot be maintained." *Sutcliffe v. Wells Fargo Bank, N.A.*, 2012 WL 4835325, at *4 (N.D. Cal. Oct. 9, 2012) (Spero, J.); *see Pascal v. Concentra, Inc.*, 2020 WL 4923974, at *3 (N.D. Cal. Aug. 21, 2020) (Spero, J.) (same).

No class can be certified without a named plaintiff who is an "adequate" class representative capable of "fairly and adequately" protecting the interests of the class as a whole.  Fed. R. Civ. P. 23(a)(4).  Neither Plaintiff is an adequate class representative.  As set forth in Tesla's Motion to Compel Arbitration (ECF No. 38), Yeh cannot be a representative of any putative class because he

1   agreed to arbitrate his claims against Tesla and not to participate in any class action.  G.Y.'s claims

2   also must be arbitrated on an individual, non-class basis.  (*Id.*)  For this reason alone, the class

3   allegations must be stricken.

4          On top of this threshold problem, G.Y. is not an adequate class representative for additional

5   reasons.  At a minimum, "[a] named plaintiff must be a member of the class she seeks to represent."

6   *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1007 (9th Cir. 2018).  G.Y. seeks to represent a class

7   of "all persons in the United States[] whose images were captured by Tesla Vehicle cameras at any

8   time during the Class Period."  (Am. Compl. ¶ 61.)  But there is not a single fact to show that G.Y.'s

9   image was ever captured on any camera recording.  Thus, as alleged, G.Y. is ***not*** a member of the

10  only proposed class he seeks to represent.  *See, e.g.*, *Fenaroli v. Stickleman*, 2016 WL 11745085,

11  at *2 (C.D. Cal. May 12, 2016) (striking class allegations because "Plaintiff is not a member of the

12  damages class alleged in the SAC").[13]

13         It is also a long-standing rule that a "party who is not familiar with the basic elements of

14  [his] claim is not considered to be an adequate representative for the class because there is no sense

15  that there is an actual party behind counsel's prosecution of the action."  *Burkhalter Travel Agency*

16  *v. MacFarms Int'l, Inc.*, 141 F.R.D. 144, 153 (N.D. Cal. 1991).  This rule bars a one-year-old infant,

17  who necessarily lacks the capacity to understand this case, from being a class representative.  *See*

18  *cf. San Pedro-Salcedo v. Haagen-Dazs Shoppe Co., Inc.*, 2019 WL 6493978, at *5 (N.D. Cal. Dec.

19  3, 2019) (holding adult class representative inadequate due to "lack of knowledge" of "factual

20  allegations" and "claims").  Because G.Y. cannot "fairly and adequately protect the interests" of

21  any class, much less the broad and indetermineable class he apparently seeks to certify, *see* Fed. R.

22  Civ. P. 23(a)(4), G.Y.'s class allegations must be stricken.

23  **V.    CONCLUSION**

24         The Court should compel Plaintiffs to arbitrate their claims for the reasons set forth in

25  Tesla's Motion to Compel Arbitration.  In the alternative, the Court should dismiss Plaintiffs'

26  Amended Complaint and strike the class allegations for the reasons set forth above.

27  _____

28  [13]    Yeh also does not allege facts to show that his image was ever captured by any Tesla camera, and, thus, Yeh too cannot represent a broad nationwide class of all persons "whose images were captured by Tesla Vehicle cameras."  (Am. Compl. ¶ 61.)

1

2       Dated: July 31, 2023              MORGAN, LEWIS & BOCKIUS LLP
                                          David L. Schrader
3                                         Brian M. Ercole
                                          Mark A. Feller
4

5                                         By   /s/ David L. Schrader
6                                               David L. Schrader

7                                         *Attorneys for Defendant Tesla, Inc.*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT TESLA INC.'S MOTION TO DISMISS AND STRIKE CLASS ALLEGATIONS