**FITZGERALD JOSEPH LLP**
JACK FITZGERALD (SBN 257370)
*jack@fitzgeraldjoseph.com*
PAUL K. JOSEPH (SBN 287057)
*paul@fitzgeraldjoseph.com*
MELANIE PERSINGER (SBN 275423)
*melanie@fitzgeraldjoseph.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@fitzgeraldjoseph.com*
CAROLINE S. EMHARDT (SBN 321222)
*caroline@fitzgeraldjoseph.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741

**BLOOD HURST & O'REARDON, LLP**
TIMOTHY G. BLOOD (SBN 149343)
*tblood@bholaw.com*
THOMAS J. O'REARDON II (SBN 247952)
*toreardon@bholaw.com*
JAMES M. DAVIS (SBN 301636)
*jdavis@bholaw.com*
501 West Broadway, Suite 1490
San Diego, CA 92101
Phone: (619) 338-1100

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HENRY YEH and G.Y., a minor by and through his guardian Henry Yeh, on behalf of themselves, all others similarly situated, and the general public,<br><br>                    Plaintiffs,<br><br>         v.<br><br>TESLA, INC.,<br><br>                    Defendant. | Case No. 23-cv-1704-JCS<br><br>**PLAINTIFFS' OPPOSITION TO TESLA'S MOTION TO COMPEL ARBITRATION AND TO DISMISS THE ACTION (DKT. NO. 38)**<br><br>Date:     September 15, 2023<br>Time:     9:30 a.m.<br>Court:    F, 15th Floor<br>Judge:    Hon. Joseph C. Spero |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION .......................................................................................................................1

FACTS .........................................................................................................................................1

ARGUMENT ...............................................................................................................................1

    I.    THE SALE CONTRACT'S ARBITRATION PROVISION IS WITHOUT EFFECT ...............................................................................................................1

    II.    THE ORDER AGREEMENT'S ARBITRATION PROVISION IS UNCONSCIONABLE ........................................................................................3

        A.    The Order Agreement's Arbitration Provision is Procedurally Unconscionable ........................................................................................4

        B.    The Arbitration Provision is Substantively Unconscionable ...................5

            1.    The First Amended Complaint Seeks Public Injunctive Relief .......6

            2.    The Order Agreement's Arbitration Provision Purports to Prohibit Mr. Yeh From Seeking a Public Injunction in Any Forum ..............7

        C.    Mr. Yeh's Claims Should Proceed in Court ..............................................8

    III.    G.Y. IS NOT OBLIGATED TO ARBITRATE HIS CLAIMS ..............................8

        A.    Because the Order Agreement is Not a Contract for Necessities and G.Y. Did Not Knowingly Exploit the Agreement, Equitable Estoppel is Inapplicable ..............................................................................................9

        B.    G.Y. Exercised His Right to Disaffirmance ...........................................12

CONCLUSION ..........................................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*A.D. v. Credit One Bank, N.A.*,
  885 F.3d 1054 (7th Cir. 2018) .................................................................................................. 11, 12

*Am. Acad. of Pediatrics v. Lungren*,
  16 Cal. 4th 307 (1997) ..................................................................................................................... 11

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
  24 Cal. 4th 83 (2000) .................................................................................................................... 4, 5

*Avagyan v. Holder*,
  646 F.3d 672 (9th Cir. 2011) ............................................................................................................ 7

*B.F. v. Amazon.com Inc.*,
  858 Fed. App'x 218 (9th Cir. 2021) ................................................................................................. 9

*Baltazar v. Forever 21, Inc.*,
  62 Cal. 4th 1237 (2016) .................................................................................................................... 4

*Berg v. Traylor*,
  148 Cal. App. 4th 809 (2007) ......................................................................................................... 12

*Blair v. Rent-A-Center, Inc.*,
  928 F.3d 819 (9th Cir. 2019) ............................................................................................... 5, 6, 7, 8

*Broughton v. Cigna Healthplans of Cal.*,
  21 Cal. 4th 1066 (1999) .................................................................................................................... 6

*Brown v. Madison Reed, Inc.*,
  2021 WL 3861457 (N.D. Cal. Aug. 30, 2021) ........................................................................ 3, 5, 8

*Bruno v. Eckhart Corp.*,
  280 F.R.D. 540 (C.D. Cal. 2012) ..................................................................................................... 7

*Buckner v. Tamarin*,
  98 Cal. App. 4th 140 (2002) ............................................................................................................. 8

*Castillo v. CleanNet USA, Inc.*,
  358 F. Supp. 3d 912 (N.D. Cal. 2018) ............................................................................................. 5

*Clausing v. San Francisco Unified Sch. Dist.*,
  221 Cal. App. 3d 1224 (1990) .......................................................................................................... 8

*Coughenour v. Del Taco, LLC*,
  57 Cal. App. 5th 740 (2020) ........................................................................................................... 12

*County of Contra Costa v. Kaiser Found. Health Plan*,
   47 Cal. App. 4th 237 (1996) ............................................................................................... 11

*Deck v. Spartz, Inc.*,
   2011 WL 7775067 (E.D. Cal. Sept. 27, 2011) ..................................................................... 12

*Dekker v. Vivint Solar, Inc.*,
   2022 WL 827246 (N.D. Cal. Mar. 18, 2022) ......................................................................... 7

*Doe v. Epic Games, Inc.*,
   435 F. Supp. 3d 1024 (N.D. Cal. 2020) ................................................................................ 12

*Ferguson v. Countrywide Credit Indus., Inc.*,
   298 F.3d 778 (9th Cir. 2002) .................................................................................................. 4

*Fidelity Union Trust Co. v. Field*,
   311 U.S. 169 (1940) ............................................................................................................... 7

*Flores v. Transamerica HomeFirst, Inc.*,
   93 Cal. App. 4th 846 (2001) ................................................................................................... 4

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
   561 U.S. 287 (2010) ............................................................................................................... 8

*Hodges v. Comcast Cable Commcn's, LLC*,
   21 F.4th 535 (9th Cir. 2021) ................................................................................................... 7

*In re Ring LLC Priv. Litig.*,
   2021 WL 2621197 (C.D. Cal. June 24, 2021) ...................................................................... 11

*In re Ring LLC Priv. Litig.*,
   2021 WL 4557222 (C.D. Cal. Sept. 3, 2021) .................................................................... 9, 10

*In re T.A.J.*,
   62 Cal. App. 4th 1350 (1998) ............................................................................................... 10

*Kilgore v. KeyBank Nat'l Ass'n*,
   718 F.3d 1052 (9th Cir. 2013) ................................................................................................ 3

*Kinney v. United HealthCare Servs., Inc.*,
   70 Cal. App. 4th 1322 (1999) ................................................................................................. 4

*Lifescan, Inc. v Premier Diabetic Servs., Inc.*,
   363 F.3d 1010 (9th Cir. 2004) ................................................................................................ 3

*Lim v. TForce Logistics, LLC*,
   8 F. 4th 992 (9th Cir. 2021) .................................................................................................... 3

*Lopez v. Kmart Corp*,
  2015 WL 2062606 (N.D. Cal. May 5, 2015) ................................................................................ 12

*Lyons v. NBCUniversal Media, LLC*,
  2019 WL 6703396 (C.D. Cal. Sept. 27, 2019) .............................................................................. 5

*McGill v. Citibank, N.A.*,
  2 Cal. 5th 945 (2017) ........................................................................................................ 1, 3, 5, 6

*Medoff v. Minka Lighting, LLC*,
  2023 WL 4291973 (C.D. Cal. May 8, 2023) ............................................................................... 10

*Meta Platforms, Inc. v. BrandTotal Ltd.*,
  605 F. Supp. 3d 1218 (N.D. Cal. 2022) ......................................................................................... 4

*Moore v. Rodriguez*,
  2021 WL 2222590 (S.D. Cal. June 2, 2021) .................................................................................. 8

*Murphy v. DirecTV, Inc.*,
  724 F.3d 1218 (9th Cir. 2013) ....................................................................................................... 9

*Nagrampa v. MailCoups, Inc.*,
  469 F.3d 1257 (9th Cir. 2006) ....................................................................................................... 4

*Nguyen v. Tesla, Inc.*,
  2020 WL 2114937 (C.D. Cal. Apr. 6, 2020) .............................................................................. 6, 7

*OTO, LLC v. Kho*,
  8 Cal. 5th 111 (2019) ..................................................................................................................... 3

*Philadelphia Indem. Ins. Co. v. SMG Holdings, Inc.*,
  44 Cal. App. 5th 834 (2019) ........................................................................................................ 10

*Pineda v. Oceania Cruises, Inc.*,
  283 F. Supp. 3d 1307 (S.D. Fla. 2017) ........................................................................................ 11

*Portland Gen. Elec. Co. v. U.S. Bank Trust Nat'l Ass'n*,
  218 F.3d 1085 (9th Cir. 2000) ....................................................................................................... 7

*Poublon v. C.H. Robinson Co.*,
  846 F.3d 1251 (9th Cir. 2017) ....................................................................................................... 3

*Prostek v. Lincare Inc.*,
  --- F. Supp. 3d ----, 2023 WL 2588098 (E.D. Cal. Mar. 21, 2023) ........................................... 3, 4

*Rent-A-Center, West, Inc. v. Jackson*,
  561 U.S. 63 (2010) ......................................................................................................................... 3

*S.S. by & through Stern v. Peloton Interactive, Inc.*,
  566 F. Supp. 3d 1019 (S.D. Cal. 2021).................................................................................. 12

*Sakyi v. Estee Lauder Companies, Inc.*,
  308 F. Supp. 3d 366 (D.D.C. 2018)........................................................................................ 11

*Shivkov v. Artex Risk Sols., Inc.*,
  974 F.3d 1051 (9th Cir. 2020) .................................................................................................. 3

*Sonic-Calabasas A, Inc. v. Moreno*,
  57 Cal. 4th. 1109 (2013) .......................................................................................................... 5

*Vaughn v. Tesla, Inc.*,
  87 Cal. App. 5th 208 (2023) ................................................................................................. 5, 7

**Statutes**

9 U.S.C. § 2............................................................................................................................... 3

Cal. Fam. Code § 6700 ............................................................................................................ 12

Cal. Fam. Code § 6710 ............................................................................................................ 12

**Other Authorities**

Black's Law Dictionary (7th ed. 1999).................................................................................... 2

**INTRODUCTION**

Tesla seeks to compel Plaintiffs Henry Yeh and his one-year-old son, G.Y., into private, binding arbitration based on two separate arbitration provisions, in two different contracts signed by Mr. Yeh but not G.Y. Because one arbitration provision overrides the other, only one is relevant. But that provision is unconscionable under *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017), because it purports to prohibit consumers from seeking public injunctive relief in any forum by providing that "[t]he arbitrator cannot hear . . . requests for relief on behalf of others purchasing or leasing Tesla vehicles." Dkt. No. 38-2, Decl. of Jasjit Ahluwalia ("Ahluwalia Decl.") Ex. 1, Motor Vehicle Order Agreement ("Order Agreement") at 3. Even if the arbitration provision were not unconscionable, nothing warrants applying the doctrine of equitable estoppel to bind G.Y. to the agreement.

**FACTS**

Mr. Yeh ordered a Tesla Model Y in November 2021 and took delivery of the vehicle in February 2022. Dkt. No. 32, First Am. Compl. ("FAC") ¶ 9. When ordering his vehicle, Mr. Yeh—by virtue of submitting his order online through Tesla's website—agreed to the terms of the Order Agreement, *see* Dkt. No. 38-3, Decl. of Minu Sinha Ex. 1. The Order Agreement states that "[i]f you do not opt out, this agreement to arbitrate overrides any different arbitration agreement between us, including any arbitration agreement in a lease or finance contract." Order Agreement at 3.

Mr. Yeh never opted out. Ahluwalia Decl. ¶ 8. As a result, the Order Agreement's arbitration provision "overrides any different arbitration agreement" between him and Tesla. Thus, even though, when he took possession of his Model Y in February 2022, Mr. Yeh signed a "Retail Installment Sale Contract – Simple Finance Charge (with Arbitration Provision)," *see id.* Ex. 2 (the "Sale Contract"), the arbitration provision contained therein was never applicable, and is not enforceable.

After Mr. Yeh took possession of his Tesla, his now one-year old son, G.Y., was born. FAC ¶ 10.

**ARGUMENT**

**I.   THE SALE CONTRACT'S ARBITRATION PROVISION IS WITHOUT EFFECT**

The November 2021 Order Agreement includes a primacy provision stating, "[i]f you do not opt out, this agreement to arbitrate overrides any different arbitration agreement between us, including any arbitration agreement in a lease or finance contract." Order Agreement at 3. Black's Law defines "override"

1

*Yeh v. Tesla, Inc.*, No. 23-cv-1704-JCS
PLAINTIFFS' OPPOSITION TO TESLA'S MOTION TO COMPEL ARBITRATION

as "[t]o prevail over; to nullify or set aside," as in "Congress mustered enough votes to override the President's veto[]." Black's Law Dictionary at 1129 (7th ed. 1999). Thus, this language establishes the primacy of the Order Agreement's arbitration provision above all others between the parties.

Mr. Yeh did not opt out of the Order Agreement's arbitration provision. Ahluwalia Decl. ¶ 8. The February 2022 Sale Contract is a contract for financing Mr. Yeh's vehicle. *See id.* Ex. 2. Its arbitration provision is "different" than the arbitration provision in the Order Agreement, *see id.* at 7, and is therefore plainly "override[n]" by the Order Agreement's arbitration provision. As such, the Sale Contract's arbitration provision was, is, and has always been inapplicable.

It makes sense why this would be so: having already secured a customer's agreement to arbitrate, Tesla would not have needed it again—the second provision was just a second bite at the apple for Tesla with respect to customers who had opted out the first time. By virtue of the Order Agreement's primacy provision, however, the Sale Contract's arbitration provision was expressly *not* intended to "stack" on top of the Order Agreement's arbitration provision. Evincing this, in a different case, Tesla admitted that "[w]here a Plaintiff agreed to both an Order Agreement and Retail Installment Contract, the Order Agreement provides that its arbitration terms govern." Fitzgerald Decl. Ex. 1, excerpts from Tesla Mot. to Compel Arbitration in *Lee v. Tesla*, No. 20-cv-570-JVS (C.D. Cal.), at 5 n.4 (citing July 27, 2020 Declaration of Jasjit Ahluwalia Ex. 1 at 15).[1]

Tesla should be estopped from arguing otherwise and thereby sandbagging Plaintiffs on Reply. The language in the Order Agreement is clear and conspicuous—and highly material to the issues presented—yet Tesla's Motion did not even mention it. Instead, Tesla repeatedly pretended both arbitration provisions are equally valid and applicable, knowing full well they are not. Any explanation for this (mis)treatment in light of the Order Agreement's primacy provision should have been advanced in Tesla's Motion so that Plaintiffs had the chance to respond.

---

[1] Attached hereto as Fitzgerald Decl. Ex. 2. This is the same Tesla Motor Vehicle Order Agreement attached to the Ahluwalia Declaration filed in this case and references the same arbitration provision on page 3 of the Agreement (with the "page 15" a reference to motion paper pagination).

## II. THE ORDER AGREEMENT'S ARBITRATION PROVISION IS UNCONSCIONABLE

The Federal Arbitration Act ("FAA") provides that "an agreement in writing to submit to arbitration an existing controversy rising out of" a "contract evidencing a transaction involving commerce" "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . ." 9 U.S.C. § 2. Pursuant to the FAA, a court faced with a motion to compel arbitration determines "whether a valid agreement to arbitrate exists" and, if so, "whether the agreement encompasses the dispute at issue." *Brown v. Madison Reed, Inc.*, 2021 WL 3861457, at *3 (N.D. Cal. Aug. 30, 2021) (citing *Lifescan, Inc. v Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004)). Nevertheless, arbitration is a matter of contract, and as such, "arbitration clauses 'may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Id.*, at *6 (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010)). "One such defense is that 'a law established for a public reason cannot be contravened by a private agreement.'" *Id.* (quoting *McGill*, 2 Cal. 5th at 962).

"Unconscionability is a recognized basis to invalidate an arbitration agreement." *Prostek v. Lincare Inc.*, --- F. Supp. 3d ----, 2023 WL 2588098, at *8 (E.D. Cal. Mar. 21, 2023) (citing *Lim v. TForce Logistics, LLC*, 8 F. 4th 992, 999 (9th Cir. 2021); *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1259 (9th Cir. 2017)). "State law determines whether an agreement is invalid due to unconscionability." *Id.* (citing *Shivkov v. Artex Risk Sols., Inc.*, 974 F.3d 1051, 1059 (9th Cir. 2020); *Kilgore v. KeyBank Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013)).

"Under California law, unconscionability has a procedural element and a substantive element." *Id.* (citations omitted). Procedural fairness "addresses the circumstances of contract negotiation and formation, focusing on oppression and surprise due to unequal bargaining power, while the substantive element pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided." *Id.* (citing, *inter alia*, *OTO, LLC v. Kho*, 8 Cal. 5th 111, 125 (2019)). To find an arbitration agreement unconscionable, the procedural and substantive unconscionability elements "need not be present in the same degree," and there is "essentially a 'sliding scale' that applies" wherein "the more one element is present, the less present the other element need be." *Id.* (citations omitted).

Here, the Order Agreement's arbitration provision is procedurally and substantively unconscionable.

A.     **The Order Agreement's Arbitration Provision is Procedurally Unconscionable**

"Procedural unconscionability 'concerns the manner in which the contract was negotiated and the circumstances of the parties at that time.'" *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 783 (9th Cir. 2002) (quoting *Kinney v. United HealthCare Servs., Inc.*, 70 Cal. App. 4th 1322, 1329 (1999)). "That analysis 'begins with an inquiry into whether the contract is one of adhesion.'" *Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218, 1253 (N.D. Cal. 2022) (Spero, J.) (quoting *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 113 (2000)). If it is, "courts must assess whether the circumstances of the contract's formation created such oppression or surprise that closer scrutiny of the contract's overall fairness is required." *Prostek*, 2023 WL 2588098, at *9 (citations omitted).

"California courts have consistently held that where a party in a position of unequal bargaining power is presented with an offending clause without the opportunity for meaningful negotiation, oppression and, therefore, procedural unconscionability, are present." *Ferguson*, 298 F.3d at 784. That "test is met" when the "terms [are] on a take-it-or-leave-it basis, with no power to negotiate," and "[u]nder California law, that is enough to meet the procedural element of unconscionability." *Meta Platforms*, 605 F. Supp. 3d at 1253-54 (citing *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1244 (2016) ("Ordinary contracts of adhesion, although they are indispensable facts of modern life that are generally enforced, contain a degree of procedural unconscionability even without any notable surprises, and bear within them the clear danger of oppression and overreaching." (cleaned up))). Here, the arbitration provision is undoubtedly a contract of adhesion: Tesla drafted it and it was offered to Mr. Yeh on a take-it-or-leave-it basis. "Because [Tesla's] terms of use are a contract of adhesion . . . they are sufficiently procedurally unconscionable to proceed to [Plaintiffs'] arguments regarding substantive unconscionability." *Id.* at 1254.

The Ninth Circuit has explained that "[u]nder current California law, it is unclear whether a contract of adhesion is inherently oppressive, and therefore automatically procedurally unconscionable, or whether oppression is a separate element that must be present. However, both standards for procedural unconscionability are satisfied by a finding that the arbitration provision was presented on a take-it-or-leave-it basis and that it was oppressive due to 'an inequality of bargaining power that result[ed] in no real negotiation and an absence of meaningful choice.'" *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1281 (9th Cir. 2006) (quoting *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (2001)). Those

1  standards are met here, where the relevant arbitration agreement is found within terms and conditions foisted
2  on Mr. Yeh without any ability to change or negotiate them—a classic contract of adhesion. *See Armendariz*,
3  24 Cal. 4th at 113 ("'The term [contract of adhesion] signifies a standardized contract, which, imposed and
4  drafted by the party of superior bargaining strength, relegates the subscribing party only the opportunity to
5  adhere to the contract or reject it.'" (citation omitted)); *see also, Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal.
6  4th. 1109, 1134 (2013) (finding procedural unconscionability where arbitration agreement was found in a
7  contract of adhesion); *Castillo v. CleanNet USA, Inc.*, 358 F. Supp. 3d 912, 947 (N.D. Cal. 2018) (Spero, J)
8  (plaintiff made a "strong showing of procedural unconscionability" in part because plaintiff "was presented
9  with the Franchise Agreement on a take-it-or-or leave it basis").

10    Moreover, that an arbitration provision ostensibly permits users to "opt out" does not mean it lacks
11  procedural unconscionability. *See Lyons v. NBCUniversal Media, LLC*, 2019 WL 6703396, at *4-5 (C.D.
12  Cal. Sept. 27, 2019). And while a meaningful opt out provision might make an agreement less procedurally
13  unconscionable, here it could not have done so. If Mr. Yeh had opted out, he would have been bound to
14  arbitrate under the Sale Agreement, which does not contain an opt out provision, *see* Ahluwalia Decl. Ex. 2
15  at p. 7, rendering illusory his ability to effectively opt-out of arbitration with Tesla.

16  **B.  The Arbitration Provision is Substantively Unconscionable**

17    "Agreements to arbitrate claims for public injunctive relief under the CLRA, the UCL, or the false
18  advertising law are not enforceable in California." *McGill*, 2 Cal. 5th at 956. "[P]ublic injunctive relief [is]
19  relief that has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the
20  general public." *Id*. at 951. Because the relief available under California's consumer protection statutes is
21  "primarily 'for the benefit of the general public,'" any waiver of the right to seek public injunctive relief
22  under those statutes "would seriously compromise the public purposes the statutes were intended to serve."
23  *Id*. at 961 (citation omitted). Accordingly, "an arbitration agreement that prohibit[s] plaintiffs from seeking
24  a public injunction—a remedy provided for under certain California consumer protection laws—[i]s
25  invalid," *Brown*, 2021 WL 3861457, at *6 (citing *McGill*, 2 Cal. 5th at 962); *see also Vaughn v. Tesla, Inc.*,
26  87 Cal. App. 5th 208, 228 (2023) ("[U]nder *McGill*, an arbitration agreement that precludes a plaintiff from
27  pursuing public injunctive relief in any forum is invalid and unenforceable as a matter of state law"). The
28  FAA does not preempt the holding in *McGill*. *Blair v. Rent-A-Center, Inc.*, 928 F.3d 819, 822 (9th Cir. 2019)

("We are asked to decide in this case whether the Federal Arbitration Act ('FAA') preempts California's *McGill* rule. We hold it does not.").

Here, the Order Agreement's arbitration provision is substantively unconscionable because it is contrary to California's public policy of prohibiting waiver of public injunctive relief, as articulated by the California Supreme Court in *McGill*.

### 1.   The First Amended Complaint Seeks Public Injunctive Relief

Public injunctive relief is relief that "'by and large' benefits the general public and that benefits the plaintiff, 'if at all,' only 'incidental[ly]' and/or as 'a member of the general public,'" *McGill*, 2 Cal. 5th at 955 (alteration in original) (internal citation omitted) (quoting *Broughton v. Cigna Healthplans of Cal.*, 21 Cal. 4th 1066, 1079, 1080 n.5 (1999)). "[P]ublic injunctive relief under the UCL, the CLRA, and the false advertising law is relief that has 'the primary purpose and effect of' prohibiting unlawful acts that threaten future injury to the general public." *Id.* (quoting *Broughton*, 21 Cal. 4th at 1077).

Here, the First Amended Complaint seeks public injunctive relief including (i) enjoining Tesla's further violations of the UCL and CLRA;  (ii) enjoining Tesla from making additional misrepresentations and omissions; (iii) enjoining Tesla's future recording, viewing, sharing, and profiting from videos and images of non-Tesla owners (and Tesla owners when not recorded by their own vehicles), as well as Class Members in violation of state law (including the right to privacy and publicity); and (iv) compelling Tesla's destruction of personal data obtained from non-Tesla owners (and Tesla owners when not recorded by their vehicles), as well as from Class Members, in violation of state law (including the right to privacy and publicity).  *See* FAC ¶¶ 5, 129(d)-(i). Such requests are routinely held to be for public injunctive relief. *See Blair*, 928 F.3d at 831 n.3 ("Blair seeks to enjoin future violations of California's consumer protection statutes, relief oriented to and for the benefit of the general public."); *see also Nguyen v. Tesla, Inc.*, 2020 WL 2114937, at *4-5 (C.D. Cal. Apr. 6, 2020) (finding "references to the public harm" in Complaint and request to enjoin "Tesla's unfair or deceptive acts or practices" under UCL, FAL, and CLRA were for public injunctive relief).

The Ninth Circuit held in *Hodges v. Comcast Cable Commcn's, LLC*, that "public injunctive relief within the meaning of *McGill* is limited to forward-looking injunctions that seek to prevent future violations of law for the benefit of the general public as a whole, as opposed to a particular class of persons, and that

do so without the need to consider the individual claims of any non-party." 21 F.4th 535, 542 (9th Cir. 2021). However, *Hodges* is "incongruent with *Blair*." *Dekker v. Vivint Solar, Inc.*, 2022 WL 827246, at \*6 (N.D. Cal. Mar. 18, 2022); *see also Hodges*, 21 F. 4th at 549-54 (Berzon, J., dissenting) (explaining why holding was "arbitrary" and "nonsensical"). Moreover, the California Court of Appeal subsequently disagreed with the majority holding in *Hodges* and endorsed the dissent. *See Vaughn*, 87 Cal. App. 5th at 231 n.16. Thus, even the relief requested in paragraphs 129(h) & (i) (which expressly affects class members) constitutes public injunctive relief.[2] But regardless, the relief requested in paragraphs 129(d)-(g) undoubtedly constitutes public injunctive relief even under the narrow *Hodges* interpretation.

### 2. The Order Agreement's Arbitration Provision Purports to Prohibit Mr. Yeh From Seeking a Public Injunction in Any Forum

The Order Agreement's arbitration provision states that "any dispute" between Mr. Yeh and Tesla must be arbitrated, that "[t]he arbitrator cannot hear . . . requests for relief on behalf of others purchasing or leasing Tesla vehicles," and that "you and Tesla may bring claims against the other only in your or its individual capacity and not as a plaintiff or class member in any class or representative action." Order Agreement at 3. By restricting the arbitrator's power in this manner, the arbitration agreement prohibits Mr. Yeh from seeking public injunctive relief in any forum. *Nguyen*, 2020 WL 2114937, at \*5 (finding same arbitration provision unenforceable).

Other courts have found similar provisions—including in Tesla arbitration agreements—unenforceable. For example, the California Court of Appeal recently held that similar language in an arbitration provision in a Tesla employment agreement—that "[t]he arbitrator shall not have the authority to . . . award relief to a group or class of employees in one arbitration proceeding"—violated the *McGill* rule. *Vaughn*, 87 Cal. App. 5th at 227-32. The *Vaughn* court cited the Ninth Circuit's decision in *Blair*, which found the agreement's terms unenforceable under *McGill*. *See id.* (citing *Blair*, 928 F.3d at 831) (considering arbitration provision which provided that "neither you nor [Rent-A-Center] may seek, nor may

---

[2] "A federal appellate court interpreting state law can not change or ignore the decisions of the highest state court because the 'highest state court *is* the final authority on state law.'" *Bruno v. Eckhart Corp.*, 280 F.R.D. 540, 545 (C.D. Cal. 2012) (quoting *Fidelity Union Trust Co. v. Field*, 311 U.S. 169, 177-78, 180 (1940)). Moreover, "a three-judge panel of the Ninth Circuit can not overrule prior Ninth Circuit precedent." *Id.* at 547 (citing *Avagyan v. Holder*, 646 F.3d 672, 677-78 (9th Cir. 2011); *Portland Gen. Elec. Co. v. U.S. Bank Trust Nat'l Ass'n*, 218 F.3d 1085, 1091 (9th Cir. 2000)).

the Arbitrator award, relief that would affect RAC account holders other than you"); *cf. Brown*, 2021 WL 3861457, at *7 (Arbitration agreement providing that "[t]he arbitrator may award declaratory or injunctive relief only in favor of the claimant and only to the extent necessary to provide relief warranted by the claimant's individual claim" violated *McGill*.).

### C. Mr. Yeh's Claims Should Proceed in Court

The Order Agreement provides that "[i]f a court or arbitrator decides that any part of this agreement to arbitration cannot be enforced as to a particular claim for relief or remedy, then that claim or remedy (and only that claim or remedy) must be brought in court or and any other claims must be arbitrated." Order Agreement at 3. Here, the public injunctive Plaintiffs seek is available for their claims under the UCL and CLRA, as well as under the California Constitution and Civil Code. *See, e.g.*, *Moore v. Rodriguez*, 2021 WL 2222590, at *20 (S.D. Cal. June 2, 2021) ("California's 'constitutional provision protecting the right of privacy . . . supports a cause of action for an injunction,' but it does not confer on a litigant a private right of action for damages" (quoting *Clausing v. San Francisco Unified Sch. Dist.*, 221 Cal. App. 3d 1224, 1237 (1990))). "A 'claim for relief,' as that term is ordinarily used, is synonymous with 'claim' or 'cause of action,'" and thus, "the entire claim" must be "severed for judicial determination" if the Court concludes the arbitration agreement is unenforceable as to a particular claim. *Blair*, 928 F.3d at 831-32. Accordingly, the Court should find that Mr. Yeh's claims for Intrusion Upon Seclusion, Violation of California's Constitutional Right to Privacy, Violation of Right to Publicity, UCL, and CLRA claims (the First to Sixth Causes of Action) must proceed in this Court.

### III. G.Y. IS NOT OBLIGATED TO ARBITRATE HIS CLAIMS

"Generally speaking, one must be a party to an arbitration agreement to be bound by it. 'The strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement, and a party cannot be compelled to arbitrate a dispute that he has not agreed to resolve by arbitration.'" *Buckner v. Tamarin*, 98 Cal. App. 4th 140, 142 (2002) (citation omitted); *see also Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 298 n.6 (2010) ("arbitration is strictly a matter of consent.").

Although Tesla acknowledges G.Y. is not a party to any arbitration agreement, it argues he "is bound by [Mr. Yeh's] arbitration agreement as well." *See* Mot. at 21. Tesla is wrong. Equitable estoppel does not

apply, and in any event G.Y. exercised his right, as a minor, to disaffirm any arbitration agreement to which he might otherwise be bound.

### A. Because the Order Agreement is Not a Contract for Necessities and G.Y. Did Not Knowingly Exploit the Agreement, Equitable Estoppel is Inapplicable

Although the FAA is a federal statute, state law determines if a nonsignatory can be held to an arbitration agreement under equitable principles. *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013). Under California law, the doctrine of equitable estoppel applies to "preclude[] a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes.'" *In re Ring LLC Priv. Litig.*, 2021 WL 4557222, at *3 (C.D. Cal. Sept. 3, 2021) ["*Ring II*"] (quoting *B.F. v. Amazon.com Inc.*, 858 Fed. App'x 218, 220 (9th Cir. 2021)).[3] Thus, "when a person 'knowingly exploits' a contract containing an arbitration clause, the person can be compelled to arbitrate despite having never signed the agreement." *B.F.*, 858 Fed. App'x at 220 (citation omitted).

"Because generally only signatories to an arbitration agreement are obligated to submit to binding arbitration, equitable estoppel of third parties in this context is narrowly confined." *Murphy*, 724 F.3d at 1229. "[A] non-signatory does not knowingly exploit the contract when they bring claims that 'do not arise out of the contract'—that is, when the non-signatory brings claims that 'sound in tort and allege personal injur[ies].'" *B.F.*, 858 Fed. App'x at 220 (citation omitted). Thus, where non-signatory children are "asserting claims based on 'an independent duty' that d[oes] not 'arise from' the agreement containing the arbitration clause, they [are] not bound to arbitrate." *See id.* at 220-21 (quotation omitted); *accord Ring II*, 2021 WL 4557222, at *3 (Under "California law . . . a party must knowingly seek the benefits of a contract before equitable estoppel will apply.").

G.Y. brings his claims—not based on the Order Agreement between Mr. Yeh and Tesla, nor for breach of Tesla's Privacy Policy or other Terms of Service—but rather for Intrusion Upon Seclusion, Violation of California's Constitutional Right to Privacy, Violation of Right to Publicity, Violation of the UCL, Negligence, and Unjust Enrichment. *See* FAC ¶¶ 70-94, 103-105, 124-28. California courts treat privacy violations as personal injuries. *See Medoff v. Minka Lighting, LLC*, 2023 WL 4291973, at *8 (C.D.

---

[3] "Although the *B.F.* court applied Washington law, the principles discussed under Washington law would likewise apply under California law." *Ring II*, 2021 WL 4557222, at *3.

Cal. May 8, 2023). Thus, thus G.Y.'s privacy-related claims do not arise out of contract. "It would be one thing if [G.Y.] were claiming that [Tesla] owed [him] a duty of care *because of* [Tesla's] Terms; [he is] not. As a result . . . there is no reason to believe that [G.Y.] [is] in any way knowingly seeking the benefits of [Tesla's] Terms." *See Ring II*, 2021 WL 4557222, at *3 (internal quotation marks and alteration omitted) (quoting *Philadelphia Indem. Ins. Co. v. SMG Holdings, Inc.*, 44 Cal. App. 5th 834, 841 (2019)).

Tesla nevertheless argues that there is a special "parent-child relationship" between Mr. Yeh and G.Y. that makes it "equitable to compel the nonsignatory to also be bound to arbitrate his . . . claim." *See* Mot. at 21 (quoting *Crowley Mar. Corp. v. Bos. Old Colony Ins. Co.*, 158 Cal. App. 4th 1061, 1070 (2008); *Chan v. Charter Commc'ns Holding Co.*, 2015 WL 12655701, at *5 (C.D. Cal. Aug. 6, 2015)). But nothing Tesla points out shows that G.Y. knowingly sought the benefits of Mr. Yeh's Order Agreement with Tesla. *See* Mot. at 22 (Arguing that it is equitable to bind G.Y. to arbitration because (i) Mr. Yeh is his father; (ii) Mr. Yeh is his guardian ad litem in the case; (iii) G.Y. brought his claims after Tesla moved to compel Mr. Yeh's claims to arbitration; and (iv) G.Y.'s claims are supposedly "intertwined and dependent upon" Mr. Yeh's claims in that they supposedly "rest solely on what conduct [Mr.] Yeh engaged in . . . .").

Tesla's last argument in this regard, concerning the "intertwining" of Mr. Yeh's and G.Y.'s claims is based on a single sentence in the First Amended Complaint, within the body of Plaintiffs' Intrusion Upon Seclusion cause of action, alleging that Plaintiffs' "expectation of privacy in their vehicle stemmed from Tesla's clearly-stated policy that it would not misuse videos or images it captures . . . ." FAC ¶ 71; *compare* Mot. at 23. In its motion, when quoting this paragraph, Tesla alters the allegation to make it seem like it expressly concerns Tesla's "Privacy Policy," which Telsa then says is "incorporated into and made part of Yeh's Order Agreement." *See* Mot. at 23. But the allegation—and those it is based on—is not so narrow. *See, e.g.*, FAC ¶¶ 24-27. Indeed, the same paragraph alleges "Plaintiffs and Class Members have reasonable expectations of privacy in their homes and in their vehicles, generally," and "from the on-screen display in the Tesla vehicles . . . ." FAC ¶ 71.

Moreover, Tesla's bald assertion that G.Y.'s claims are "derivative" of Mr. Yeh's, Mot. at 23, is plainly wrong since a factfinder could determine that Tesla violated G.Y.'s privacy rights, but not Mr. Yeh's, or vice-versa. *See In re T.A.J.*, 62 Cal. App. 4th 1350, 1354 (1998) ("[M]inors, as well as adults, enjoy a right of privacy protected by the California Constitution in article I, section 1."). Only "when there would

be no claim against the non-signatory [party] but for the contract," is "applying the doctrine of estoppel is appropriate." *See Sakyi v. Estee Lauder Companies, Inc.*, 308 F. Supp. 3d 366, 385 (D.D.C. 2018) (internal quotation marks and citation omitted). Because "none of [G.Y.]'s claims either directly or even indirectly invoke[] the terms of any of the relevant agreements," equitable estoppel simply does not apply. *See Pineda v. Oceania Cruises, Inc.*, 283 F. Supp. 3d 1307, 1311 (S.D. Fla. 2017).

Not only has Tesla failed to show G.Y. knowingly sought the benefits of Mr. Yeh's Order Agreement, but as Tesla acknowledges, in the parent-child context, the "estoppel principle does not apply to 'goods beyond necessities, like education or medical care.'" *See* Mot. at 22 (quoting *In re Ring LLC Priv. Litig.*, 2021 WL 2621197, at *8 (C.D. Cal. June 24, 2021) ["*Ring I*"]). In *Ring I*, the court thus rejected the argument that non-purchaser plaintiffs, including the children of purchasers, should be compelled to arbitrate their claims where "there is no evidence that any of the Non-Purchaser Plaintiffs *knowingly exploited* Ring's Terms," 2021 WL 2621197, at *8 (emphasis added).[4]

In an attempt to fit the facts to the law, Tesla argues that Mr. Yeh "entered into his Agreements for G.Y.'s benefit," since he alleges that, when he bought the car, he believed "it would be a safe and reliable vehicle" and would "protect[] his family's privacy." Mot. at 23. While G.Y. may have derived some benefit from his parents owning a Telsa, that does not mean Mr. Yeh entered into the Order Agreement solely or primarily for G.Y.'s benefit. Rather, Mr. Yeh entered into the Order Agreement because he needed a vehicle for the same reasons we all do: transportation to and from a variety of life activities, like work, only some of which may involve G.Y. *Compare A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1057 (7th Cir. 2018) (Although credit card could be used to benefit child, non-signatory plaintiff was "not bound by the terms of

---

[4] As the *Ring I* court noted, the body of law recognizing a parent's ability to bind a minor child to an arbitration agreement is limited to these necessities because it stems from the "duty to provide for the care of [the parent's] child or dependent." *See* 2021 WL 2621197, at *8; *cf. Am. Acad. of Pediatrics v. Lungren*, 16 Cal. 4th 307, 315 (1997) ("The requirement that medical care be provided to a minor only with the consent of the minor's parent or guardian remains the general rule, both in California and throughout the United States."). Thus, decisions invoking estoppel to bind a nonsignatory child based on a pre-existing relationship are typically "grounded in the authority of the signatory to contract for *medical services* on behalf of the nonsignatory." *See County of Contra Costa v. Kaiser Found. Health Plan*, 47 Cal. App. 4th 237, 243 (1996) (emphasis added) (listing cases in support of rule that "a person who has authority to contract for medical services on behalf of another may, in the exercise of that authority, bind that person to an agreement to arbitrate his or her medical malpractice claims" and recognizing that "a preexisting relationship between the nonsignatory and one of the parties to the arbitration agreement is a common factor in these cases").

the cardholder agreement to arbitrate with Credit One" and had "not directly benefited from the cardholder agreement such that equitable principles" warranted application of the arbitration clause against her).

**B.     G.Y. Exercised His Right to Disaffirmance**

Not only does Tesla "fail to establish the formation of a valid contract with [G.Y.], but in fact, 'Defendant's Motion must fail because [G.Y.] was incapable of contracting with Defendant as a matter of law.'" See S.S. by & through Stern v. Peloton Interactive, Inc., 566 F. Supp. 3d 1019, 1035 (S.D. Cal. 2021). In California, if a minor enters into a contract before the age of majority, the minor can disaffirm the contract. Cal. Fam. Code § 6700 ("a minor may make a contract in the same manner as an adult, subject to the power of disaffirmance under . . . Section 6710[ ] and subject to . . . Section 300"); id. § 6710 ("Except as otherwise provided by statute, a contract of a minor may be disaffirmed by the minor before majority or within a reasonable time afterwards."). Thus, a minor may "disaffirm all obligations under a contract, even for services previously rendered." Deck v. Spartz, Inc., 2011 WL 7775067, at *7 (E.D. Cal. Sept. 27, 2011) (emphasis added). "The filing of a lawsuit is sufficient disaffirmance." Coughenour v. Del Taco, LLC, 57 Cal. App. 5th 740, 748 (2020); accord Doe v. Epic Games, Inc., 435 F. Supp. 3d 1024, 1036 (N.D. Cal. 2020) ("[T]he minor's power to disaffirm a contract is broad and can be invoked through 'any act or declaration' that conveys his intent to repudiate a contract." (citation omitted))..

When minors disaffirm a contract, they are not subject to its terms—including mandatory arbitration. See Coughenour, 57 Cal. App. 5th at 748. Minors can disaffirm contracts signed for them by parents, and can disaffirm contracts their parents made that could have encompassed them. See A.D., 885 F.3d at 1062-63; see also Berg v. Traylor, 148 Cal. App. 4th 809 (2007) (finding minor had a statutory right to disaffirm a contract entered into on his behalf by his mother). By filing this lawsuit instead of demanding arbitration, G.Y. disaffirmed any agreements with Tesla, and cannot be compelled to arbitrate this dispute. See Lopez v. Kmart Corp, 2015 WL 2062606, at *7 (N.D. Cal. May 5, 2015) ("although Plaintiff entered into a valid arbitration agreement with Kmart, he has exercised his statutory right of disaffirmance, thereby rescinding the contract and rendering it a nullity," and "as a result, there is no valid agreement to arbitrate"). The Court should thus not compel G.Y. into arbitration. See Doe, 435 F. Supp. 3d at 1038 ("Because plaintiff validly disaffirmed the EULAs, plaintiff cannot be compelled to arbitrate this dispute pursuant to the arbitration provision contained in the amended EULA.").

## CONCLUSION

The Court should deny Tesla's Motion to Compel Arbitration entirely as to G.Y., and as to the First through Sixth Causes of Action as to Mr. Yeh (Intrusion Upon Seclusion, Violation of California's Right to Privacy, Violation of the Right to Publicity, Violation of the UCL, Violation of the CLRA, and Negligence), which should proceed in this Court.

Dated: August 21, 2023               Respectfully Submitted,

                                     /s/  Jack Fitzgerald

                                     **FITZGERALD JOSEPH LLP**
                                     JACK FITZGERALD
                                     *jack@fitzgeraldjoseph.com*
                                     PAUL K. JOSEPH
                                     *paul@fitzgeraldjoseph.com*
                                     MELANIE PERSINGER
                                     *melanie@fitzgeraldjoseph.com*
                                     TREVOR M. FLYNN
                                     *trevor@fitzgeraldjoseph.com*
                                     CAROLINE S. EMHARDT
                                     *caroline@fitzgeraldjoseph.com*
                                     2341 Jefferson Street, Suite 200
                                     San Diego, California 92110
                                     Phone: (619) 215-1741

                                     **BLOOD HURST & O'REARDON, LLP**
                                     TIMOTHY G. BLOOD
                                     *tblood@bholaw.com*
                                     THOMAS J. O'REARDON II
                                     *toreardon@bholaw.com*
                                     JAMES M. DAVIS
                                     *jdavis@bholaw.com*
                                     501 West Broadway, Suite 1490
                                     San Diego, CA 92101
                                     Phone: (619) 338-1100

                                     ***Counsel for Plaintiff***