**FITZGERALD JOSEPH LLP**
JACK FITZGERALD (SBN 257370)
*jack@fitzgeraldjoseph.com*
PAUL K. JOSEPH (SBN 287057)
*paul@fitzgeraldjoseph.com*
MELANIE PERSINGER (SBN 275423)
*melanie@fitzgeraldjoseph.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@fitzgeraldjoseph.com*
CAROLINE S. EMHARDT (SBN 321222)
*caroline@fitzgeraldjoseph.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741

**BLOOD HURST & O'REARDON, LLP**
TIMOTHY G. BLOOD (SBN 149343)
*tblood@bholaw.com*
THOMAS J. O'REARDON II (SBN 247952)
*toreardon@bholaw.com*
JAMES M. DAVIS (SBN 301636)
*jdavis@bholaw.com*
501 West Broadway, Suite 1490
San Diego, CA 92101
Phone: (619) 338-1100

***Counsel for Plaintiffs***

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HENRY YEH and G.Y., a minor by and through his guardian Henry Yeh, on behalf of themselves, all others similarly situated, and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>TESLA, INC.,<br><br>Defendant. | Case No. 23-cv-1704-JCS<br><br>**PLAINTIFFS' OPPOSITION TO TESLA'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT AND TO STRIKE THE CLASS ALLEGATIONS (DKT. NO. 39)**<br><br>Date:        September 15, 2023<br>Time:        9:30 a.m.<br>Court:       F, 15th Floor<br>Judge:       Hon. Joseph C. Spero |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................ ii

I.      INTRODUCTION .................................................................................................................... 1

II.     FACTS ..................................................................................................................................... 1

        A.      Tesla Vehicles' Video Recording Capabilities ............................................................ 1

        B.      Tesla Falsely Assures Plaintiffs and Class Members that Their Privacy is
                Protected ...................................................................................................................... 2

        C.      Plaintiffs' Experience .................................................................................................. 3

III.    LEGAL STANDARD ............................................................................................................. 3

IV.     ARGUMENT ........................................................................................................................... 4

        A.      Plaintiffs Do Not Need to Allege that Tesla Surreptitiously Recorded Them to
                Succeed on Their Claims ............................................................................................. 4

        B.      Plaintiffs Have Article III Standing ............................................................................ 5

        C.      Plaintiffs Have Standing to Seek Injunctive Relief ................................................... 7

        D.      Plaintiffs Have Adequately Alleged All Claims in the First Amended Complaint ............... 8

                1.      Plaintiffs Adequately Allege Tesla Violated Their Privacy Rights .................... 8

                2.      Plaintiffs Adequately Allege a Violation of Their Right of Publicity ...................... 11

                3.      Plaintiffs Can Pursue Their Equitable Claims ............................................ 12

                4.      Mr. Yeh States Claims for Intentional and Negligent Misrepresentation ................ 13

                5.      Plaintiffs' Negligence and Negligent Misrepresentation Claims Are Not
                        Barred by the Economic Loss Rule ............................................................ 15

                6.      Plaintiffs Have Adequately Alleged Claims Under the UCL .................................. 15

                7.      Mr. Yeh Has Adequately Alleged a Claim for Violation of the CLRA ................... 18

                8.      Plaintiffs Have Adequately Alleged a Claim for Unjust Enrichment ...................... 19

                9.      Mr. Yeh Has Adequately Alleged a Claim for Breach of Contract ......................... 20

V.      THE COURT SHOULD DECLINE TESLA'S PREMATURE REQUEST TO  STRIKE THE
        CLASS ALLEGATIONS .................................................................................................. 21

VI.     CONCLUSION ...................................................................................................................... 21

i

1

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Asghari v. Volkswagen Grp. of Am., Inc.*,
   42 F. Supp. 3d 1306 (C.D. Cal. 2013) ................................................................... 17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................ 3

*Astiana v. Hain Celestial Group, Inc.*,
   783 F.3d 753 (9th Cir. 2015) ................................................................................ 12

*Baggett v. Hewlett-Packard Co.*,
   582 F. Supp. 2d 1261 (C.D. Cal. 2007) ............................................................... 18

*Bernhard v. City of Ontario*,
   270 F. App'x 518 (9th Cir. 2008) ........................................................................... 4

*Beyer v. Symantec Corp.*,
   2019 WL 935135 (N.D. Cal. Feb. 26, 2019) ......................................................... 7

*Brissette v. Entrust Group, Inc.*,
   621 F. App'x 461 (9th Cir. 2015) ......................................................................... 13

*Brown v. Google LLC*,
   --- F. Supp. 3d ----, 2023 WL 5029899 (N.D. Cal. Aug. 7, 2023) ..................... 12

*Browne v. McCain*,
   611 F. Supp. 2d 1062 (C.D. Cal. 2009) ............................................................... 11

*Bruton v. Gerber Prod. Co.*,
   703 F. App'x 468 (9th Cir. 2017) ......................................................................... 19

*Buller v. Sutter Health*,
   160 Cal. App. 4th 981 (2008) .......................................................................... 16, 17

*Byton N. Am. Co. v. Breitfeld*,
   2020 WL 3802700 (C.D. Cal. Apr. 28, 2020) ...................................................... 12

*Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
   637 F.3d 1047 (9th Cir. 2011) .............................................................................. 17

*Cel-Tech Comm., Inc. v. Los Angeles Cellular Telephone Co.*,
   20 Cal. 4th 163 (1999) .......................................................................................... 16

*Cirulli v. Hyundai Motor Co.*,
   2009 WL 5788762 (C.D. Cal. June 12, 2009) ...................................................... 18

ii

*Courthouse News Serv. v. Planet*,
   750 F.3d 776 (9th Cir. 2014)........................................................................................................4

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018)........................................................................................................7

*Dent v. NFL*,
   968 F.3d 1126 (9th Cir. 2020)......................................................................................................3

*Doe v. John F. Kennedy Univ.*,
   2013 WL 4565061 (N.D. Cal. Aug. 27, 2013)............................................................................15

*Dougherty v. Bank of Am., N.A.*,
   2018 WL 1573312 (E.D. Cal. Mar. 30, 2018) ............................................................................16

*Ebeid ex rel. United States v. Lungwitz*,
   616 F.3d 993 (9th Cir.2010).........................................................................................................17

*Erceg v. LendingClub Corp.*,
   475 F. Supp. 3d 1071 (N.D. Cal. 2020) ......................................................................................21

*ESG Capital Partners, LP v. Stratos*,
   828 F.3d 1023 (9th Cir. 2016)......................................................................................................19

*Falk v. GMC*,
   496 F.Supp.2d 1088 (N.D. Cal. 2007) .........................................................................................18

*First Commercial Mortgage Co. v. Reece*,
   89 Cal.App.4th 731 (2001)...........................................................................................................20

*Fogelstrom v. Lamps Plus, Inc.*,
   195 Cal.App.4th 986 (2011).........................................................................................................6

*Freeman v. Indochino Apparel, Inc.*,
   443 F. Supp. 3d 1107 (N.D. Cal. 2020) ......................................................................................12

*Glenn K. Jackson Inc. v. Roe*,
   273 F.3d 1192 (9th Cir. 2001)......................................................................................................13

*Graves v. Sw. & Pac. Specialty Fin., Inc.*,
   2013 WL 5945851 (N.D. Cal. Nov. 4, 2013)..............................................................................21

*Greenley v. Avis Budget Grp. Inc.*,
   2020 WL 1493618 (S.D. Cal. Mar. 27, 2020).............................................................................15

*Haas v. Travelex Ins. Servs.*,
   555 F. Supp. 3d 970 (C.D. Cal. 2021).........................................................................................12

*Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*,
61 Cal. 4th 988 (2015)........................................................................................................ 19

*Hayden v. Retail Equation, Inc.*,
2022 WL 3137446 (C.D. Cal. July 22, 2022) ................................................................. 7, 12

*Heber v. Toyota Motor Sales, USA, Inc.*,
823 Fed. App'x 512 (9th Cir. 2020)..................................................................................... 17

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) ............................................................................... 14

*Heidorn v. BDD Mktg. & Mgmt. Co., LLC*,
2013 WL 6571168 (N.D. Cal. Oct. 9, 2013) ......................................................................... 9

*Heidorn v. BDD Mktg. & Mgmt. Co., LLC*,
2013 WL 6571629 (N.D. Cal. Aug. 19, 2013) ....................................................................... 9

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009)................................................................................................... 10, 11

*Hill v. National Collegiate Athletic Assn.*,
7 Cal. 4th 1 (1994).......................................................................................................... 8, 9

*In re Google Assistant Privacy Litig.*,
546 F. Supp. 3d 945 (N.D. Cal. 2021) ........................................................................... 20, 21

*In re Google, Inc. Privacy Policy Litig.*,
2012 WL 6738343 (N.D. Cal. Dec. 28, 2012) ..................................................................... 6, 7

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ................................................................................. 5

*In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*,
2020 WL 7664461 (N.D. Cal. Dec. 24, 2020) ..................................................................... 19

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*,
613 F. Supp. 3d 1284 (S.D. Cal. 2020) ................................................................................. 16

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig.*,
754 F. Supp. 2d 1145 (C.D. Cal. 2010) ................................................................................. 5

*In re Toyota RAV4 Hybrid Fuel Tank Litig.*,
534 F. Supp. 3d 1067 (N.D. Cal. 2021) ................................................................................. 5

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017).................................................................................. 9

*In re Yahoo Mail Litig.*,
   7 F. Supp. 3d 1016 (N.D. Cal. 2014) ............................................................... 4

*In re Zappos.com, Inc.*,
   888 F.3d 1020 (9th Cir. 2018) ......................................................................... 6

*In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*,
   601 F. Supp. 3d 625 (C.D. Cal. 2022) ........................................................ 5, 18

*Int'l Fed 'n of Prof'l & Technical Eng'rs, Local 21, AFL—CIO v. Super. Ct.*,
   42 Cal.4th 319 (2007) ...................................................................................... 9

*Jeong v. Nexo Fin. LLC*,
   2022 WL 174236 (N.D. Cal. Jan. 19, 2022) ................................................. 13

*Kalitta Air, L.L.C. v. Cent. Tex. Airborne Sys.*,
   315 Fed. Appx. 603 (9th Cir. 2008) .............................................................. 15

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ....................................................................... 17

*Khorrami v. Lexmark Int'l*,
   2007 WL 8031909 (C.D. Cal. Sept. 13, 2007) ............................................. 21

*Krottner v. Starbucks Corp.*,
   628 F.3d 1139 (9th Cir. 2010) ......................................................................... 6

*Kwikset Corp. v. Superior Court*,
   51 Cal. 4th 310 (2011) ................................................................................... 15

*Lazar v. Super. Ct.*,
   12 Cal. 4th 631 (1996) ................................................................................... 15

*Lopez v. Apple, Inc.*,
   519 F. Supp. 3d 672 (N.D. Cal. 2021) ............................................................ 4

*Low v. Linkedin Corp.*,
   2011 WL 5509848 (N.D. Cal. Nov. 11, 2011) ............................................... 7

*MacDonald v. Ford Motor Co.*,
   37 F. Supp. 3d 1087 (N.D. Cal. 2014) .......................................................... 18

*Matera v. Google Inc.*,
   2016 WL 5339806 (N.D. Cal. Sep. 23, 2016) ................................................ 8

*Medoff v. Minka Lighting, LLC*,
   2023 WL 4291973 (C.D. Cal. May 8, 2023) ................................................. 15

*Miller v. Nat'l Broad. Co.*,
187 Cal. App. 3d 1463 (1986) ................................................................................. 10

*Moran v. Prime Healthcare Management, Inc.*,
3 Cal. App. 5th 1131 (2016) ................................................................................... 16

*Mortg. Indus. Sols., Inc. v. Collabera, Inc.*,
2012 WL 13008421 (C.D. Cal. Aug. 14, 2012) ...................................................... 16

*Mosqueda v. Am. Honda Motor Co.*, Inc.,
443 F. Supp. 3d 1115 (C.D. Cal. 2020) ................................................................. 17

*Nordberg v. Trilegiant Corp.*,
445 F. Supp. 2d 1082 (N.D. Cal. 2006) ................................................................. 18

*Pirozzi v. Apple, Inc.*,
913 F.Supp.2d 840 (N.D. Cal. 2012) ....................................................................... 7

*Plotts v. Am. Honda Motor Co.*,
2023 WL 4843342 (C.D. Cal. June 9, 2023) .......................................................... 18

*Pollock v. Fed. Ins. Co.*,
2022 WL 912893 (N.D. Cal. Mar. 29, 2022) .......................................................... 17

*Precisely Software Inc. v. Loqate Inc.*,
2022 WL 4348469 (N.D. Cal. Sep. 19, 2022) ........................................................ 19

*Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*,
768 F.3d 938 (9th Cir. 2014) .................................................................................... 3

*Ries v. Ariz. Bevs. USA LLC*,
287 F.R.D. 523 (N.D. Cal. 2012) .............................................................................. 8

*Robinson Helicopter Co. v. Dana Corp.*,
34 Cal. 4th 979 (2004) ....................................................................................... 14, 15

*Rojas v. Bosch Solar Energy Corp.*,
443 F. Supp. 3d 1060 (N.D. Cal. 2020) ................................................................. 19

*Roper v. Big Heart Pet Brands*,
510 F.Supp.3d 903 (E.D. Cal. 2020) ...................................................................... 16

*Saunders v. Superior Court*,
27 Cal. App. 4th 832 (1994) ................................................................................... 16

*Semegen v. Weidner*,
780 F.2d 727 (9th Cir. 1985) .................................................................................. 13

vi

*Sheehan v. San Francisco 49ers, Ltd.*,
   45 Cal. 4th 992 (2009) ................................................................................................ 9

*Siqueiros v. GM LLC*,
   2021 WL 4061708 (N.D. Cal. Sep. 7, 2021) ............................................................. 5

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) ................................................................................... 12

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ................................................................................................... 5

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ................................................................................................... 7

*Summit Est., Inc. v. Cigna Healthcare of Cal., Inc.*,
   2017 WL 4517111 (N.D. Cal. Oct. 10, 2017) ........................................................ 14

*Summit Estate, Inc. v. United Healthcare Ins. Co.*,
   2020 WL 5436655 (N.D. Cal. Sept. 10, 2020) ....................................................... 12

*Sutcliffe v. Wells Fargo Bank, N.A.*,
   283 F.R.D. 533 (N.D. Cal. 2012) ............................................................................ 13

*Swierkiewicz v. Sorema N.A.*,
   534 U.S. 506 (2002) ................................................................................................... 3

*Trujillo v. City of Ontario*,
   428 F. Supp. 2d 1094 (C.D. Cal. 2006) .................................................................... 4

*U.S. v. United Healthcare Ins. Co.*,
   848 F.3d 1161 (9th Cir. 2016) ................................................................................. 17

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ................................................................................. 13

*Warren v. Fox Family Worldwide, Inc.*,
   328 F.3d 1136 (9th Cir. 2003) ................................................................................... 4

*White v. Samsung Elecs. Am., Inc.*,
   971 F.2d 1395 (9th Cir. 1992) ................................................................................. 11

*Williams v. Apple, Inc.*,
   449 F. Supp. 3d 892 (N.D. Cal. 2020) ...................................................................... 5

*Wilson v. Hewlett–Packard Co.*,
   668 F.3d 1136 (9th Cir.2012) .................................................................................. 18

*Wornum v. Aurora Loan Servs., Inc.*,
   2011 WL 3516055 (N.D. Cal. Aug. 11, 2011) ....................................................................... 20

*Yunker v. Pandora Media, Inc.*,
   2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) ......................................................................... 6

*Zhang v. Superior Court*,
   57 Cal. 4th 364 (2013) ............................................................................................................ 16

**Statutes**

Cal. Bus. & Prof. Code § 17200 ....................................................................................................... 15

Cal. Bus. & Prof. Code § 17205 ....................................................................................................... 12

Cal. Civ. Code § 1752 ....................................................................................................................... 12

Cal. Civ. Code § 1770(a) ................................................................................................................... 18

Cal. Civ. Code § 1780(a) ............................................................................................................. 12, 18

Cal. Civ. Code § 3344(a) ................................................................................................................... 11

**Rules**

Fed. R. Civ. P. 12(b)(6) ....................................................................................................................... 3

Fed. R. Civ. P. 8(d) ........................................................................................................................... 14

**Treatises**

Rest. 2d Torts § 652D .......................................................................................................................... 9

**Constitutional Provisions**

Cal. Const. Art. 1, § 1 ......................................................................................................................... 8

## I.     INTRODUCTION

As alleged by Plaintiffs, Tesla vehicles are capable of recording owners, their families, and members of the public—and in fact have done so—in environments they would expect to remain private; and Tesla employees have viewed and used those recordings for their own personal, inappropriate, non-business purposes. This behavior is also in stark contrast to specific assurances Tesla has made, including in its privacy policy, that it does not and would never use images or recordings in such a way. Notwithstanding the detailed allegations regarding the very real threat of Tesla invading Plaintiffs' privacy, Tesla seeks dismissal of every claim Plaintiffs assert. Dkt. No. 39, Mot. to Dismiss FAC ["Mot."]. The Court should deny Tesla's motion.

## II.     FACTS

### A.     Tesla Vehicles' Video Recording Capabilities

Tesla manufactures and sells vehicles with recording systems that submit images and video to Tesla's internal servers. Dkt. No. 32, First Am. Compl. ("FAC") ¶¶ 1-2, 12. Tesla vehicles' Autopilot System, for instance, consists of eight cameras that capture 360-degree views and audio at all times when the vehicle is in motion. *Id.* ¶ 18. Some vehicles equipped with the Autopilot System also have a driver-facing camera, which captures, records, and stores video of activities taking place within and outside Tesla vehicles. *Id.* ¶ 17. Autopilot has an opt-in data sharing program. *Id.* ¶ 19. To those who opt-in, Tesla claims their data is used to improve the vehicle's safety and security, and that any video recordings are not linked to their specific vehicles. *Id.* ¶ 20.

Previously, Tesla similarly represented that its vehicles' Full Service Driving system (FSD), part of the Autopilot System suite of features, did not transmit any video unless the owner opted-in to data sharing. *Id.* ¶ 25.  However, that later changed when opting into data sharing became necessary for owners to utilize FSD. *Id.* ¶ 26. Tesla updated its privacy notice to inform owners that if a driver opted out of data sharing, Tesla would not be able to "notify drivers of issues in real time," and therefore the vehicle would "suffer[] from reduced functionality, serious damage or inoperability." *Id.* ¶ 28.

Tesla vehicles also utilize Sentry Mode, a system that records video of the surrounding area while the vehicle is powered off and locked. *Id.* ¶ 30. According to Tesla, Sentry Mode records anything considered "suspicious activity," including sudden movements within a certain proximity to the vehicle. *Id.*

Originally, video captured in Sentry Mode would be stored locally on a USB drive. *Id.* ¶ 31. However, around October 2019, Tesla revised its practices such that the recorded videos would not be strictly stored locally, but also uploaded to Tesla's cloud storage. *Id.*

**B.     Tesla Falsely Assures Plaintiffs and Class Members that Their Privacy is Protected**

Tesla assures its vehicle owners that notwithstanding its vehicles recording video, their privacy is protected, stating, for example, that "[y]our privacy is and will always be enormously important to us," that the cameras in its vehicles are "designed from the ground up to protect your privacy," and that "camera recordings remain anonymous and are not linked to your or your vehicle." *Id.* ¶ 13. Tesla further promises its customers that it will only use the videos and images it collects to "[c]ommunicate with you; [f]ulfill our products and services; and [i]mprove and enhance development of our products and services." *Id.* ¶ 14.

Moreover, Tesla expressly promises those who use FSD and opt-in to data sharing that their data is only used to improve the vehicle's safety and security. *Id.* ¶ 20. Specifically, Tesla says it "collect[s] short video clips using the car's external camera to learn how to recognize things like lane lines, street signs and traffic light positions," and represents that, "[t]he more fleet learning of road conditions we are able to do, the better your Tesla's self-driving ability will become." *Id.* Tesla also assures vehicle owners that recordings will remain anonymous, stating, "we want to be super clear that these short video clips are not linked to your vehicle identification number. In order to protect your privacy, we have ensured that there is no way to search our system for clips that are associated with a specific car." *Id.*

Tesla's assurances of privacy were false. Starting at the latest in 2019, Tesla employees, were able to—and did—view video and images that were recorded by Tesla vehicles in private settings. *See id.* ¶¶ 2, 34, 36, 38. Tesla employees used and shared these videos internally for unprofessional, non-business purposes, sometimes even embellishing them to create jokes or memes. *See id.* Among the material circulated was a video showing a Tesla crashing at high-speed into a child riding a bike; video captured inside owners' garages, sometimes of undressed persons; and video of owners' children. *See id.* ¶¶ 35-41. Further, Tesla's promises of anonymity were false, as Tesla employees are able to determine the location of the vehicle recordings, and therefore the owners' residence and identity. *See id.* ¶ 37.

On April 14, 2023, U.S. Senators Edward Markey (MA) and Richard Blumenthal (CT) wrote to Tesla citing an "alarming" report that "Tesla employees have shared private photos and videos captured by

cameras in Tesla customers' vehicles." *Id.* ¶ 58. They asked Tesla to respond by May 5, 2023, to their inquiry. Tesla, however, has not publicly responded. *Id.* ¶¶ 59-60.

### C.    Plaintiffs' Experience

Plaintiff Henry Yeh ordered a 2022 Tesla Model Y in November 2021 and took delivery of it in February 2022. *Id.* ¶ 52. Mr. Yeh paid a premium to have his Tesla vehicle equipped with FSD. *Id.* ¶ 50. Mr. Yeh attaches importance to his and his family's privacy and chose a Tesla vehicle in part because he believed that Tesla, as a sophisticated technology company, would be more sensitive to privacy and data concerns than other car manufacturers. *Id.* ¶ 51.

After taking delivery, the display screen in Mr. Yeh's Tesla stated that, while in Sentry Mode, the video or images the vehicle captured would remain on local storage and not transmitted to Tesla. *Id.* ¶ 52. As a result, Mr. Yeh left Sentry Mode activated at all times, including while his vehicle was parked inside his garage, and he and his wife would occasionally walk around in the garage in various states of undress. *Id.* ¶¶ 52-53. Given the reports that Tesla employees accessed videos and images of Telsa owners in their homes and garages in various states of undress, there is a risk those employees accessed videos of Mr. Yeh and his family. *Id.* ¶ 54. After he become aware of this issue, Mr. Yeh deactivated Sentry Mode. *Id.* ¶ 52. But he cannot disable the cameras entirely, as he lacks the necessary technical expertise and is reluctant to do so because it would likely void his vehicle warranty. *Id.* ¶¶ 47-48.

## III.    LEGAL STANDARD

Rule 12(b)(6) motions test the legal sufficiency of a complaint and not the factual merits. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002); Fed. R. Civ. P. 12(b)(6). On a Rule 12 motion, a court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014) (citation omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Dismissal is only proper where the allegations in the complaint do not factually support a cognizable legal theory." *Dent v. NFL*, 968 F.3d 1126, 1130 (9th Cir. 2020) (citation omitted).

Dismissal pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction may appear "either on the face of the pleadings or by presenting extrinsic evidence." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). Where, as here, only a facial challenge is raised, Plaintiffs' allegations in the complaint must be taken as true. *Courthouse News Serv. v. Planet*, 750 F.3d 776, 779-80 (9th Cir. 2014).

## IV.    ARGUMENT

### A.    Plaintiffs Do Not Need to Allege that Tesla Surreptitiously Recorded Them to Succeed on Their Claims

Tesla contends that all of Plaintiffs' claims fail because Plaintiffs do not specifically allege Tesla "accessed, viewed, and shared camera recordings" of them without their consent. But Plaintiffs need not make such allegations to survive dismissal. As discussed below, Plaintiffs have Article III standing under two theories: Plaintiff Yeh adequately alleges a benefit-of-the-bargain economic injury; and both Plaintiffs adequately allege a threat of future injury to their privacy interests.

Telsa cites *Lopez v. Apple, Inc*., 519 F. Supp. 3d 672 (N.D. Cal. 2021), but that case is distinguishable. In *Lopez*, the plaintiffs alleged Apple had been recording verbal communications without their consent. 519 F. Supp. 3d at 681. But, as the court there noted, "California courts have not recognized a general privacy interest in communications." *Id*. at 690-91 (citing *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1040 (N.D. Cal. 2014) (discussing email)). That case only stands for the proposition that plaintiffs "must typically allege" violations of "information privacy" or "autonomy privacy," and, in that court's view, Plaintiffs failed to "allege[] specific circumstances to show that Apple intercepted their confidential communications" or alleged "that the scale or pervasiveness of the accidental triggers itself gives rise to a privacy invasion." *Id*. But, as described in more detail, *supra*, California courts *have* found a privacy interest in not being surreptitiously video recorded in their homes, locker rooms, and other places where they engage in activities such as "changing clothes." *See Trujillo v. City of Ontario*, 428 F. Supp. 2d 1094, 1102 (C.D. Cal. 2006), *aff'd sub nom. Bernhard v. City of Ontario*, 270 F. App'x 518 (9th Cir. 2008); *compare* FAC ¶ ("Mr. Yeh and his wife expected privacy in their own home, including in their garage where they kept their Tesla vehicle. In line with that expectation of privacy, they would occasionally walk around in their garage in various stages of undress"); *id*. ¶ 3 ("Tesla employees accessed and circulated recordings of Tesla

4

1    customers and members of the public in private and embarrassing situations, without their consent. This

2    included, for example, video of a man approaching a Tesla vehicle completely naked").

3            **B.    Plaintiffs Have Article III Standing**

4            Article III standing requires a plaintiff to plead an "(1) an injury in fact, (2) fairly traceable to the

5    challenged conduct of the defendant, and (3) likely to be redressed by a favorable judicial decision." *Spokeo,*

6    *Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted). Tesla only challenges the first element, injury-

7    in-fact. *See generally* Mot. Plaintiffs satisfy Article III's injury requirement for each form of relief by

8    alleging concrete and particularized injuries-in-fact that are actual and imminent.

9            First, Mr. Yeh has Article III standing under an economic benefit-of-the-bargain theory. "[T]he

10   Ninth Circuit has repeatedly held that when a consumer alleges that she would not have purchased property,

11   or would have paid less for it had the seller not misrepresented the property . . . the consumer has plausibly

12   alleged an injury-in-fact." *In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, 601 F. Supp. 3d 625, 764

13   (C.D. Cal. 2022) ["*In re ZF-TRW*"] (quoting *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d

14   1067, 1084 (N.D. Cal. 2021)); *see also In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1072 (N.D.

15   Cal. 2012) (finding plaintiffs had standing to bring UCL claim, and therefore Article III standing, where

16   they alleged that their purchased devices would have been of lower value had the manufacturer disclosed

17   practices relating to location data collection and usage). Here, Mr. Yeh alleges he "would only have paid

18   less" for his Tesla vehicle had he known that its camera systems "were capable of surreptitiously recording

19   him and his family and that those recordings could be accessed by Tesla employees for personal, non-

20   business reasons." FAC ¶ 57. This confers Article III standing on Mr. Yeh. *See In re ZF-TRW*, 601 F. Supp.

21   3d at 764; *In re iPhone Application Litig.*, 844 F. Supp. 2d at 1072; *see also Williams v. Apple, Inc.*, 449 F.

22   Supp. 3d 892, 905 (N.D. Cal. 2020) ("where plaintiffs plead that they were economically harmed because

23   they did not receive the 'benefit of the bargain,' plaintiffs have adequately alleged Article III standing")

24   (citation omitted).

25           Moreover, the precise dollar value of loss is not required at the pleading stage; it is enough that

26   plaintiffs "allege a tangible loss that can be proved or disproved upon discovery." *In re Toyota Motor Corp.*

27   *Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145, 1166 (C.D. Cal.

28   2010); *see also Siqueiros v. GM LLC*, 2021 WL 4061708, at *4 (N.D. Cal. Sep. 7, 2021) ("Plaintiffs have

Article III standing because they overpaid for their vehicles is thus entirely consistent with the longstanding rule, reaffirmed in *Transunion*, that monetary injuries are sufficiently tangible and concrete under Article III.").

As for Plaintiffs' privacy-related claims, a threat of future injury confers Article III standing to sue "if the threatened injury is 'certainly impending,' or there is a 'substantial risk that the harm will occur.'" *In re Zappos.com, Inc.*, 888 F.3d 1020, 1024 (9th Cir. 2018) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). It is well established that "harm need not have already occurred or be 'literally certain' in order to constitute injury-in-fact." *In re Adobe Sys. Privacy Litig.*, 66 F. Supp. 3d 1197, 1214 (N.D. Cal. 2014) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013)).

As an example of an adequate threat of future injury, in *Krottner v. Starbucks Corp.*, the Ninth Circuit held that defendant's employees had standing to sue based on the *risk* of identity theft they faced after a company laptop containing their personal information was stolen. 628 F.3d 1139, 1143 (9th Cir. 2010). The court held the plaintiffs had "alleged a credible threat of real and immediate harm" because the laptop with their personal identifying information had been stolen. *Id.* As in *Krottner*, Plaintiffs here have adequately alleged that they face a "credible threat of real and immediate harm" in the form of Tesla employees viewing recordings of them in situations where they would expect privacy. *See, e.g.,* FAC ¶ 54.

Tesla's reliance on *Yunker v. Pandora Media, Inc*. for the proposition that Plaintiffs lack Article III standing is misplaced. *See* Mot. at 13. In *Yunker*, the plaintiff had not disclosed any "sensitive" information to defendant, but only age, gender, and location. 2013 WL 1282980, at *5 (N.D. Cal. Mar. 26, 2013). That court, relying on *Fogelstrom v. Lamps Plus, Inc.*, 195 Cal.App.4th 986, 125 (2011), found that such information was far from "an egregious breach of social norms" and was, instead, merely "routine commercial behavior." *Id.* (citation and internal quotation marks omitted). Here, Plaintiffs allege Tesla's recording systems can record them and other Class Members in private settings, including in states of undress within their own homes, and that because of Tesla's defective system, Tesla employees could view those recordings and use them for inappropriate, non-business purposes. *See* FAC ¶¶ 34-38, 54-55.

Tesla's reliance on *In re Google, Inc. Privacy Policy Litig.*, 2012 WL 6738343 (N.D. Cal. Dec. 28, 2012), is similarly misplaced. There, plaintiffs did not allege that Google had accessed private, sensitive information or recordings from them, but merely alleged Google "combined" information from across their

Google email accounts. *See id.*, at *6. This, like the "routine commercial behavior" in *Yunker*, is a far cry from a defendant surreptitiously recording people in their own homes, promising to keep those video recordings private and anonymous, and doing the opposite.

*Low v. Linkedin Corp.*, 2011 WL 5509848 (N.D. Cal. Nov. 11, 2011), is even less helpful to Tesla. In that case, following LinkedIn's disclosure of the plaintiff's browsing history, the plaintiff sued alleging his browsing history had a market value that he had relinquished to LinkedIn without compensation, and that the incident caused him emotional harm. *See id.*, at *3. The court found, however, that plaintiff had insufficiently alleged the disclosure of embarrassing information, and that—especially because he had not paid LinkedIn for any services—his economic theory of harm was too abstract. *See id.*, at *3-4.

The other opinions Tesla cites are similarly distinguishable. *See* Mot. at 9. (citing *Pirozzi v. Apple, Inc.*, 913 F.Supp.2d 840, 847 (N.D. Cal. 2012) (plaintiff alleged reliance strictly on misrepresentations, not omissions, like here); *Beyer v. Symantec Corp.*, 2019 WL 935135, at *4 (N.D. Cal. Feb. 26, 2019) (plaintiff alleged a purported *past* risk of harm which never materialized, rather than a future risk of harm)).

Plaintiffs have sufficiently alleged a credible risk of future injury. Additionally, Mr. Yeh has sufficiently alleged an economic injury under a benefit of the bargain theory. Accordingly, Tesla's Article III arguments should be rejected.

## C.    Plaintiffs Have Standing to Seek Injunctive Relief

To demonstrate constitutional standing for "injunctive relief, which is a prospective remedy, the threat of injury must be 'actual and imminent, not conjectural or hypothetical.'" *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). Plaintiffs have adequately alleged the threat of an actual and imminent injury in the form of Tesla's defective system which allows the recording of them and their family in private settings, and the sharing of those videos within the company for no legitimate business purpose. Money damages, alone, would not address Tesla's future conduct in continuing behavior. This is sufficient to confer standing on Plaintiffs to seek injunctive relief. *See Hayden v. Retail Equation, Inc.*, 2022 WL 3137446, at *4 (C.D. Cal. July 22, 2022) (by alleging "money damages for past use of data and refusal of returns does not address or discourage the continued collection and usage of data by [defendants] . . . Plaintiffs have shown that available legal

remedies are potentially inadequate to address all of the harms caused by Defendants' use of consumer data.").

Tesla also contends Plaintiffs do not face an imminent harm because Mr. Yeh can "resolve any purported concerns with the push of a button or by contacting Tesla." Mot. at 12. But this would not address the imminent harm Plaintiffs face because, as Plaintiffs allege, disabling the cameras is the only way to currently prevent Tesla's invasions of privacy, and doing so would likely void Mr. Yeh's warranty. FAC ¶¶ 46-47.[1] Mr. Yeh also has standing to seek injunctive relief with respect to Tesla's misrepresentations and omissions regarding its data collection and privacy practices, and need not allege that he wishes to buy a Tesla vehicle again in the future, so long as he has not disclaimed such an interest. *See*, *e.g.*, *Ries v. Ariz. Bevs. USA LLC*, 287 F.R.D. 523, 533-34 (N.D. Cal. 2012).

Plaintiffs also properly seek injunctive relief ordering Tesla to destroy data obtained in violation of state law, including California's constitutional right to privacy, Cal. Const. Art. 1, § 1. *See Matera v. Google Inc.*, 2016 WL 5339806, at *17-19 (N.D. Cal. Sep. 23, 2016) (plaintiff had standing to seek injunctive relief in the form of ordering defendant to destroy personal data collected in violation of state law).

## D.    Plaintiffs Have Adequately Alleged All Claims in the First Amended Complaint

### 1.    Plaintiffs Adequately Allege Tesla Violated Their Privacy Rights

The California Constitution provides that "[a]ll people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, ***and privacy***." Cal. Const. Art. I, § 1 (emphasis added). The phrase "and privacy" was added to the Constitution by an initiative adopted by California voters in 1972. *See Hill v. National Collegiate Athletic Assn.*, 7 Cal. 4th 1, 15 (1994).

A plaintiff properly alleges a violation of their Constitutional right to privacy by alleging "(1) a legally protected privacy interest, (2) a reasonable expectation of privacy under the circumstances, and (3) a serious invasion of the privacy interest." *Heidorn v. BDD Mktg. & Mgmt. Co., LLC*, 2013 WL 6571629,

---

[1] Tesla's argument improperly invokes facts extraneous to the Complaint, which the Court should ignore. *See, e.g.* Mot. at 1, 4-5 ("such images are not transmitted to Tesla"; no recording from Plaintiff's "vehicle was ever shared with anyone within or outside of Tesla"; "Sentry Mode footage 'is not transmitted to Tesla'"; and "former employees contacted said the only sharing they observed was for legitimate work purposes, such as seeking assistance from colleagues or supervisors.").

at *12 (N.D. Cal. Aug. 19, 2013) (Spero, J.) (quoting *Int'l Fed 'n of Prof'l & Technical Eng'rs, Local 21, AFL—CIO v. Super. Ct.*, 42 Cal.4th 319, 338 (2007) (internal quotation marks omitted)), *report and recommendation adopted*, 2013 WL 6571168 (N.D. Cal. Oct. 9, 2013). "Once this threshold has been met, the court must 'weigh[ ] and balance[e] the justification for the conduct in question against the intrusion on privacy resulting from the conduct.'" *Id.* (quoting *Sheehan v. San Francisco 49ers, Ltd.*, 45 Cal. 4th 992, 999 (2009)).

"California has recognized two broad categories of legally protected privacy interests: '(1) interests in precluding the dissemination or misuse of sensitive and confidential information," called "informational privacy," and "(2) interests in making intimate personal decisions or conducting personal activities without observation, intrusion, or interference," called "autonomy privacy." *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1232 (C.D. Cal. 2017) (quoting *Hill*, 7 Cal. 4th at 35).

"Informational privacy" covers a "particular class of information" that is considered "private when well-established social norms recognize the need to maximize individual control over its dissemination and use to prevent unjustified embarrassment or indignity." *Hill*, 7 Cal. 4th at 35. Tesla premises its motion to dismiss on this category, citing cases involving the disclosure of social security numbers, browsing history, and geolocation information, and cases involving identity theft, for the proposition that Plaintiffs here fail to allege any significant "disclosure of personal information." *See* Mot. at 13-14. But Plaintiffs do not allege harm from the dissemination of their *information*. Rather, they allege that Tesla violated their "autonomy privacy," which guarantees rights of privacy in "making intimate personal decisions or conducting personal activities without observation, intrusion, or interference," *Hill*, 7 Cal. 4th at 35-36.

"A 'reasonable' expectation of privacy" in this regard "is an objective entitlement founded on broadly based and widely accepted community norms." *Id.* at 37 (citing Rest. 2d Torts § 652D ("The protection afforded to the plaintiff's interest in his privacy must be relative to the customs of the time and place, to the occupation of the plaintiff and to the habits of his neighbors and fellow citizens.")). Here, Plaintiffs allege that Tesla implemented a defective recording system through which "Tesla employees accessed and circulated recordings of Tesla customers"—potentially including Mr. Yeh, his wife, and their infant son, Plaintiff G.Y.—"and members of the public in private and embarrassing situations, without their consent." FAC ¶ 3.

Some of these recordings were captured "inside people's garages and their private properties." *Id.* ¶ 36. One example includes "video of a man approaching a Tesla vehicle completely naked," *id*. These recordings were "seen by 'scores' of Tesla employees. And as is common with internet culture, many of these videos and images were likely shared with persons outside the company." *Id.* ¶ 3. One Tesla employee referred to Tesla's practices as "a breach of privacy" and said they "would never buy a Tesla after seeing how they treated some of these people." *Id.* ¶ 38. Another was "bothered . . . because the people who buy the car, I don't think they know that their privacy is, like, not respected . . . . We could see them doing laundry and really intimate things. *We could see their kids*." *Id*.

These allegations are sufficient to state a claim for violation of privacy. *See Miller v. Nat'l Broad. Co.*, 187 Cal. App. 3d 1463, 1483-84 (1986) (plaintiff "has stated a cause of action for breach of privacy" where a camera knowingly intrudes into a private home).

Tesla's argument that Plaintiffs "do not allege that Tesla cameras recorded and transmitted any images of them," such that no privacy violation could have occurred, Mot. at 14, is unavailing. In *Hernandez v. Hillsides, Inc.*, the California Supreme Court rejected this argument, holding that plaintiffs could "plausibly maintain" claims of intrusion upon privacy where the defendant "never intended to view or record" them, or even where the defendant did not actually "capture [plaintiffs'] images at all." 47 Cal. 4th 272, 288 (2009) (internal quotation marks omitted). "Courts have acknowledged the intrusive effect for tort purposes of hidden cameras and video recorders in settings that otherwise seem private." *Id*. at 291. Noting the "legislative policy against covert monitoring and recording," the Supreme Court has thus found that any "recording that intrudes—*or threatens to intrude*—upon visual privacy" is actionable. *Id*. at 292 (emphasis added).[2]

---

[2] Although in *Hernandez*, the California Supreme Court ultimately held the defendant's conduct was not sufficiently "offensive," there, the potential recordings only existed in a workplace, were operational only after hours, when the employees had already left, and did not "involve surveillance measures conducted for socially repugnant or unprotected reasons," but rather were activated only three specific times to "confirm a strong suspicion—triggered by publicized network tracking measures—that an unknown staff person was engaged in unauthorized and inappropriate computer use at night," *id*. at 296-298. Even under these vastly different circumstances than those pleaded here, it was still a close call, and the court noted its appreciation for "plaintiffs' dismay over the discovery of video equipment" located "in an office that was reasonably secluded from public access and view." *Id*. at 300. "Nothing," the court said, was "meant to encourage such surveillance measures, particularly in the absence of adequate notice to persons within camera range that their actions may be viewed and taped." *Id*. Here, Tesla's behavior was not nearly so "narrowly tailored in

**2.        Plaintiffs Adequately Allege a Violation of Their Right of Publicity**

Tesla argues that "[t]his claim must be dismissed" because "Plaintiffs do not allege any facts to show that Tesla took any images of Yeh or his son, much less used those images to advertise or sell Tesla products," so that there "is not a single fact to show commercial misappropriation." Mot. at 16.

The relevant statute requires allegations that the defendant "knowingly use[d]" Plaintiffs' "photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent, or, in the case of a minor, the prior consent of his parent or legal guardian . . . ." *See* Cal. Civ. Code § 3344(a). As Tesla points out, this requires that Plaintiffs allege (1) Tesla's use of each Plaintiff's identity; (2) the appropriation of Plaintiff's name or likeness to Tesla's advantage; (3) lack of consent; and (4) resulting injury. *See* Mot. at 15-16. Here, Plaintiffs do just that, in that they allege (1) "Tesla knowingly used Plaintiffs' and other Class Members' images," in order (2) "to improve its products" for its own advantage in a commercial enterprise, did so (3) without Plaintiffs' consent, and (4) suffered injury as a result. *See* FAC ¶¶ 82-83.

Moreover, Tesla's argument interprets the right of publicity too narrowly. Tesla is wrong that a publicity right is only infringed when used, directly, to "sell Tesla products." Mot. at 16. To the contrary, courts recognize an infringement of the right to publicity where a defendant uses the plaintiff's identity and there is "evidence show[ing] that [d]efendants may have benefitted from this use," for example, "through increased media attention." *See Browne v. McCain*, 611 F. Supp. 2d 1062, 1070 (C.D. Cal. 2009) (citations omitted). Contrary to Tesla:

> It is not important *how* the defendant has appropriated the plaintiff's identity, but whether the defendant has done so. [Case law] teach[es] the impossibility of treating the right of publicity as guarding only against a laundry list of specific means of appropriating identity. A rule which says that the right of publicity can be infringed only through the use of nine different methods of appropriating identity merely challenges the clever advertising strategist to come up with the tenth.

*White v. Samsung Elecs. Am., Inc.*, 971 F.2d 1395, 1398 (9th Cir. 1992), *as amended* (Aug. 19, 1992).

---

place, time, and scope," nor was it "prompted by legitimate business concerns" such that this Court may determine, as a matter of law, that Tesla's conduct was not "highly offensive and constituted an egregious violation of prevailing social norms." *See Id*. at 301.

### 3.     Plaintiffs Can Pursue Their Equitable Claims

Tesla argues Plaintiffs' equitable claims under the UCL, CLRA and unjust enrichment should be dismissed because Plaintiffs do not allege they lack an adequate remedy at law. Tesla is wrong for several reasons.

First, the remedies afforded by the UCL and CLRA are in addition to any available legal remedies. *See* Cal. Bus. & Prof. Code § 17205 (UCL); Cal. Civ. Code §§ 1752 and 1780(a) (CLRA); *see also Freeman v. Indochino Apparel, Inc.,* 443 F. Supp. 3d 1107, 1114 (N.D. Cal. 2020) ("The equitable remedies afforded by the UCL and CLRA are expressly stated to be in addition to other available remedies at law") (citing Cal. Bus. & Prof. Code § 17205; Cal. Civ. Code §§ 1752, 1780(a)).

Second, the equitable relief Plaintiffs seek is primarily injunctive relief, which Plaintiffs may properly seek to enjoin Tesla's future conduct in surreptitiously recording and using in an unauthorized manner Plaintiffs and other Class Members. Monetary damages, alone, would be inadequate. *See Hayden*, 2022 WL 3137446, at *4; *Brown v. Google LLC*, --- F. Supp. 3d. ----, 2023 WL 5029899, at *7 (N.D. Cal. Aug. 7, 2023) ("Google argues that plaintiffs cannot show that the risk of harm is sufficiently imminent and substantial to confer standing for injunctive relief. The Court disagrees. Google's conduct has not stopped.").

Third, even if equitable remedies such as restitution would overlap with Plaintiffs' claims for damages, Plaintiffs may bring their claims for equitable relief in the alternative. *See, e.g., Freeman,* 443 F. Supp. 3d at 1114; *Summit Estate, Inc. v. United Healthcare Ins. Co.*, 2020 WL 5436655, at *9 (N.D. Cal. Sept. 10, 2020) ("[A]llowing a plaintiff to plead a claim for injunctive relief under the UCL in the alternative to claims for legal remedies is consistent with the broad remedial purpose of the UCL, and is also consistent with Section 17205 of the UCL, which provides that UCL remedies are 'cumulative' to other available remedies."); *Byton N. Am. Co. v. Breitfeld*, 2020 WL 3802700, at *9 (C.D. Cal. Apr. 28, 2020) ("[T]he Court agrees with those courts that allow plaintiffs to plead UCL claims in the alternative, even when other adequate remedies may exist."). The Ninth Circuit has held that claims can be pled even if duplicative or superfluous. *See Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762-63 (9th Cir. 2015). And *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020) does not prevent Plaintiffs from doing so. *See Haas v. Travelex Ins. Servs.*, 555 F. Supp. 3d 970, 980 (C.D. Cal. 2021) (*Sonner* "cannot be read as reversing

12

a clearly established circuit practice allowing plaintiffs to plead in the alternative at the earliest stages of litigation"); *accord Jeong v. Nexo Fin. LLC*, 2022 WL 174236, at *27 (N.D. Cal. Jan. 19, 2022) (permitting alternative pleading "in light of *Sonner's* limited applicability to the pleading stage," and because "there is no binding precedent that holds that pleading equitable restitution in the alternative is improper," and "the general liberal policy courts have toward pleading in the alternative").

### 4.   Mr. Yeh States Claims for Intentional and Negligent Misrepresentation

Under California law, "[t]he elements of intentional misrepresentation, or actual fraud, are: '(1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage.'" *Brissette v. Entrust Group, Inc.*, 621 F. App'x 461, 462 (9th Cir. 2015) (citations omitted). "The elements of negligent misrepresentation include: (1) misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the misrepresentation, (4) ignorance of the truth and justifiable reliance on the misrepresentation by the party to whom it was directed, and (5) resulting damage." *Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1201 n.2 (9th Cir. 2001).

Claims for misrepresentation sound in fraud. To satisfy Rule 9(b)'s heightened pleading standard, a plaintiff must allege the "who, what, when, where, and how" of the fraud. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation and internal quotation marks omitted). "A claim for fraud must be 'specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'" *Sutcliffe v. Wells Fargo Bank, N.A.*, 283 F.R.D. 533, 546 (N.D. Cal. 2012) (Spero, J.) (quoting *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985)).

Mr. Yeh satisfies his burden here. The "who" is Tesla. The "what" includes "Tesla's Privacy Policy [which] assures its millions of electric car owners that 'Your privacy is and will always be enormously important to us'; that the cameras in its vehicles are 'designed from the ground up to protect your privacy'; and that 'camera recordings remain anonymous and are not liked to your or your vehicle.'" FAC ¶ 13.[3] The

---

[3] Tesla's privacy policy "further promises its customers that it will only ever use the videos and images it collects to 'Communicate with you; Fulfill our products and services; and Improve and enhance development of our products and services.'" *Id.* ¶ 14

"when" is "during the class period." *Id*. ¶ 61. The "how" is that, in making these representations, "Tesla marketed its vehicles in a manner conveying to reasonable consumers that their private and biometric data and information obtained through Tesla vehicles' cameras would be protected and remain private," *id*. ¶ 119; *see also id*. ¶ 111 (allegations related to negligent misrepresentation). However, contrary to these promises, Tesla recorded vehicle owners and others and permitted its employees to view those recordings "for their own gratification and amusement," rather than for legitimate business purposes. *Id*. ¶ 33. The fraud was exacerbated in that, even after Class Members made their purchases, Tesla continued to assure consumers, through "information presented to [them] on the vehicle's display screen that any videos or images captured by the vehicle's cameras while in 'Sentry Mode' would never leave the car, i.e., that they would only be stored locally on the vehicle's data storage system." *Id*. ¶ 52. Finally, Mr. Yeh alleges reliance in that "Mr. Yeh and other Nationwide Vehicle Owner Subclass and California Vehicle Owner Subclass Members reasonably and justifiably relied on Tesla's misrepresentations and omissions when purchasing or leasing Tesla vehicles." *Id*. ¶ 116. Similar claims have been found to be plausible misrepresentations. In *Heeger v. Facebook, Inc.*, for example, the defendant stated in its policy, "[w]e collect information from or about the computers, phones, or other devices where you install or access our Services, depending on the permissions you've granted," and provided some examples of the kind of data collected. 509 F. Supp. 3d 1182, 1194 (N.D. Cal. 2020) "A typical user," the court reasoned, "would reasonably conclude from these statements that Facebook would not collect device locations or IP address without user consent." *Id*.

Tesla's alternative argument, that "under California law, a tort claim cannot merely duplicate a breach of contract claim," Mot. at 19, should be rejected. First, "Federal Rule of Civil Procedure 8 explicitly allows Plaintiff to plead different theories of relief in the alternative, even if those theories are inconsistent." *Summit Est., Inc. v. Cigna Healthcare of Cal., Inc.*, 2017 WL 4517111, at *4 (N.D. Cal. Oct. 10, 2017) (citing Fed. R. Civ. P. 8(d)). Second, Tesla is wrong that Mr. Yeh's fraud claims are merely duplicative of his contract claims. "[C]ourts will generally enforce the breach of a contractual promise through contract law," *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 991-92 (2004) (citation omitted). But "[i]n pursuing a valid fraud action," a plaintiff also "advances the public interest in punishing intentional misrepresentations and in deterring such misrepresentations in the future." *Id*. at 992 (internal quotes and citations omitted). "Because of the extra measure of blameworthiness inhering in fraud, and because in fraud

14

cases we are not concerned about the need for 'predictability about the cost of contractual relationships . . . fraud plaintiffs may recover out-of-pocket damages in addition to benefit-of-the bargain damages" available under contract law. *Id*. (citing *Lazar v. Super. Ct.*, 12 Cal. 4th 631, 646 (1996) (cleaned up)); *see also Doe v. John F. Kennedy Univ.*, 2013 WL 4565061, at *8 n.6 (N.D. Cal. Aug. 27, 2013) ("Plaintiff may proceed with alternative claims at the pleading stage, but ultimately [Defendant] cannot be held liable for both breach of express contract and breach of implied contract on the same subject matter.").

### 5. Plaintiffs' Negligence and Negligent Misrepresentation Claims Are Not Barred by the Economic Loss Rule

Tesla incorrectly asserts that Plaintiffs' negligence and negligent misrepresentation claims are barred by the economic loss rule. Mot. at 20. That rule "'prevents the law of contract and the law of tort from dissolving into one another' and 'requires a [plaintiff] to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise.'" *Medoff v. Minka Lighting, LLC*, 2023 WL 4291973, at *8 (C.D. Cal. May 8, 2023) (quoting *Robinson Helicopter Co.*, 34 Cal. 4th at 988). Exceptions to the economic loss rule, which Tesla omits mention of in its memorandum, include "(1) personal injury, (2) physical damage to property, [and] (3) a 'special relationship' existing between the parties . . . ." *Kalitta Air, L.L.C. v. Cent. Tex. Airborne Sys.*, 315 Fed. Appx. 603, 605 (9th Cir. 2008).

Here, the economic loss rule does not apply to Plaintiffs' negligence and negligent misrepresentation claims because the claims are premised on injury to Plaintiffs' privacy, which constitutes a personal injury such that their claims fall within one of the exceptions to the economic loss rule. *See Medoff*, 2023 WL 4291973, at *8 (plaintiff's negligence claim was not barred by the economic loss rule because "privacy injury constitutes a personal injury" and noting how "[v]arious California courts have referred to privacy-based causes of action as actions for 'personal injury.'" (citing *Greenley v. Avis Budget Grp. Inc.*, 2020 WL 1493618, at *13 (S.D. Cal. Mar. 27, 2020) (collecting cases)).

### 6. Plaintiffs Have Adequately Alleged Claims Under the UCL

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200; *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 320 (2011). "By proscribing 'any unlawful' business act or practice, the UCL 'borrows' rules set out in other laws and makes violations of those rules

15

independently actionable. However, a practice may violate the UCL even if it is not prohibited by another statute. Unfair and fraudulent practices are alternate grounds for relief." *Zhang v. Superior Court*, 57 Cal. 4th 364, 370 (2013) (cleaned up) (quoting *Cel-Tech Comm., Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999)). "Because section 17200 is written in the disjunctive, a business act or practice need only meet one of the three criteria—unlawful, unfair, or fraudulent—to be considered unfair competition under the UCL." *Buller v. Sutter Health*, 160 Cal. App. 4th 981, 986 (2008).

"Unlawful" practices prohibited by the UCL "are any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838-839 (1994). Plaintiffs allege Tesla violated the UCL's "unlawful" prong because its business acts and practices violated the California Constitutional right to privacy and the CLRA, and further constitute breach of contract, negligence, negligent misrepresentation, intentional misrepresentation, and unjust enrichment. FAC ¶ 88; *compare Roper v. Big Heart Pet Brands*, 510 F.Supp.3d 903, 921 (E.D. Cal. 2020) (UCL "unlawful" claim properly premised on an underlying CLRA violation)*; Dougherty v. Bank of Am., N.A.,* 2018 WL 1573312, at \*6 (E.D. Cal. Mar. 30, 2018) (same with respect to negligence, intentional misrepresentation, and negligent misrepresentation); *Mortg. Indus. Sols., Inc. v. Collabera, Inc.*, 2012 WL 13008421, at \*6 (C.D. Cal. Aug. 14, 2012) (same with respect to unjust enrichment). As discussed above, Plaintiffs adequately allege the underlying violations, so that their "unlawful" prong claim is viable.

A consumer may state a claim under the UCL's "unfair" prong "by either alleging immoral, unethical, oppressive, unscrupulous or substantially injurious conduct by defendants or by demonstrating that defendants' conduct violated an established public policy." *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, 613 F. Supp. 3d 1284, 1303-304 (S.D. Cal. 2020) (citation omitted); *Moran v. Prime Healthcare Management, Inc.*, 3 Cal. App. 5th 1131, 1150 (2016). The same reasons supporting Plaintiffs' "unlawful" UCL claim based on Tesla's violations of Plaintiffs' California Constitutional right to privacy,  the CLRA, and the common law support Plaintiffs' UCL "unfair" claim.

"In order to state a cause of action under the fraud prong of the UCL a plaintiff need not show that he or others were actually deceived or confused by the conduct or business practice in question. The "fraud" prong of [the UCL] is unlike common law fraud or deception. A violation can be shown even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage. Instead, it is only necessary

16

to show that members of the public are likely to be deceived." *Buller*, 160 Cal. App. 4th at 986 (quotations omitted).

Tesla addresses Plaintiffs' UCL claim brought under the "fraudulent" prong, only, and argues it should be dismissed because it does not satisfy Rule 9(b). Even under the heightened pleading standard of Rule 9(b), Mr. Yeh has adequately pleaded a "fraudulent" UCL claim.[4] For purposes of Rule 9(b), allegations of fraud must be "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge." *Heber v. Toyota Motor Sales, USA, Inc.*, 823 Fed. App'x 512, 515 (9th Cir. 2020) (quoting *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009)). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally," *Pollock v. Fed. Ins. Co.*, 2022 WL 912893, at *8 (N.D. Cal. Mar. 29, 2022) (Spero, J.) and Rule 9(b) "does not require absolute particularity or a recital of the evidence," *U.S. v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016). Rather, a "pleading must identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent conduct], and why it is false.'" *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir.2010) (internal quotation marks and citations omitted)).

Mr. Yeh's allegations satisfy the heightened 9(b) pleading requirements, as discussed above. *See* section D.4, *supra*. He has alleged the "who" (Tesla, *see generally* FAC); "what" (Tesla's privacy policy, *see id.* ¶ 13); "when" (during the class period, *see id.* ¶ 61); "where" (information presented to Mr. Yeh on the vehicle's display, *see id.*); and "how" (Tesla, despite promising to keep privacy secure, permitted its cameras to surreptitiously record people in private settings and allowed its employees to access those recordings for non-business purposes, *see id.* ¶¶ 2, 3, 34-41). This is sufficient to satisfy Rule 9(b).

Here, Plaintiffs' fraud claims are also based on omissions, rather than solely misrepresentations. Therefore Rule 9(b) is "somewhat relaxed" because "a plaintiff cannot plead either the specific time of [an] omission or the place, as he is not alleging an act, but a failure to act." *Mosqueda v. Am. Honda Motor Co.*, Inc., 443 F. Supp. 3d 1115, 1124 (C.D. Cal. 2020) (citing *Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1325 (C.D. Cal. 2013) (quoting *Cirulli v. Hyundai Motor Co.*, 2009 WL 5788762, at *4

---

[4] This prong of the UCL is asserted by Mr. Yeh only, not G.Y.

(C.D. Cal. June 12, 2009)). For this reason, "a fraud by omission . . . 'can succeed without the same level of specificity required by a normal fraud claim.'" *Baggett v. Hewlett-Packard Co.,* 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007) (quoting *Falk v. GMC*, 496 F.Supp.2d 1088, 1098-99 (N.D. Cal. 2007)).

Mr. Yeh has sufficiently alleged Tesla's omissions, including how Tesla failed to disclose that his vehicle's cameras are capable of recording video and images of him and his family, even in private settings, and transmitting them to Telsa where Tesla employees could have access to those recordings for non-business purposes. *See* FAC ¶¶ 54-55. *See Plotts v. Am. Honda Motor Co.*, 2023 WL 4843342, at *6-7 (C.D. Cal. June 9, 2023) (plaintiff's allegations satisfied 9(b) in omissions claim by alleging the "who," "what," "when," and "where" in automotive case).

Tesla also argues Plaintiffs' UCL claim should be dismissed because they have not alleged they "suffered injury in fact and has lost money or property as a result of the unfair competition." Mot. at 22. That is wrong. Mr. Yeh alleged he "would not have purchased his Tesla vehicle, or would only have paid less for it," had he known that his vehicle's camera systems were capable of surreptitiously recording him and his family, and that those recordings could be accessed by Tesla employees for inappropriate, non-business purposes. ¶ 57. As discussed above, these allegations suffice for Plaintiff Yeh's UCL standing. *See In re ZF-TRW*, 601 F. Supp. 3d at 764. And G.Y. alleges an economic loss in the violation of his right to publicity, which gives him standing to proceed under the UCL's "unlawful" and "unfair" prongs.

### 7.    Mr. Yeh Has Adequately Alleged a Claim for Violation of the CLRA

"The CLRA prohibits unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." *MacDonald v. Ford Motor Co*., 37 F. Supp. 3d 1087, 1092 (N.D. Cal. 2014) (cleaned up) (quoting *Wilson v. Hewlett–Packard Co.*, 668 F.3d 1136, 1140 (9th Cir.2012)); Cal. Civ. Code § 1770(a). "It likewise bars omission of any material fact relating to those goods." *MacDonald*, 37 F. Supp. 3d at 1092. "Relief under the CLRA is available to those consumers who suffer 'damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful under section 1770." *Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1097 (N.D. Cal. 2006) (quoting Cal. Civ. Code § 1780(a)) (alterations omitted).

As with Plaintiff's UCL claim, Tesla argues that Plaintiffs' CLRA claim should be dismissed for failing to satisfy Rule 9(b). Mot. at 21. As discussed above, however, Mr. Yeh has met the heightened pleading standard of Rule 9(b) for misrepresentations, as well as the relaxed Rule 9(b) standard that applies to omissions.

### 8. Plaintiffs Have Adequately Alleged a Claim for Unjust Enrichment

Tesla incorrectly contends unjust enrichment is not an independent cause of action under California law. *See Bruton v. Gerber Prod. Co*., 703 F. App'x 468, 470 (9th Cir. 2017) (California law allows "an independent claim for unjust enrichment to proceed") (citing *Hartford Cas. Ins. Co. v. J.R. Mkt., L.L.C.*, 61 Cal. 4th 988, 1000 (2015)).

"To allege unjust enrichment as an independent cause of action, a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016). Here, Plaintiffs allege Tesla unjustly retained benefits from them and other Class Members in the form of their payments for vehicles with defective camera control systems, and the use of their images in improving and  commercializing its products including FSD and Auto Drive. *See* FAC ¶¶ 50, 57, 125-28. Nothing more is necessary.

The existence of a contract does not warrant dismissal of Plaintiffs' unjust enrichment claim. *See* Mot. at 23. First, Mr. Yeh's breach of contract claim concerns Tesla's Privacy Policy, which does not cover the same subject matter at issue in this claim, that is, the purchase price of the vehicle and commercial value of Plaintiffs' images. *See* FAC ¶¶ 107-08 (alleging breach of Tesla's Privacy Policy). Second, even if the Privacy Policy did cover the same subject matter, Plaintiff may properly plead unjust enrichment in the alternative. *Rojas v. Bosch Solar Energy Corp.*, 443 F. Supp. 3d 1060, 1080 (N.D. Cal. 2020) ("a claim for unjust enrichment may be asserted under California law, and that such a claim is not subject to dismissal at the pleading stage even if duplicative of other claims"); *Precisely Software Inc. v. Loqate Inc.*, 2022 WL 4348469, at *3 (N.D. Cal. Sep. 19, 2022) (citing *Rojas* with approval). Moreover, the Court cannot conclude at the pleading stage that the Privacy Policy is a "valid or binding contract." *In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*, 2020 WL 7664461, at *12 (N.D. Cal. Dec. 24, 2020) (citation omitted).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 9.    Mr. Yeh Has Adequately Alleged a Claim for Breach of Contract

"The elements of a cause of action for breach of contract are: 1) the existence of the contract; 2) performance by the plaintiff or excuse for nonperformance; 3) breach by the defendant; and 4) damages." *Wornum v. Aurora Loan Servs., Inc.*, 2011 WL 3516055, at \*9 (N.D. Cal. Aug. 11, 2011) (Spero, J.) (citing *First Commercial Mortgage Co. v. Reece*, 89 Cal.App.4th 731, 745 (2001)). Tesla incorrectly asserts that Mr. Yeh's claim for breach of contract should be dismissed because he does not identify the specific contract provisions and does not allege that they have been breached. Mot. at 23. This argument should be rejected.

Mr. Yeh identifies the specific provisions in the Privacy Policy that Tesla breached, namely that Tesla would "protect [his] privacy" and that the video and images captured by his Telsa would "remain anonymous." *See* FAC ¶ 108. He further alleges Tesla breached its promise in the Privacy Policy to limit data captured by his Tesla vehicle's cameras to "Communicat[ing] with you; Fulfilling [Tesla's] products and services; and Improv[ing] and enhanc[ing] development of [Tesla's] products and services." *Id.* And he bolsters his breach of contract claim by alleging Tesla breached its promise to protect his privacy because (1) his vehicle's cameras are capable to submitting video recordings taken while in his home; (2) Tesla employees can access those videos and use them for inappropriate and non-business purposes; and (3) the video recordings show the location of the recordings, rendering Tesla's promise of anonymity false. *See id*. ¶¶ 34-49, 107-08.

Contrary to Tesla's assertion that Mr. Yeh fails to plead damages, Mot. at 24, Mr. Yeh has adequately alleged damages resulting from Tesla's breach. Those damages include having paid more for his vehicle than he would have had Tesla abided by its Privacy Policy; and diminution in the value of his Tesla because he cannot use "Sentry Mode" without facing the risk of his vehicle violating his privacy by submitting surreptitious recordings to Tesla and its employees. *See* FAC ¶ 57. Mr. Yeh's allegations regarding damages are sufficient for his breach of contract claim. *See*, *e.g.*, *In re Google Assistant Privacy Litig.*, 546 F. Supp. 3d 945, 966 (N.D. Cal. 2021) (Plaintiffs adequately alleged damages for breach of contract in the form of overpaying for defendant's product "because Plaintiffs' information was recorded without their consent and divulged to third parties."). Mr. Yeh has also adequately alleged damages in other forms, including harm to his privacy interests, *see id.* at 967 (harm to plaintiffs' privacy interests sufficient damages for breach of

20

contract claim), and Tesla's unjust enrichment, *see id.* at 967-68 ("under California law, a defendant's unjust enrichment can satisfy the 'damages' element of a breach of contract claim" (quotation omitted)).

## V.   THE COURT SHOULD DECLINE TESLA'S PREMATURE REQUEST TO  STRIKE THE CLASS ALLEGATIONS

Tesla's motion to strike Plaintiffs' nationwide class allegations is premature. *See* Mot. at 24-25. Tesla argues Plaintiffs cannot serve as adequate class representatives, and thus the class allegations should be struck. *Id.* But courts routinely deny such requests at the pleading stage. *See Khorrami v. Lexmark Int'l*, 2007 WL 8031909, at *2 (C.D. Cal. Sept. 13, 2007) (collecting cases). "Defendant has not yet answered, discovery has not yet commenced, and [Plaintiffs] ha[ve] not yet filed [their] motion for class certification. Because striking is severe and disfavored, many courts have declined to so rule solely on the basis of the allegations in a complaint, preferring to address the propriety of the class action at a later stage in the litigation." *Id*. Concerns regarding the adequacy of a potential class representative are more appropriately decided on class certification, not on a motion to dismiss, as that is when Plaintiffs will bear the burden of demonstrating that the requirements of Rule 23 are met. *See Erceg v. LendingClub Corp*., 475 F. Supp. 3d 1071, 1079 (N.D. Cal. 2020) ("[Defendant] has not carried its burden to show that this is one of the rare cases in which class allegations should be stricken prior to certification."); *see also Graves v. Sw. & Pac. Specialty Fin., Inc*., 2013 WL 5945851, at *4 (N.D. Cal. Nov. 4, 2013) ("Defendant's arguments regarding the class allegations are essentially arguments in opposition to a class certification motion that has yet to be filed. These arguments are best addressed at the class certification stage after the parties have had an opportunity to conduct discovery and Plaintiffs have filed a motion for class certification.").

## VI.   CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request the Court deny Defendant's motion in its entirety. If the Court should grant the motion, Plaintiffs request leave to amend to correct any pleading deficiencies.

1    Dated: August 21, 2023                    Respectfully Submitted,

2                                              /s/  Jack Fitzgerald

3                                              **FITZGERALD JOSEPH LLP**
                                               JACK FITZGERALD
4                                              *jack@fitzgeraldjoseph.com*
                                               PAUL K. JOSEPH
5                                              *paul@fitzgeraldjoseph.com*
                                               MELANIE PERSINGER
6                                              *melanie@fitzgeraldjoseph.com*
                                               TREVOR M. FLYNN
7                                              *trevor@fitzgeraldjoseph.com*
                                               CAROLINE S. EMHARDT
8                                              *caroline@fitzgeraldjoseph.com*
                                               2341 Jefferson Street, Suite 200
9                                              San Diego, California 92110
                                               Phone: (619) 215-1741
10

11                                             **BLOOD HURST & O'REARDON, LLP**
                                               TIMOTHY G. BLOOD
12                                             *tblood@bholaw.com*
                                               THOMAS J. O'REARDON II
13                                             *toreardon@bholaw.com*
                                               JAMES M. DAVIS
14                                             *jdavis@bholaw.com*
                                               501 West Broadway, Suite 1490
15                                             San Diego, CA 92101
                                               Phone: (619) 338-1100
16

17                                             ***Counsel for Plaintiff***

18

19

20

21

22

23

24

25

26

27

28

*Yeh v. Tesla, Inc.*, No. 23-cv-1704-JCS
PLAINTIFFS' OPPOSITION TO TESLA'S MOTION TO DISMISS FAC