UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HENRY YEH, et al., <br><br>    Plaintiffs, <br><br>v. <br><br>TESLA, INC., <br><br>    Defendant. | Case No. 23-cv-01704-JCS <br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION** <br><br>Re: Dkt. Nos. 38 |

## I.  INTRODUCTION

Plaintiff Henry Yeh and his one-year-old son, G.Y., bring this putative class action against Tesla, Inc.("Tesla") asserting common law and statutory claims related to Tesla's alleged failure to protect their privacy in connection with video footage captured by cameras in their Tesla vehicle.  Presently before the Court is Tesla's Motion to Compel Arbitration of Plaintiffs' Claims on an Individual Basis and to Dismiss the Action ("Motion" or "Motion to Compel"). The Court finds the Motion suitable for determination without oral argument and therefore vacates the hearing set for October 20, 2023 pursuant to Civ. L.R. 7-1(b).  For the reasons stated below, the Motion is GRANTED.[1]

## II.  BACKGROUND

### A.  Procedural Background

This case was initially brought by Henry Yeh, as sole plaintiff.  In the original complaint, Yeh alleged that cameras in Tesla vehicles – including his Tesla Model Y – captured "highly-invasive videos and images of the cars' owners, which Tesla employees were able to access[.]"

---

[1] The parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c).

Compl. ¶¶ 1, 9, 12. He further alleged that despite Tesla's assurances that it takes privacy seriously and only uses video footage for proper purposes, between 2019 and 2022, video footage from Tesla vehicles was shared improperly by Tesla employees, who circulated them "for their own personal reasons." *Id.* ¶¶ 15-19. He asserted the following claims on behalf of himself and a putative class of individuals who owned or leased a Tesla vehicle at any time from four years preceding the date of the filing of the Complaint:  1) Intrusion Upon Seclusion; 2) Violation of California's Constitutional Right to Privacy, Cal. Const. Art. 1, § 1; 3) Violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; 4) Violation of the California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*; 5) Negligence; 6) Breach of Contract; 7) Negligent Misrepresentation; 8) Intentional Misrepresentation; and 9) Unjust Enrichment.

In response to the Complaint, Tesla brought a motion to compel arbitration [dkt. no. 22] and a motion to dismiss [dkt. no. 23]. In the former, Tesla asserted that Yeh was bound by the arbitration provisions to which he agreed when he ordered his Tesla vehicle online and subsequently when he signed the retail installment sale contract. Dkt. no. 22 at 1. According to Tesla, these provisions required that all of Yeh's claims be arbitrated on an individual basis. *Id.* at 1-2. In the motion to dismiss, Tesla argued that Yeh's claims failed under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of Article III standing because Yeh failed to allege that any video footage from his Tesla was improperly accessed or shared or that he suffered any cognizable injury. Dkt. no. 23 at 7-9. Tesla further asserted that Yeh's claims failed under Rule 12(b)(6) because he did not allege any viable claim and that as to the claims that sounded in fraud, he did not meet the heightened pleading standard of Rule 9(b). *Id.* at 6-7, 11-23.

Instead of opposing the motion to dismiss, Yeh filed an amended complaint. Dkt. no. 33 (First Amended Complaint ("FAC")).  The Court found that the FAC rendered moot both the motion to dismiss and the motion to compel arbitration. *See* dkt. no. 35. In the FAC, which is the operative complaint, Yeh's infant son, G.Y., was added as a plaintiff. G.Y. was born after Yeh took delivery of his Tesla vehicle in February 2022. FAC ¶ 10. The FAC expands upon the factual allegations in the original complaint. Among other things, it includes specific allegations

1  related to the "substantial risk" that Yeh and G.Y. were recorded when Yeh's vehicle was in
2  "Sentry" mode and that Tesla employees had access to those recordings for improper purposes.
3  FAC ¶¶ 50-57.  The FAC includes all of the claims that were asserted in the original complaint; in
4  addition, the FAC includes a claim for Violation of the Right to Publicity, Cal. Civ. Code § 3344.
5  The claims for Breach of Contract and Negligent and Intentional Misrepresentation are asserted
6  only by Yeh.  The remaining claims are asserted by both Yeh and G.Y.
7   On July 31, 2023, Tesla renewed its motion to compel and its motion to dismiss.  Dkt. nos.
8  38, 39.  Those motions are presently pending before the Court.

### B.    The Motion to Compel

In the Motion to Compel, Tesla contends Yeh entered into two arbitration agreements in connection with the purchase of his vehicle and that both require that his claims be submitted to arbitration on an individual basis.  Motion at 1. First, when Yeh order his Model Y online, on November 6, 2021, he agreed to Tesla's Motor Vehicle Order Agreement ("Order Agreement"). Declaration of Jasjit Ahluwalia in Support of Defendant Tesla Inc.'s Motion to Compel Arbitration ("Ahluwalia Dec.") ¶¶ 4 (stating that Yeh entered into an Order Agreement for a Model Y vehicle on November 6, 2021),  5 (stating that to order a new vehicle a customer must "configure the vehicle by selecting various options . . . , enter payment details and other information, and click a button to place the order and agree to Tesla's terms and conditions") & Ex. 1 (Order Agreement accepted by Yeh).  Second, on February 26, 2022, Yeh, his co-buyer, and Tesla entered into a Retail Installment Sale Contract ("Sale Agreement") for the financing and purchase of a 2021Tesla Model Y vehicle.  *Id.* ¶ 9 & Ex. 2.  Both the Order Agreement and the Sale Agreement contain arbitration provisions with class waivers.

The arbitration provision in the Order Agreement is set apart from the other text in the document in a box and provides as follows:

> **Agreement to Arbitrate**. Please carefully read this provision, which applies to any dispute between you and Tesla, Inc. and its affiliates, (together "Tesla").
>
> If you have a concern or dispute, please send a written notice describing it and your desired resolution to resolutions@tesla.com.
> If not resolved within 60 days, you agree that any dispute arising out

> of or relating to any aspect of the relationship between you and Tesla will not be decided by a judge or jury but instead by a single arbitrator in an arbitration administered by the American Arbitration Association (AAA) under its Consumer Arbitration Rules. This includes claims arising before this Agreement, such as claims related to statements about our products.
>
> We will pay all AAA fees for any arbitration, which will be held in the city or county of your residence. To learn more about the Rules and how to begin an arbitration, you may call any AAA office or go to www.adr.org.
>
> The arbitrator may only resolve disputes between you and Tesla, and may not consolidate claims without the consent of all parties. The arbitrator cannot hear clear or representative claims or request for relief on behalf of others purchasing or leasing Tesla vehicles. In other words, you and Tesla may bring claims against the other only in your or its individual capacity and not as a plaintiff or class member in any class or representative action. If a court or arbitrator decides that any part of this agreement to arbitrate cannot be enforced as to a particular claim or relief or remedy, then that claim or remedy (and only that claim or remedy) must be brought in court and any other claims must be arbitrated.
>
> If you prefer, you may instead take an individual dispute to small claims court.
>
> You may opt out of arbitration within 30 days after signing this Agreement by sending a letter to: Tesla, Inc.; P.O. Box 15430; Fremont, CA 94539-7970, stating your name, Vehicle Identification Number, and intent to opt out of the arbitration provision. If you do not opt out, this agreement overrides any different arbitration agreement between us, including any arbitration agreement in a lease or finance contract.

Ahluwalia Decl. Ex. 1. According to Tesla, Yeh did not opt out of this arbitration provision. *Id.* ¶¶ 7-8.

The Sale Agreement carries the following header, in all capital letters, on the first page: "RETAIL INSTALLMENT SALE CONTRACT – SIMPLE FINANCE CHARGE (WITH ARBITRATION PROVISION". Ahluwalia Decl. Ex. 2 at p. 1. On the first page, set off in a separate text box, is the statement: "**Agreement to Arbitrate**: By signing below, you agree that, pursuant to the Arbitration Provision on page 7 of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate." *Id.* Yeh and his co-buyer signed below this statement. *Id.* The full arbitration agreement is set forth on page 7 of the Sale Agreement and begins with the following three provisions, in bold and all capital letters:

4

> 1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.
> 2. IF A DISPUTE IS ARBITRATED YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.
> 3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

*Id.* at p. 7. The arbitration provision goes on to state:

> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this arbitration provision and the arbitrability of the claim or dispute), between you and us . . . which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action.

*Id.* The Sale Agreement does not allow the purchaser to opt out of the arbitration provision. *Id.*

Tesla contends the arbitration agreements signed by Yeh are also binding on G.Y. because of the special relationship between Yeh and G.Y. Motion at 4, 21-24. According to Tesla, equitable estoppel prohibits Yeh from avoiding the arbitration provisions to which he agreed by pursuing his claims as his son's guardian ad litem. *Id.*

In their Opposition, Plaintiffs concede that Yeh agreed to the arbitration provision in the Order Agreement and did not opt out of that provision. Opposition at 1. They assert, however, that the arbitration provision in the Sale Agreement has no effect because of language in the Order Agreement arbitration provision stating: "If you do not opt out, this agreement overrides any different arbitration agreement between us, including any arbitration agreement in a lease or finance contract." *Id.* at 1-2 (quoting Order Agreement).

Plaintiffs further contend that the arbitration provision in the Order Agreement should not be enforced because it is unconscionable, both procedurally and substantively. *Id.* at 3. Plaintiffs

5

argue that the arbitration provision in the Order Agreement is procedurally unconscionable because it was offered on a take-it-or-leave-it basis, that is, that it is a contract of adhesion. *Id.* at 4-5. They further assert that its procedural unconscionability is not diminished by the fact that it permits buyers to opt out because even if Yeh had opted out, he would have been bound to arbitrate his dispute under the Sale Agreement, which does *not* contain an opt-out provision. *Id.* at 5.

Plaintiffs argue that the arbitration provision in the Order Agreement is substantively unconscionable because it is "contrary to California's public policy of prohibiting waiver of public injunctive relief, as articulated by the California Supreme Court in [*McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017)]." *Id.* at 6. Here, they contend, Plaintiffs seek public injunctive relief in connection with their claims for Intrusion on Seclusion, violation of California's constitutional right to privacy, violation of the right to publicity, and violation of the UCL and CLRA and therefore, those claims must be decided by the Court. *Id.* at 8.

Plaintiffs reject Tesla's assertion that G.Y. is bound by the arbitration agreement under the doctrine of equitable estoppel. *Id.* at 9-12. According to Plaintiffs, that doctrine applies only where a third party knowingly sought to benefit from a contract containing an arbitration provision, but the privacy claims asserted by G.Y. are based on personal injury and are not based on the Order Agreement so the doctrine does not apply. *Id*. at 9-11. Plaintiffs further assert that Tesla's reliance on the special parent-child relationship between Yeh and G.Y. is misplaced because estoppel applies in that context only as to "necessities" like education and medical care, and Yeh's purchase of his Model Y vehicle does not fall into that category.

Finally, Plaintiffs contend G.Y. cannot be contractually bound to arbitrate his claims against Tesla because minors can disaffirm contracts signed for them by parents and G.Y. disaffirmed any agreements with Tesla by filing this lawsuit instead of demanding arbitration. *Id.* at 12.

### III. ANALYSIS

#### A. Legal Standards Under the Federal Arbitration Act

Under the Federal Arbitration Act ("FAA"), a "written provision in . . . a contract

6

evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Because arbitration is a matter of contract, the question of arbitrability, that is, "whether the parties have submitted a particular dispute to arbitration[,]" is, "'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (quoting *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 649 (1986)). The court's role in addressing a question of arbitrability is "limited to determining (1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys. Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

The FAA "was created to counter prevalent judicial refusal to enforce arbitration agreements . . . and has been interpreted to embody 'a liberal federal policy favoring arbitration.'" *Mortenson v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), and citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. at 339). Thus, the Supreme Court has held that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. at 24–25.

Nonetheless, "[a]rbitration is strictly a matter of consent and thus is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) (internal quotation marks omitted). Consequently, courts may apply the "presumption favoring arbitration . . . only where it reflects, and derives its legitimacy from, a judicial conclusion that arbitration of a particular dispute is what the parties intended because their express agreement to arbitrate was validly formed and . . . is legally enforceable and best construed to encompass the dispute." *Id*. at 303.

"When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the

7

formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). However, the Court has "added an important qualification, applicable when courts decide whether a party has agreed that arbitrators should decide arbitrability: Courts should not assume that the parties agreed to arbitrate arbitrability unless there is "clea[r] and unmistakabl[e]" evidence that they did so." *Id.* (citing *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.")).

### B.     Whether Yeh's Claims Must be Sent to Arbitration

#### 1.     Whether There is an Agreement to Arbitrate

Tesla has presented evidence establishing that when Yeh ordered his Model Y vehicle online he agreed to the terms of the Order Agreement, including the arbitration provision.  In particular, a Tesla software engineer who is knowledgeable about Tesla's website states that "Tesla customers who want to buy or lease a new or used vehicle from Tesla can start that process by placing an order online through either the desktop or mobile version of Tesla's website." Declaration of Minu Sinha in Support of Defendant Tesla, Inc.'s Motion to Compel Arbitration and to Dismiss Class Action Complaint ("Sinha Decl.) ¶ 3.  According to Sinha, "[r]egardless of how a customer accesses the online ordering process, the Order Payment screen is displayed to complete the order." *Id.*  Sinha describes the Order Payment screen as follows:

> The Order Payment screen includes a button labeled "Place Order" (which at times in the past was labeled "Order") that customers must click to complete the purchase. For Model Y orders placed since 2019, the "Order"/"Place Order" button has always been accompanied by language stating, "By placing this order, I agree to the Model Y Order Agreement, Terms of Use, and Privacy Notice," or some slight variation of this language. At all relevant times, the text "Model Y Order Agreement" has been a direct hyperlink to an online copy of the referenced agreement, as indicated by bolded, colored and/or underlined text, which gave customers the opportunity to review the agreement before clicking the "Order"/"Place Order" button. This is true whether a customer placed their online order via mobile or desktop.

*Id.*  ¶ 4. Sinha further confirms that "placing an online order at all relevant times, including when Mr. Yeh did so, necessarily required him to click on either the desktop or mobile version of the Order Payment screens.  *Id.* ¶¶ 7-8 & Ex. 1 (image of Order Payment screen with blue hyperlink to

8

1    order agreement directly above "place order" button, which Sinha states is "substantially identical

2    to what Mr. Yeh would have seen when placing his order on November 6, 2022").

3          Based on similar evidence, a number of Court have found that by clicking on the "Place

4    Order" button, Tesla purchasers accepted the terms of the Order Agreement and therefore entered

5    into valid agreements to arbitrate under California law.  *See, e.g., Fish v. Tesla, Inc.*, 2022 WL

6    1552137, at *4 (C.D. Cal. May 12, 2022); *Surkhabi v. Tesla, Inc.*, No. SA-CV-221315JVSDFMX,

7    2022 WL 19569540, at *3 (C.D. Cal. Oct. 27, 2022); *Nguyen v. Tesla, Inc.*, No. 8-19-CV-01422

8    JLS JDE, 2020 WL 2114937, at *3 (C.D. Cal. Apr. 6, 2020).  Further, Yeh does not dispute that

9    he entered into the Order Agreement when he purchased his Model Y online and he concedes that

10   he did not opt out of the arbitration provision in that agreement.  Opposition at 2.[2]   The only

11   question is whether the arbitration provision in the Order Agreement is enforceable as to Yeh and

12   the related question of whether that issue should be decided by the Court or instead, has been

13   delegated to the arbitrator.

### 2. Whether Arbitrability Has Been Delegated to the Arbitrator

15         As discussed above, delegation of the issue of arbitrability to the arbitrator must be clear

16   and unmistakable.  *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. at

17   649. Here, the arbitration provision incorporates the rules of the AAA, which expressly state, "The

18   arbitrator shall have the power to rule on his or her own jurisdiction, including any  objections

19   with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability

20   of any claim or counterclaim."  Schrader Decl., Ex. 1(Consumer Arbitration Rules of the AAA),

21   R-14(a).  The Ninth Circuit has found that incorporation of the AAA rules constitutes clear and

22   unmistakable evidence that the issue of arbitrability has been delegated to the arbitrator.  *Brennan*

23   *v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015).  Although the court in *Brennan* left open the

24   possibility that this rule might not apply if both parties are not "sophisticated[,]" Yeh has not

---

[2] On the other hand, Yeh contends the arbitration provision in the Sale Agreement is "without effect" because the Order Agreement expressly states that the arbitration provision in that agreement "overrides any different arbitration agreement between us[.]" Opposition at 1-3; Ahluwalia Decl. Ex. 1.   Because the Court finds that Yeh's claims are subject to arbitration under the arbitration provision in the Order Agreement it does not address whether he might also be bound to arbitration of his claims under the Sale Agreement.

1    argued that he is unsophisticated.  Indeed, he did not address the delegation question in his

2    Opposition brief or challenge Tesla's argument that the incorporation of the AAA rules delegated

3    the issue of arbitrability – including his unconscionability challenge – to the arbitrator.

4        The Court notes that in two recent decisions, judges of this Court reached opposite

5    conclusions as to whether the same arbitration provision delegated to the arbitrator the question of

6    whether the arbitration provision in Tesla's Order Agreement is unconscionable (though both

7    ultimately compelled the plaintiffs to arbitrate their claims).  In *Lambrix v. Thompson*, Judge

8    Thompson found that the incorporation of the AAA rules was clear and unmistakable evidence

9    that issues of arbitrability were delegated to the arbitrator.  *See* Case No. C-23-1145 TLT, N.D.

10   Cal. Sept. 27, 2023 (dkt. no. 112) at 10-11.  On the other hand, in *In re Tesla Advanced Driver*

11   *Assistance Systems Litigation*, Judge Gilliam found that the court could decide whether the

12   arbitration provision in the Order Agreement was unconscionable because of the following

13   language in the arbitration provision: "If a court or arbitrator decides that any part of this

14   agreement to arbitrate cannot be enforced as to a particular claim or relief or remedy, then that

15   claim or remedy (and only that claim or remedy) must be brought in court and any other claims

16   must be arbitrated."  Case No. C-22-5240 HSG, N.D. Cal. Sept. 30, 2023 (dkt. no. 57) at 10-11.

17   The court found that although the incorporation of the AAA rules would, on its own, establish that

18   the parties agreed to delegate issues of arbitrability, the addition of this language suggested the

19   court could decide this question.  *Id.*  Judge Gilliam went on to reject the plaintiff's argument that

20   the arbitration provision in the Order Agreement was unconscionable under *McGill v. Citibank*

21   *N.A.*, 2 Cal. 5th 945 (Cal. 2017), which is essentially the same argument Yeh makes here.

22       The undersigned finds the language upon which Judge Gilliam relied can be reconciled

23   with delegation of arbitrability to the arbitrator and does not create tension on that question.  In

24   particular, the language appears to be aimed at the eventuality that a court might conclude that the

25   agreement is invalid as to some claims due to a change in the law governing delegability or despite

26   the parties' clear intention that that issue be delegated to the arbitrator.  The Court does not find

27   this language undercuts the clear and unmistakable intention of the parties as to delegation of

28   questions of arbitrability to the arbitrator.  Therefore, the undersigned agrees with Judge

1    Thompson that the arbitration provision in the Order Agreement delegates questions of

2    arbitrability to the arbitrator by virtue of the fact that it incorporates the AAA rules.

3        Accordingly, the Court finds that Yeh's unconscionability defense must be decide by the

4    arbitrator and not the Court and that all of his claims are subject to arbitration.[3]

### C.  Whether G.Y.'s Claims Are Subject to Arbitration

The Supreme Court has recognized that "traditional principles" of state contract law, such as estoppel and third-party beneficiary theories, may "allow a[n] [arbitration] contract to be enforced by or against nonparties to the contract." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009). "Under California law, a nonsignatory can be compelled to arbitrate . . . where 'a preexisting relationship existed between the nonsignatory and one of the parties to the arbitration agreement, making it equitable to compel the nonsignatory to also be bound to arbitrate his or her claim.' " *Crowley Mar. Corp. v. Bos. Old Colony Ins. Co*., 158 Cal. App. 4th 1061, 1069–70 (2008) (quoting *Cnty. of Contra Costa v. Kaiser Found. Health Plan, Inc*., 47 Cal. App. 4th 237, 242 (1996), as modified (Aug. 1, 1996)). California courts have recognized that the parent-child relationship is one such relationship. *Crowley Mar. Corp*., 158 Cal. App. 4th at 1070. Thus, for example, "[m]inors are bound by a parent's agreement to arbitrate medical malpractice claims filed against a health care provider." *Cnty. of Contra Costa v. Kaiser Found. Health Plan, Inc*., 47 Cal. App. 4th at 242. There is no bright-line rule under California law, however, that a child's claims must always be arbitrated whenever their parent has entered into an arbitration agreement related to the subject matter of the claims. Rather, courts have reached different conclusions based on the specific facts relating to the equities of the situation.

Tesla relies heavily on *Chan v. Charter Commc'ns Holding Co*., No. EDCV 150886 JGBKKX, 2015 WL 12655701 (C.D. Cal. Aug. 6, 2015) in support of its assertion that G.Y. is bound by the arbitration provision in the Order Agreement under the doctrine of equitable estoppel. In that case, the plaintiffs were a husband and wife who asserted various tort claims, including invasion of privacy, against a cable communications company. 2015 WL 12655701, at

---

[3] The Court declines to decide whether the class waiver in the arbitration provision is valid. This too is a question that should be addressed before the arbitrator.

11

\*1. The company provided cable, telephone and internet services to the plaintiffs under a contract that included an arbitration provision, which had been signed by the husband but not the wife. *Id.* at \*1, 5. Nonetheless, the court found that the wife was bound by the arbitration provision by virtue of her special relationship with the signatory of the contract. *Id.* at \*5. Further, although the plaintiffs' children were not named as parties in the lawsuit, the court found that the plaintiffs' children would be bound by the arbitration provision as well because it was signed by their father. *Id.*

On the other hand, in *In re Ring LLC Priv. Litig.*, cited by Plaintiffs, the court concluded that an arbitration provision signed by parents who purchased Ring's security systems was not binding on their children. No. CV1910899MWFRAOX, 2021 WL 2621197, at \*8 (C.D. Cal. June 24, 2021), appeal dismissed, No. 21-55872, 2022 WL 3339845 (9th Cir. Aug. 3, 2022). In that case, the court reasoned that the "case law upholding agreements to arbitrate made by a parent on behalf of a child who is to receive services under the contract" that were cited by Ring were "inapposite because they involve[d] a parent or spouse's ability to enter into a contract on behalf of her child or spouse for medical care or school activities." *Id.* (citations omitted). The court continued, "The Court is unconvinced that the authority to contract for goods beyond necessities like education or medical care is implicit in a parent or guardian's duty to provide for the care of her child or dependent." *Id.* Furthermore, the court found that there was no evidence that the children exploited Ring's terms of service, which could also have warranted a finding that they were bound under the doctrine of equitable estoppel. *Id.*

This Court need not decide whether the *Ring* court's gloss on California law governing the application of the doctrine of equitable estoppel to arbitration agreements in the parent-child context is correct because the specific facts of this case are distinguishable from the facts in *Ring*. In particular, Yeh specifically alleges that he purchased the Model Y because he and his wife were "expecting their first child" and "believed it would be a safe and reliable vehicle." FAC ¶ 50. He further alleges that they purchased the Model Y because they "believed that . . . Tesla would be mindful of protecting his family's privacy." *Id.* ¶ 51. In other words, Yeh's purchase was, at least in part, to benefit and provide care for his child.

12

Furthermore, G.Y.'s claims are closely intertwined with Yeh's claims. As Tesla points out, there are no separate factual allegations as to the claims that are asserted jointly by Yeh and G.Y. Moreover, those claims are based, at least in part, on Yeh's understanding of Tesla's privacy policy. *See* FAC ¶ 71 ("Their expectation of privacy in their vehicle stemmed from Tesla's clearly-stated policy that it would not misuse videos or images it captures, and from the on-screen display in the Tesla vehicles stating that 'Sentry Mode' photos and videos would only be stored locally on the vehicle's data storage system, and not uploaded to Tesla."). The Court concludes that it would be inequitable to permit G.Y. to litigate claims that are so closely intertwined with the claims his father agreed to arbitrate and therefore, that G.Y. is bound by the arbitration provision in the Order Agreement.

The Court rejects Plaintiffs' assertions that the doctrine of equitable estoppel does not apply because the protection of Yeh's child was not the *sole* reason he purchased the vehicle. *See* Opposition at 11-12. The only case cited in support of this argument, *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054 (7th Cir. 2018), is distinguishable. In that case, a 15-year old plaintiff sued a credit card company that had attached her cell phone number to her mother's credit card account after the mother used the daughter's phone to call the company and the number was captured by the company through caller identification technology. 885 F.3d at 1058. When the mother fell behind on her credit card payments, the company began calling the daughter's cell phone to collect the debt. *Id.* The daughter sued the company under the Telephone Consumer Protection Act and the company moved to compel arbitration based on the arbitration provision in the cardholder agreement that her mother had signed. *Id.* The court, however, found that the daughter had received "no direct benefit" from the credit card agreement, rejecting the company's argument that she had become an authorized user of the card because her mother had once given her the card to pay for some smoothies she had asked her daughter to pick up after preordering the smoothies for herself and her daughter. *Id.* at 1059, 1064. The *A.D.* case does not stand for the proposition that an agreement signed by a parent containing an arbitration provision must be *solely* for the benefit of the child to support the application of the arbitration provision to the child's claims. It merely holds that the doctrine does not apply when there is *no* benefit to the child associated with the

agreement.

Nor does the Court find persuasive Plaintiffs' argument that the doctrine of equitable estoppel is inapplicable because a court could find that Tesla invaded G.Y.'s privacy but not his father's. Opposition at 10-11. In support of this assertion, Plaintiffs rely on *Sakyi v. Estee Lauder Companies, Inc.*, 308 F. Supp. 3d 366, 386 (D.D.C. 2018), but they misstate its holding. According to Plaintiffs, that case stands for the proposition that "[*o*]*nly* 'when there would be no claim against the non-signatory [party] but for the contract,' is 'applying the doctrine of estoppel . . . appropriate.'" *Id.* at 11 (quoting *Sakyi v. Estee Lauder Companies, Inc.*, 308 F. Supp. 3d at 385) (emphasis added). The court in that case did not use the word "only," however, instead pointing to such circumstances as an "example" of a scenario that would warrant the application of the doctrine of equitable estoppel. 308 F. Supp. 3d at 385. The broader test the court applied was "whether the issues to be litigated by the non-signatory and signatory are sufficiently intertwined with the issues subject to arbitration." *Id.* Plaintiffs have pointed to no authority that suggests that the claims of the nonsignatory must be identical to those of the signatory or entirely derivative of the signatory's claims to justify binding the nonsignatory to the arbitration agreement as a matter of equity.

Finally, the Court rejects Plaintiffs' reliance on the fact that G.Y., as a minor, is incapable of entering into a contract and can, as a matter of statute, disaffirm a contract. Opposition at 12 (citing Cal. Fam. Code §§ 6700, 6710). Under California law, "[t]he infancy defense may not be used inequitably to retain the benefits of a contract while reneging on the obligations attached to that benefit." *E.K.D. ex rel. Dawes v. Facebook, Inc.*, 885 F. Supp. 2d 894, 899 (S.D. Ill. 2012); *see also Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1036 (N.D. Cal. 2020) (same).

For the reasons set forth above, the Court finds that under the principles of equitable estoppel, G.Y. must arbitrate his claims pursuant to the arbitration provision in the Order Agreement to which his father agreed.

## IV.    CONCLUSION

The Court GRANTS the Motion to Compel as to the claims of both Yeh and G.Y., which must be arbitrated. This action is STAYED pending arbitration of Plaintiffs' claims. The parties

are ORDERED to file a joint statement regarding the status of Plaintiffs' claims within seven (7) days of the conclusion of the arbitration proceedings. The Clerk is directed to administratively close the case.

**IT IS SO ORDERED.**

Dated: October 12, 2023

_____
JOSEPH C. SPERO
United States Magistrate Judge